**BURSOR & FISHER, P.A**.
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)
401 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
       tkashima@milberg.com

**KOPELOWITZ OSTROW PA**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA HENNING and LEA AMMIANO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LUXURY BRAND PARTNERS, LLC, <br><br> Defendant. | Case No. 3:22-cv-07011-TLT <br><br> **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Date: April 30, 2024 <br> Time: 2:00 p.m. <br> Ctrm: 9 <br> Judge: Hon. Trina L Thompson |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 30, 2024, at 2:00pm, or as soon thereafter as this matter may be heard in Courtroom 9 of the above captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ella Henning and Lea Ammiano ("Plaintiffs") will move, and hereby does move, for preliminary approval of a proposed class action settlement (the "Settlement") in this Action.  Defendant Luxury Brand Partners, LLC ("Defendant") does not oppose this motion.

This Motion is made on the grounds that all parties in this action have executed a class Settlement Agreement, the terms of which are fair, reasonable, and fall within the range of possible approval.  Plaintiffs ask the Court to enter the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement (the "[Proposed] Preliminary Approval Order"), which authorizes the certification of a Settlement Class for settlement purposes only and the establishment of a hearing date for the consideration of final approval of the Settlement and related deadlines.

The Motion is based on the Joint Declaration of Proposed Class Counsel ("Decl.") and its Exhibits, including the Settlement Agreement, submitted herewith; the Declaration Steven Weisbrot of Angeion Group Re: Proposed Notice Program and its Exhibits, submitted herewith; a [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Points and Authorities filed herewith; the pleadings and papers on file in this Action; and such other evidence and argument as may subsequently be presented to the Court.

Dated:  February 9, 2024

**BURSOR & FISHER, P.A**.

By: */s/ Sarah N. Westcot*
      Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006

Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)
401 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
          tkashima@milberg.com

**KOPELOWITZ OSTROW PA**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PAGE(S)

I.      INTRODUCTION ............................................................................................... 1

II.     SUMMARY OF THE ACTION ........................................................................ 1

        A.      Plaintiffs' Allegations ............................................................................ 1

        B.      Litigation, Negotiation, and Settlement ................................................ 2

III.    MATERIAL TERMS OF THE SETTLEMENT ................................................ 4

        A.      Settlement Class ..................................................................................... 4

        B.      Monetary Relief to the Settlement Class ............................................... 4

                1.      Monetary Relief ........................................................................ 4

        C.      The Notice Program ............................................................................... 5

        D.      Claim Process ......................................................................................... 6

        E.      Disposition of Residual Funds ............................................................... 6

        F.      Settlement Administrator ....................................................................... 6

        G.      Opt-Out and Objection Procedures ....................................................... 8

        H.      Release of Claims .................................................................................. 9

        I.      Attorneys' Fees, Costs, and Service Awards ......................................... 10

IV.     LEGAL STANDARD ........................................................................................ 10

V.      THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS
        FOR CLASS CERTIFICATION ....................................................................... 11

        A.      Plaintiffs Satisfied Each of the Rule 23(a) Requirements .................... 11

                1.      Numerosity ................................................................................ 11

                2.      Commonality ............................................................................. 12

                3.      Typicality .................................................................................. 13

                4.      Adequacy ................................................................................... 13

        B.      Plaintiffs Satisfy the Requirements of Rule 23(b)(3) ........................... 14

                1.      Predominance ............................................................................ 14

                2.      Superiority ................................................................................. 14

VI.    THE COURT SHOULD PRELIMINARILY APPROVE THIS SETTLEMENT ........... 15

    A.    The Settlement Warrants Preliminary Approval Pursuant to Rule 23(e) ............. 15

        1.    The Monetary Terms of the Settlement Are Within the Range of Possible Approval ...................................................................................... 16

            a.    The Risk of Litigation Favors Settlement ..................................... 17

            b.    Complexity, Expense, and Likely Duration of Further Litigation ....................................................................................... 18

            c.    The Experience and Opinions of Counsel .................................... 19

            d.    The Settlement Provides Meaningful and Certain Relief to Class Members ............................................................................... 19

        2.    The Settlement Was Reached After Informed Arms' Length Negotiations Between Experienced Counsel ............................................. 20

        3.    The Settlement Has No Obvious Deficiencies........................................... 21

        4.    The Settlement Provides the Same Relief for All Settlement Class Members ....................................................................................................... 22

VII.    THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS OF THEIR RIGHTS UNDER THE SETTLEMENT ............................................................. 22

VIII.    THE PROPOSED TIMELINE FOR EVENTS SHOULD BE ADOPTED .................... 23

IX.    CONCLUSION........................................................................................................... 24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*,
  2017 WL 1806583 (N.D. Cal. May 5, 2017) ............................................................ 16

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) .......................................................................... 22

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................ 16, 25

*Bond v. Ferguson Enterprises, Inc.*,
  2011 WL 284962 (E.D. Cal. Jan. 25, 2011) ................................................................ 23

*Boyd v. Bechtel Corp.*,
  485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................ 21

*Chu v. Wells Fargo Invs., LLC*,
  2011 WL 672645 (N.D. Cal. Feb. 16, 2011) ................................................................ 24

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ............................................................................. 18

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................ 10, 11

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ...................................................................... 18, 20, 21

*Custom LED, LLC v. eBay, Inc*,
  2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) .............................................................. 23

*Deaver v. Compass Bank, et al.*,
  2015 WL 4999953 (N.D. Cal. Aug. 21, 2015) ......................................................... 17, 22, 23

*Deaver v. Compass Bank*,
  2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .............................................................. 21

*Estrella v. Freedom Fin'l Network*,
  2010 WL 2231790 (N.D. Cal. June 2, 2010) .............................................................. 14

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...................................................................... 12, 14, 15, 17

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ................................................................ 15

*Harris v. Vector Mktg. Corp.*,
    2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ....................................... 22

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ..................................................... 23

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................................ 11

*In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................... 22

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................... 22

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................ 23

*In re M.L. Stern Overtime Litig.,*
    2009 WL 995864 (S.D. Cal. Apr. 13, 2009) ......................................... 18

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ....................................... 20

*In re Nvidia Derivs. Litig.*,
    2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ....................................... 19

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 21

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................. 21

*In re Quantum Health Res., Inc.*,
    962 F. Supp. 1254 (C.D. Cal. 1997) ..................................................... 23

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008) .............................................................. 18

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................... 11, 17, 19

*Knight v. Red Door Salons  Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ........................................... 21

*Krzesniak v. Cendant Corp.*,
   2007 WL 1795703 (N.D. Cal. June 20, 2007) ........................................................ 14

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ........................................................................................ 20

*Mazur v. eBay Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) ................................................................................ 14

*McClellan v. SFN Grp., Inc.*,
   2012 WL 2367905 (N.D. Cal. June 21, 2012) ............................................................ 17

*Misra v. Decision One Mortg. Co.*,
   2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) ............................................................ 19

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 18, 20, 21

*O'Connor v. Boeing N. Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ................................................................................ 14

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................................... 18, 21

*Perez-Olano v. Gonzalez*,
   248 F.R.D. 248 (C.D. Cal. 2008) ................................................................................ 15

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010) ................................................................................ 13

*Rebney v. Wells Fargo Bank*,
   220 Cal. App. 3d 1117 (1990) ..................................................................................... 19

*Roe v. Frito-Lay, Inc.*,
   2017 WL 1315626 (N.D. Cal. Apr. 7, 2017) ............................................................. 24

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................................... 23

*Tijero v. Aaron Bros., Inc.*,
   2013 WL 60464 (N.D. Cal. Jan. 2, 2013) ................................................................. 24

*Valentino v. Carter–Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ....................................................................................... 16

*Vasquez v. Coast Valley Roofing, Inc.*,
   670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................................. 14, 24

*Villegas v. J.P. Morgan Chase & Co.*,
    2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................ 22

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) ........................................................................................ 14

**RULES**

FED. R. CIV. P. 23(a) ................................................................................................ passim

Fed. R. Civ. P. 23(b) ................................................................................ 12, 13, 16, 25

Fed. R. Civ. P. 23(c) ................................................................................................ 24

FED. R. CIV. P.  23(e) ................................................................................................ passim

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS § 11.41 ...................................................................... 18

Plaintiffs Ella Henning and Lea Ammiano (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class[1], respectfully submit this memorandum of law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

This Action involves Defendant Luxury Brand Partners, LLC's sale of its IGK Products, which allegedly were deceptively marketed and sold to consumers with a harmful chemical called benzene.

Plaintiffs, individually, and on behalf of the Settlement Class, and Defendant have entered into a Settlement to resolve Plaintiffs' claims on a classwide basis. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a Settlement Fund in the amount of $850,000.00.

Balancing the risks against the substantial benefits, the Court should find that the Settlement is fair, adequate, and reasonable and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Class Counsel as counsel for the Settlement Class; (iv) approving the form and manner of the Notice Program; (v) appointing Angeion Group as Settlement Administrator; (vi) establishing deadlines for the Opt-Out Period and Objection Period; and (vii) scheduling a Final Approval Hearing at which the Court will consider Final Approval of the Settlement, Class Certification, and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards for the Class Representatives.

## II.    SUMMARY OF THE ACTION

### A.  Plaintiffs' Allegations

This is a class action regarding Defendant's manufacturing, distribution, advertising, marketing, and sale of IGK Products that contain dangerously high levels of benzene, a

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement and Releases ("Agreement"), attached as **Exhibit A** to the Joint Declaration of Proposed Class Counsel ("Decl.").

carcinogenic impurity that has been linked to leukemia and other cancers.  *See* First Amended Class Action Complaint ("FAC"), ECF No. 58 at ¶ 1.  Specifically, Plaintiffs allege benzene is "carcinogenic to humans" and that "exposure over a long period of time to any concentration of benzene greater than zero is not safe."  *Id.* ¶¶ 26-43.  Although the "FDA allows for up to 2 parts per million of benzene in products where the use of benzene is "unavoidable" to produce a drug product with a significant therapeutic advance … dry shampoos are not a drug and contains no active pharmaceutical ingredient for therapeutic purpose."  *Id.* ¶ 43.  "[T]herefore, any significant detection of benzene in the [IGK] Products could be deemed unacceptable."  *Id.*  Regardless, as Plaintiffs allege, third party testing found benzene concentrations of as high as 2.49 ppm in the IGK Products – which is above any legal limit that may be applicable to the IGK Products.  *Id.* ¶ 53.  As a result of Defendant's sale of contaminated benzene IGK Products, Plaintiffs and putative Class Members allege they were injured in that (i) they purchased an IGK Product that was worthless because it was adulterated and illegally sold, and (ii) they would not have purchased the IGK Product, or would have paid less for it, but for Defendant's misrepresentations that the IGK Product did not contain benzene and/or Defendant's failure to disclose the presence of benzene.  *See*, *e.g.*, *id.* ¶¶ 6, 9, 11, 70, 101, 103.

### B.  Litigation, Negotiation, and Settlement

On October 31, 2022, Valisure submitted a Citizens Petition to the Food and Drug Administration, alleging that it tested several brands and batches of dry shampoo products and allegedly found that many contained harmful levels of the alleged carcinogen benzene, and requested governmental intervention and action.  *See* Decl. at ¶ 2. LBP was one of the businesses whose products were allegedly tested and allegedly found to contain harmful levels of benzene.  *Id*.  As a result, LBP was named a defendant in this Action arising from its alleged manufacture, distribution, and sale of allegedly contaminated dry shampoo products. *Id*. at ¶ 3. LBP at all times has denied and disputed the allegations in this Action.

On November 8, 2022, Plaintiff Henning filed this Action against LBP in the United States District Court for the Northern District of California. (ECF No. 1). In doing so, Plaintiff Henning

asserted claims on behalf of herself and a nationwide class, a California subclass, and a consumer fraud multi-state subclass against LBP for violation of California's False Advertising Law, Business & Professions Code Section 17500, violation of California's Unfair Competition Law, Business & Professions Code Section 17200 et seq., violation of California's Consumers Legal Remedies Act, Civil Code Section 1770, unjust enrichment, and violation of state consumer fraud acts.

On February 1, 2023, Defendant filed a Motion to Dismiss the Complaint (ECF No. 17). Plaintiff Henning filed her memorandum in opposition to Defendant's Motion to Dismiss on March 1, 2023. (ECF No. 28). On March 15, 2023, Plaintiff Henning filed a Notice of Supplemental Authority. (ECF No. 31). Defendant's reply in support of the motion to dismiss was filed on March 22, 2023. (ECF No. 34).

On February 24, 2023, Plaintiff Henning and LBP filed a Joint Case Management Statement. (ECF No. 27). On March 2, 2023, the Court held an initial Case Management Conference, at which time it directed the Parties to meet and confer regarding the use of ADR. (ECF No. 29). The Parties agreed to participate in the Northern District's ADR Multi-Option Program. (ECF No. 33).

On May 11, 2023, the Court issued an Order granting in part and denying in part LBP's Motion to Dismiss. (ECF No. 37).

On June 23, 2023, Plaintiff Henning and LBP participated in a full day mediation with court-appointed mediator Howard A. Herman of JAMS.  In advance of the mediation, LBP provided Class Counsel with sales data and other related information. As a result of Class Counsel's pre-suit investigation, in conjunction with information exchanged by the Parties in advance of mediation, Plaintiffs and Class Counsel entered settlement negotiations with substantial information about the nature and extent of the challenged practices, as well as the merits of the legal claims and factual allegations. Decl. at ¶ 12. Plaintiffs and Class Counsel also had the ability to review key documents and information in this matter, which allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class

certification, summary judgment, and trial. *Id.* ¶ 13. During the mediation, the Parties thoroughly discussed and vetted the facts and law as Mr. Herman engaged in a critical analysis of the Parties' arguments. *Id.* ¶ 14.

While the mediation was unsuccessful, the Parties continued to engage in settlement discussions and case discovery over the following months before finally reaching a settlement in principle in December 2023. *Id.* ¶¶ 15-16, 20.

On December 20, 2023, Plaintiff Henning and LBP appeared for a telephonic pre-settlement conference with Magistrate Judge Cisneros. (ECF No. 54).

On January 3, 2024, Plaintiff Henning and LBP filed a Notice of Settlement and Joint Stipulation Staying Pre-Trial Deadlines. (ECF No. 55).

On February 8, 2024, Plaintiffs filed a First Amended Class Action Complaint, adding additional Plaintiff Lea Ammiano, re-alleging a Nationwide Class, and adding a proposed Florida Subclass. (ECF. No. 58).

## III. MATERIAL TERMS OF THE SETTLEMENT

### A. Settlement Class

Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> All persons in the United States who, during the Class Period, purchased one or more of the IGK Products for personal, family, or household use and not for resale. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of LBP, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the IGK Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

Agreement ¶ 73. The Settlement Class includes tens of thousands of members. Decl. ¶ 13.

### B. Monetary Relief to the Settlement Class

#### 1. Monetary Relief

**Settlement Fund**- The Settlement provides for a Settlement Fund in the amount of $850,000. The Settlement Fund shall be used to pay: (1) Cash Payments; (2) Service Awards; (3) attorneys' fees and costs awarded by the Court to Class Counsel; and (4) all Settlement

Administration Costs. Agreement ¶ 79(a).

**Cash Payments**- To qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Form Deadline, including Proof of Purchase, or if the Claimant does not have Proof of Purchase, the Claimant may attest under oath that he or she purchased an IGK Product(s). *Id.* ¶ 79(b)(i).

If a Claimant includes Proof of Purchase with the Claim Form, the Claimant will be entitled to a full refund of the purchase price for as many IGK Products for which Proof of Purchase is provided. *Id.* ¶ 79(b)(ii).

If the Claimant does not include Proof of Purchase with the Claim Form, but attests to purchasing an IGK Product(s), the Claimant shall be entitled to $4.00 for each IGK Product purchased, for a maximum of five IGK Products, or $20.00. *Id.* ¶ 79(b)(iii).

The amount of each Settlement Class Member's Cash Payment will be determined once all Valid Claims are approved. There may be a pro rata reduction to the amount of each Settlement Class Member's Cash Payment, depending upon the total number and total dollar value of Valid Claims. *Id.* ¶ 79 (c).

### C.    The Notice Program

The Parties have agreed upon a comprehensive Notice Program, which includes a Long Form Notice and Publication Notice, Agreement ¶¶ 54,55, with all costs to be paid out of the Settlement Fund. *See id.* ¶ 71. The Notice Program will include a robust social media and digital plan, which, under the circumstances, is the best notice practicable. A detailed explanation of the Notice Program is found in the Declaration of Steven Weisbrot, Esq. of Angeion Group LLC re: the Proposed Notice Program ("Admin. Decl."). Additionally, Settlement Class members may request a Long Form Notice, review key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. Agreement ¶ 84.

The Notice, in forms substantially similar to the ones attached to the Agreement, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, information regarding the identity of the Settlement Class, and what claims will be

released. It shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement at the Final Approval Hearing. *Id.* ¶¶ 87-89.

### D.    Claim Process

To be entitled to receive a Cash Payment, Settlement Class Members must accurately and timely submit the Claim Form by the Claim Form Deadline. *Id.* ¶ 35. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of Cash Payment to which the Settlement Class Member may be entitled. No later than 75 days after Final Approval or 15 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Cash Payments to Class Members. *See id.* § IX.

### E.    Disposition of Residual Funds

Any funds remaining in the Settlement Fund following the 180-day period after the Settlement Administrator's provision of Cash Payments to Settlement Class Members on account of any unexecuted or undeliverable payments shall be distributed pro rata to Settlement Class Members who submitted Valid Claims, or shall otherwise be distributed *cy pres* to an organization agreed to by the Parties and approved by the Court. *Id.* ¶ 109.

### F.    Settlement Administrator

The proposed Settlement Administrator, a well-respected and reputable administrator, was mutually selected by the Parties. *See* Admin. Decl. ¶¶ 9-11; Decl. ¶ 29. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Settlement Fund and distribute the Cash Payments to Settlement Class Members. *Id.* ¶ 83. The

duties of the Settlement Administrator are as follows: (i) provide CAFA Notice; (ii) complete the Court-approved Notice Program by noticing the Settlement Class by Publication Notice, sending out Long Form Notices, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Missing or Inaccurate Information, and sending Cash Payments to Settlement Class Members; (iii) establish and maintain the Settlement Fund escrow bank account approved by the Parties; (iv) establish and maintain a post office box for opt-out requests from the Settlement Class and to receive Claim Forms; (v) establish and maintain the Settlement Website; (vi) establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries; (vi) respond to any mailed Settlement Class member inquiries; (viii) process all opt-out requests from the Settlement Class; (ix) provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information; (x) in advance of the Final Approval Hearing, prepare a declaration to submit to the Court confirming that the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the amount of valid Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (xi) distribute, out of the Settlement Fund, Cash Payments electronically to Settlement Class Members who submit a Valid Claim for Cash Payment; (xii) pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund; (xii) pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel; (xiv) any other Settlement Administration function at the instruction of Class Counsel and LBP, including, but not limited to, verifying that the Settlement Fund have been properly administered and that the Cash Payments have been properly distributed.

Agreement ¶ 84. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 82. Settlement Administration Costs will be paid from the Settlement Fund. *Id.* ¶¶ 71, 79.

### G.     Opt-Out and Objection Procedures

Consistent with the Agreement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. *Id.* ¶¶ 58, 81, 86-88. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 87.

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Motion for Attorneys' Fees, Costs, and Service Awards. Objections must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator.

For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id.* ¶ 57. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Motion for Attorneys' Fees, Costs, and Service Awards; (e) the number of times

in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date that of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). *Id.* ¶ 89. Class Counsel and/or LBP may conduct limited discovery on any objector or objector's counsel. *Id.*

### H.    Release of Claims

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See* Agreement § XII. The Released Claims are narrowly tailored and only "that result from, arise out of, are based upon, or relate to (a) the alleged adulteration or contamination of any of the IGK Products, including any alleged benzene adulteration or contamination, (b) any of the alleged violations of laws or regulations cited in the Complaint or otherwise asserted in the Action or any alleged violations of any materially similar laws or regulations, (c) any of the advertising, labeling, or marketing identified in the Complaint or otherwise asserted in the Action, including but not limited to the alleged failure to disclose the presence of benzene in the IGK Products, (d) any testing or data alleged in the Complaint or otherwise asserted in the Action, (e) any acts, omissions, or misrepresentations that were raised or could have been raised within the scope of the facts asserted in the Complaint or Action, including any claim that was or could be asserted under California's Proposition 65, or (f)

any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), (d), or (e) of [the Agreement]" *Id.* ¶ 110.

### I.    Attorneys' Fees, Costs, and Service Awards

The amount of any attorneys' fees, costs, or Service Awards shall be determined by the Court. As part of Plaintiffs' Motion for Final Approval, Class Counsel will submit its Motion for Attorneys' Fees, Costs, and Service Awards. Class Counsel intends to apply to the Court for an award of attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of its litigation costs. In addition, Class Counsel intends to move for Service Awards of $2,500.00 for each Class Representative (for a total of $5,000.00). The Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The Notices will advise the Settlement Class of the amount of attorneys' fees and Service Awards that Class Counsel intends to seek. *Id.* § X.

### IV.    LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Rule 23 requires courts to employ a two-step process in evaluating a class action settlement. First, the parties must show "that the court will likely be able to ... (i) approve the proposal under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(1)(B). In other words, a court must make a preliminary determination that the settlement "is fair, reasonable, and adequate" when considering the factors set out in Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2). The court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); see also Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004) (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing"). "The initial decision to approve or reject a settlement proposal is

committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). If no class has yet been certified, a court must likewise make a preliminary finding that it "will likely be able to ... (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). If the court makes these preliminary findings, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." *Id*.

Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

## V.    THE PROPOSED SETTLEMENT CLASS MEETS ALL THE REQUIREMENTS FOR CLASS CERTIFICATION

In order to effectuate the proposed Settlement, Plaintiffs also move for certification of the Settlement Class.  At the preliminary approval stage, the Court's threshold task is to ascertain whether the proposed settlement class is maintainable under FED. R. CIV. PRO. 23(a) and (b)(3). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  To qualify for certification of a "settlement-only class," the class must be so numerous that joinder of all members is impracticable; there must be questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class.  FED. R. CIV. Pro. 23(a). Additionally, common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. PRO. 23 (b)(3).

### A.    Plaintiffs Satisfied Each of the Rule 23(a) Requirements

#### 1.    Numerosity

The numerosity requirement mandates that the class be "so numerous that joinder of all

members is impracticable." Fed.R.Civ.P. 23(a)(1). In general, courts find the numerosity requirement satisfied when a class includes at least 40 members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members); *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007) ("numerosity may be presumed when the class comprises forty or more members"). In addition, the class should be "ascertainable," *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009), meaning that the class definition must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Here, purchasers of the IGK Products during the relevant time period are indisputably in the tens of thousands and are geographically located throughout the United States, making joinder impracticable. Decl. ¶ 13. Thus, the numerosity requirement is easily met.

### 2.    Commonality

In order to satisfy Rule 23(a)(2)'s commonality requirement, a plaintiff must "affirmatively demonstrate" that their claims depend upon at least one common contention the truth or falsity of which "will resolve an issue that is central to the validity" of each one of the class members' "claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). That is, the lawsuit must call upon the court or jury to decide at least one factual or legal question that will generate a common answer "apt to drive the resolution of the litigation." *Id.*; *see also id.* at 2556 (holding that "even a single common question" will suffice to satisfy Rule 23(a)) (citation and internal modifications omitted).

The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." *Estrella v. Freedom Fin'l Network*, 2010 WL 2231790, at *7 (N.D. Cal. June 2, 2010) (*quoting Hanlon*, 150 F.3d at 1019-1020).

Here, common questions include, but are not limited to, whether LBP's alleged failure to disclose that the IGK Products contained benzene was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a

single objective standard.

### 3.     Typicality

Plaintiffs must also establish that their claims are "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508 (citation omitted). A plaintiff's claim is typical "if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 257-58 (C.D. Cal. 2008). Claims need not be "substantially identical," but only "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other members of the Settlement Class. Plaintiffs, like all members of the Settlement Class, purchased the IGK Products during the Class Period and suffered damages because of LBP's alleged material misstatements and omissions. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.     Adequacy

The Ninth Circuit has articulated two criteria for determining adequacy of representation under Rule 23(a)(4): "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Both elements are met here.

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all members of the Settlement Class, Plaintiffs have claims against LBP in connection with their purchase of IGK Products during the Class Period. Plaintiffs, like all members of the Settlement Class, were also allegedly injured by LBP's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages allegedly caused by LBP's wrongful conduct. Likewise, Class Counsel are highly qualified and have a great deal of experience litigating consumer class

actions. *See* Decl. ¶¶ 31-34 and **Exhibit B** thereto; *see also* § VI.A.2., *infra*. Accordingly, Class Counsel will also adequately protect the Settlement Class.

### B.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3)

#### 1.    Predominance

Similar to commonality, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Accordingly, courts often examine "commonality under Rule 23(a) together with predominance under Rule 23(b)(3)." *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc*., No. 15-CV-6314-YGR, 2017 WL 1806583, at *6 (N.D. Cal. May 5, 2017), *amended sub nom.*, 2018 WL 558844 (N.D. Cal. Jan. 25, 2018).

As discussed above, common questions include, but are not limited to, whether LBP's failure to disclose that the IGK Products contained benzene was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard, and thus predominance is satisfied.

#### 2.    Superiority

Finally, Rule 23(b)(3) requires that class litigation is the superior method for adjudicating this dispute. Factors to be considered include: class members' interest in individually controlling litigation; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the likely difficulties in managing the class action. Fᴇᴅ. R. Cɪᴠ. Pʀᴏ. 23(b)(3)(A)–(D). The superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by tens of thousands of consumers nationwide, and resolution of all Settlement Class Members' claims in a single proceeding promotes judicial efficiency and avoids

inconsistent decisions. Further, it is unlikely that any Settlement Class member would be willing or able to pursue relief on an individual basis.

## VI.    THE COURT SHOULD PRELIMINARILY APPROVE THIS SETTLEMENT

### A.    The Settlement Warrants Preliminary Approval Pursuant to Rule 23(e)

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. At this stage, "the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the Final Approval Hearing, after such time as any party has had a chance to object and/or opt out." *Deaver v. Compass Bank, et al.*, No. 12-cv-00222-JSC, 2015 WL 4999953, at *6 (N.D. Cal. Aug. 21, 2015); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.* at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted); see also *McClellan v. SFN Grp., Inc.*, No. C 10-5972 SBA, 2012 WL 2367905, at *2 (N.D. Cal. June 21, 2012) ("In conducting this evaluation, it is

neither for the court to reach any ultimate conclusions regarding the merits of the dispute, nor to second guess the settlement terms.").

Counsel's judgment that the Settlement is fair and reasonable is entitled to great weight. *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 576-77 (9th Cir. 2004) (taking into account the views of class counsel and defendants' counsel in support of the settlement). In fact, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Indeed, there is generally "an initial presumption of fairness when a proposed class settlement, which was negotiated at arms' length by counsel for the class, is presented for court approval." *Newberg* § 11.41.

Settlements of class actions are favored.  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)  ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation."). Thus, in determining whether preliminary approval is warranted, the issue is whether the proposed settlement is within the range of what might in a broad sense be found to be fair, reasonable, and adequate such that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval.  *In re M.L. Stern Overtime Litig.,* 07–CV–0118, 2009 WL 995864 at *3 (S.D. Cal. Apr. 13, 2009); FED. R. CIV. P.  23(e)(2)(A)-(D).

The proposed Settlement warrants Preliminary Approval because it is not only a fair, reasonable, and adequate resolution of the claims asserted, but also an extremely favorable result for the Settlement Class Members, as set forth below.

### 1.    The Monetary Terms of the Settlement Are Within the Range of Possible Approval

The Court must determine whether the proposed Settlement falls within the range of possible approval. To evaluate the range of possible approval criterion, which focuses on

substantive fairness and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of the settlement offer, in light of the risks of further litigation. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

### a.    The Risk of Litigation Favors Settlement

"It can be difficult to ascertain with precision the likelihood of success at trial. The Court cannot and need not determine the merits of the contested facts and legal issues at this stage, [Citation], and to the extent courts assess this factor, it is to 'determine whether the decision to settle is a good value for a relatively weak case or a sell-out of an extraordinary strong case.'" *Misra v. Decision One Mortg. Co.*, No. SACV070994, 2009 WL 4581276, at *7 (C.D. Cal. Apr. 13, 2009).

"The Settlement eliminates these and other risks of continued litigation, including the very real risk of no recovery after several years of litigation." *In re Nvidia Derivs. Litig.*, No. C-06-06110, 2008 WL 5382544, at *3 (N.D. Cal. Dec. 22, 2008).  Indeed, appeals aside, litigating a complex case through trial is inherently perilous regardless of the strengths of merits of the claims:

> [N]othing is assured when litigating against commercial giants with vast litigative resources, particular in such complex litigation as this, which would strain the cognitive capacities of any jury. Defense judgments were hardly beyond the realm of possibility.  Accordingly, this factor weighs in favor of preliminary approval.

*Rebney v. Wells Fargo Bank*, 220 Cal. App. 3d 1117, 1140 (1990), *opinion modified* (June 18, 1990).

Notwithstanding that Plaintiffs believe their claims against LBP have merit, they are pragmatic and understand the legal uncertainties associated with continued litigation may pose substantial risk of non-recovery to the Settlement Class.

Even if Plaintiffs survived a motion for summary judgment, LBP will likely oppose class certification. Denial of class certification would also result in no recovery at all for the Settlement Class. Plaintiffs maintain that LBP faces substantial risk, therefore warranting the recovery obtained in this Settlement. Plaintiffs also acknowledge that settling now reduces risks to themselves and the Settlement Class.

**b.      Complexity, Expense, and Likely Duration of Further Litigation**

Absent this Settlement, Plaintiffs fully expect that Defendant will aggressively litigate this case to trial and would appeal any favorable judgment. Decl. ¶¶ 23-28. "Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation." *Nat'l Rural Telecomms. Coop v. DirecTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). Thus, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id*. at 526.

Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion to certify, motions for summary judgment, and *Daubert* motions. If Plaintiffs survive these early procedural hurdles and this litigation were to continue on the merits, it would be lengthy, expensive, and involve extensive motion practice, including a motion for class certification (and possibly a motion for decertification), motions for summary judgment, and various pretrial motions, as well as extensive fact and expert discovery, including the preparation of expert reports, expert depositions, and *Daubert* motions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex.").

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class members. The immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) ("the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate, and reasonable when the calculation of the value of the case took into account the time

value of money). Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### c.    The Experience and Opinions of Counsel

In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons Inc.*, No. 08-01520, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (*citing Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *see also Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (*citing Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Thus, "the Court should not without good cause substitute its judgment for [counsel's]." *Boyd*, 485 F. Supp. at 622.

### d.    The Settlement Provides Meaningful and Certain Relief to Class Members

With respect to the monetary terms of the settlement, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628. This is due, in large part, to the potential pitfalls of further litigation. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ("Plaintiffs here have agreed to accept a smaller certain award rather than seek the full recovery but risk getting nothing."). Thus, the monetary value of the settlement need not meet any particular percentage threshold of the overall potential value of the case. *Id.* Additionally, "finality and speed of recovery" weigh in favor of approval, especially where there is a risk that the Class could receive less by proceeding through litigation. *Deaver v. Compass Bank*, No. 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015). More significantly, rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members.

### 2. The Settlement Was Reached After Informed Arms' Length Negotiations Between Experienced Counsel

This factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. 08–5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).

Additionally, "the use of a mediator and the presence of discovery 'support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.'" *Deaver*, 2015 WL 4999953, at *7 (quoting *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012)); *Harris*, 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel").

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403 at *9 (C.D. Cal. June 10, 2005). Moreover, if the terms of the settlement are fair, courts generally assume the negotiations were proper. *See In re GM Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785-86 (3d Cir. 1995).

Plaintiffs and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of Plaintiffs' claims is certainly adequate to support the Settlement here. Indeed, prior to mediation, the parties exchanged significant information, which allowed the Parties to assess the strengths of their positions and attack each other's potential weaknesses. During mediation, Mr. Herman engaged in a critical analysis of the Parties' arguments. This discovery was sufficient for Class Counsel to appreciate the merits of the case before both negotiating and recommending settlement. Thus, this factor supports Preliminary Approval of the Settlement.

Plaintiffs respectfully submit that they have retained counsel who are qualified, experienced, and fully capable of prosecuting this litigation on behalf of the Settlement Class. The

firms involved in this litigation have proven track records in the prosecution of complex class actions nationwide. *See* Decl. ¶¶ 31-34 and **Exhibit B** thereto. Bringing this experience and knowledge to bear, Class Counsel believes that the Settlement is in the best interests of the Settlement Class.

### 3.    The Settlement Has No Obvious Deficiencies

The Court next considers "whether there are obvious deficiencies in the Settlement Agreement." *Deaver*, 2015 WL 4999953, at *7. Such "obvious deficiencies" may include an overbroad release, insufficient notice, inadequate form of payment, or a *cy pres* beneficiary without a sufficient connection to the class and underlying claims. *See, e.g., Custom LED, LLC v. eBay, Inc*, No. 12-CV-00350-JST, 2013 WL 6114379, at *7 (N.D. Cal. Nov. 20, 2013). Additionally, an attorneys' fee provision may also be preliminarily evaluated as part of this inquiry, subject to final approval. *See, e.g., Bond v. Ferguson Enterprises, Inc.*, No. 1:09-CV-01662, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011).

Here, there are no such deficiencies. For example, the Agreement includes a release that is narrowly tailored to release only those claims related to the alleged adulteration or contamination of IGK Products. Agreement ¶ 110.

The Agreement also provides that Class Counsel intends to request approximately 25% of the benefits to be received by the Settlement Class. *Id.* at 106. In discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton v. Boeing Co*., 327 F.3d 938, 977 (9th Cir. 2003); *see also* FED. R. CIV. P.  23(e)(2)(C)(iii). Here, the 25% fee Class Counsel seeks is not extraordinary. *See, e.g., In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989) (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of 33.3% of $1.725 million). In fact, attorneys representing a class "routinely recover attorneys' fees in the range of 20 to 40 percent of the common fund."  *In re Quantum Health Res., Inc*., 962 F. Supp.

1254, 1258 (C.D. Cal. 1997).  At the time of the Final Approval Hearing, Class Counsel will request that the Court award fees based upon the value of the benefits achieved in the proposed Settlement and will present their time and expense declarations to allow for a cross-check under the lodestar/multiplier method.

Additionally, the Settlement is not conditioned on the Court's approval of either Class Counsel's fee request or Plaintiffs' Service Awards.  Any payment of any attorney's fees or service awards will only occur upon the payment of funds to the Settlement Administrator for distribution to the Class.  Here, any payment to Class Counsel is aligned with that of the Class.

It is clear the Settlement was a product of extensive and arm's length negotiations, and involved counsel experienced in class litigation.  It provides the Settlement Class real and immediate relief and does not suffer any obvious deficiencies.

### 4.    The Settlement Provides the Same Relief for All Settlement Class Members

Lastly, under this factor, the court assesses whether the allocation of the settlement fund may "unfairly benefit certain class members." *Tijero v. Aaron Bros., Inc.*, No. C 10-01089 SBA, 2013 WL 60464, at *10 (N.D. Cal. Jan. 2, 2013). Here, the Settlement does not improperly discriminate between any segments of the Settlement Class.  *Vasquez,* 670 F. Supp. 2d at 1125. Settlement Class Members are entitled to the same relief calculated from the same formulas. Additionally, while the Settlement Agreement allows Plaintiffs to seek Service Awards of up to $2,500 each ($5,000 total), this payment is a sensible amount given the amount of time expended in prosecuting this case.  *See Roe v. Frito-Lay, Inc*., No. 14-CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit.") (collecting cases); *Chu v. Wells Fargo Invs., LLC*, No. C 05–4526, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (awarding a $10,000 incentive award to two named plaintiffs) (collecting cases).

## VII.    THE PROPOSED NOTICE WILL ADEQUATELY APPRISE THE CLASS OF THEIR RIGHTS UNDER THE SETTLEMENT

Preliminary approval permits notice to be given to class members of a hearing on final

settlement approval, at which hearing class members may be heard regarding whether the Court should enter an order finally approving the settlement and their right to opt-out or object.  Rule 23(c)(2)(B) provides that for Rule 23(b)(3) classes, the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See also Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

Additionally, Class notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members."  FED. R. CIV. PRO. § 23(c)(2)(B).

The Notice Program satisfies the foregoing criteria. It includes a Long Form Notice, Publication Notice, Settlement Website, and toll-free telephone number, and shall provide, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Agreement § VII. The Notice Program is designed to directly reach a very high percentage of Settlement Class members through the Publication Notice, which will be published in digital media to be agreed upon by the Parties and the Settlement Administrator. *Id.* ¶ 64; *see* Admin. Decl. ¶¶ 19-21. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See* Agreement.

## VIII.   THE PROPOSED TIMELINE FOR EVENTS SHOULD BE ADOPTED

If the Court preliminarily approves the Settlement Agreement, Plaintiffs respectfully

request that the Court adopt the following schedule:

| | |
|---|---|
| Deadline to implement Notice Program | *No later than 20 days following entry of Preliminary Approval Order* |
| Deadline to complete Notice Program | *At least 60 days before date of originally scheduled Final Approval Hearing* |
| Deadline for filing Motion for Final Approval, including Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards | *45 days before date of originally scheduled Final Approval Hearing* |
| Opt-out Period Ends | *30 days before date of originally scheduled Final Approval Hearing* |
| Objection Period Ends | *30 days before date of originally scheduled Final Approval Hearing* |
| Final Approval Hearing | *August 28, 2024 at ____ a.m./p.m., or such later date available on the Court's calendar* |
| Claim Form Deadline | *Date of date of originally scheduled Final Approval Hearing* |

## IX.    CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court certify the Settlement Class, appoint Plaintiffs as Class Representatives and the undersigned counsel as Class Counsel, and preliminarily approve the Settlement.

Dated:  February 9, 2024

**BURSOR & FISHER, P.A**.

By: */s/ Sarah N. Westcot*
        Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)
401 W. Broadway, Suite 1760

San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
          tkashima@milberg.com

**KOPELOWITZ OSTROW PA**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*