**BURSOR & FISHER, P.A**.
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
Email: swestcot@bursor.com

*[Additional Counsel Listed on Signature Page]*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA HENNING and LEA AMMIANO, individually and on behalf of all others similarly situated,<br><br>                        Plaintiffs,<br><br>    v.<br><br>LUXURY BRAND PARTNERS, LLC,<br><br><br>                        Defendant. | Case No. 3:22-cv-07011-TLT<br><br>**JOINT DECLARATION OF PROPOSED CLASS COUNSEL** |

This declaration is submitted by Sarah N. Westcot of Bursor & Fisher, P.A., Kristen Lake Cardoso of Kopelowitz Ostrow P.A., and Trenton Kashima of Milberg Coleman Bryson Phillips Grossman, PLLC. We offer this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion").[1] We each have personal knowledge of the facts set forth in this declaration and could testify competently as to these facts if called upon to do so.

**Background and Relevant Procedural History**

1. This case involves Defendant Luxury Brand Partners, LLC's ("LBP") sale of its IGK Products[2], which Plaintiffs allege are deceptively labeled and marketed insofar as they fail to disclose to consumers that the Products contain the harmful chemical benzene.

2. On October 31, 2022, Valisure, an independent analytical laboratory registered with the FDA, detected high levels of benzene in specific batches of dry shampoo products. Among these products were various IGK brand dry shampoos.

3. On November 8, 2022, Plaintiff Henning filed a Class Action Complaint in this Action against LBP in the United States District Court for the Northern District of California alleging that LBP made false and misleading representations about the qualities and ingredients of the Products in failing to disclose the presence of benzene, which would render the Products adulterated and misbranded. (ECF No. 1.) Plaintiff Henning asserted claims on behalf of herself and a nationwide class, a California subclass, and a consumer fraud multi-state subclass against LBP for violation of California's False Advertising Law, Business & Professions Code Section 17500, violation of California's Unfair Competition Law, Business & Professions Code Section

---

[1] The definitions and capitalized terms in the Settlement and Release Agreement and Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval of Settlement Agreement are hereby incorporated as though fully set forth in this Declaration and shall have the same meanings attributed to them in those documents.

[2] The IGK Products include all Direct Flight, Jet Lag, and First Class dry shampoo product lines manufactured, distributed, marketed, offered for sale, or sold by the Released Parties.

17200 et seq., violation of California's Consumers Legal Remedies Act, Civil Code Section 1770, unjust enrichment, and violation of state consumer fraud acts.

4.    On February 1, 2023, LBP filed a Motion to Dismiss the Complaint (ECF No. 17). Plaintiff Henning filed her memorandum in opposition to the motion on March 1, 2023. (ECF No. 28). On March 15, 2023, Plaintiff Henning filed a Notice of Supplemental Authority. (ECF No. 31). LBP's reply in support of the motion was filed on March 22, 2023. (ECF No. 34).

5.    On February 24, 2023, Plaintiff Henning and LBP filed a Joint Case Management Statement. (ECF No. 27). On March 2, 2023, the Court held an initial Case Management Conference, at which time it directed the Parties to meet and confer regarding the use of ADR. (ECF No. 29). The Parties stipulated to participating in the Northern District's ADR Multi-Option Program. (ECF No. 33).

6.    On May 11, 2023, the Court issued an Order granting in part and denying in part LBP's Motion to Dismiss. (ECF No. 37).

7.    On June 23, 2023, Plaintiff Henning and LBP participated in a full day mediation with Howard A. Herman of JAMS as part of this District's ADR Multi-Option Program.

8.    On November 28, 2023, the Court issued an Order of Reference to Magistrate Judge for Settlement, referring the case to Magistrate Judge Lisa J. Cisneros.

9.    On December 20, 2023, Plaintiff Henning and LBP appeared for a telephonic pre-settlement conference with Magistrate Judge Cisneros.

10.    On January 3, 2024, Plaintiff Henning and LBP filed a Notice of Settlement and Joint Stipulation Staying Pre-Trial Deadlines. (ECF No. 55).

11.    On February 8, 2024, Plaintiffs filed a First Amended Class Action Complaint, adding plaintiff Lea Ammiano, re-alleging a Nationwide Class, and alleging a Florida Subclass. (ECF No. 58).

**The Settlement Achieves an Excellent Result for the Settlement Class and is the Result of Extensive Investigation, Hard-Fought Litigation and Arms-Length Negotiations**

12.    On June 23, 2023, Plaintiff Henning and LBP participated in a full day mediation with court-appointed mediator Howard A. Herman of JAMS. In advance of the mediation, LBP provided Class Counsel with sales data and other related information. As a result of Class Counsel's pre-suit investigation, in conjunction with information exchanged by the Parties in advance of mediation, Plaintiff Henning and Class Counsel entered settlement negotiations with substantial information about the nature and extent of the challenged practices, as well as the merits of the legal claims and factual allegations.

13.    In advance of mediation, Plaintiff Henning and Class Counsel also had the ability to review key documents and information in this matter which allowed them to confidently evaluate the strengths and weaknesses of Plaintiff Henning's claims and prospects for success at class certification, summary judgment, and trial. This information also confirmed that purchasers of the Products during the relevant time period indisputably numbered in the tens of thousands geographically located throughout the United States.

14.    During the mediation, the Parties thoroughly discussed and vetted the facts and law as Mr. Herman engaged in a critical analysis of the Parties' arguments.

15.    After a full day of mediation, the Parties were unable to reach a settlement.

16.    In the subsequent months, the Parties continued to engage in regular settlement discussions as litigation progressed.

17.    The Parties participated in discovery, exchanging written discovery and documents. The Parties also negotiated and drafted a stipulated protective order. (ECF No. 53).

18.    As a result of independent investigation of Class Counsel prior to initiating this Action, in conjunction with information exchanged in advance of mediation and during discovery, Plaintiff Henning and Class Counsel engaged in settlement negotiations with substantial information about the nature and extent of the challenged practices, as well as the merits of the legal claims and factual allegations.

19.    Review of this information positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiff Henning's claims and prospects for success at class certification, summary judgment, and trial.

20.    In December 2023, after many months of negotiation, the Parties reached a settlement in principle.

21.    In the weeks following, the Parties continued to negotiate the finer points of the Agreement, including the terms of the Releases, Settlement Administrator, Notice Program, and schedule. During this process, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the plan for Notice, which was completed in February 2024.  These documents are filed herewith as **Exhibit A**.

22.    The Parties did not agree to attorneys' fees and costs, or Service Awards for Class Representatives until after an agreement had been reached as to the monetary and non-monetary relief to the class.

**Risks of Continued Litigation**

23.    We remain confident in the strength of Plaintiffs' case, but we are also pragmatic in our awareness of the various defenses available to LBP, which are complex. There is no doubt that continued litigation here would be difficult, expensive, and time consuming.

24.    The risks and obstacles in this case are just as great as those in similar mislabeling class actions and this case would likely have taken years to successfully prosecute, with the risk that there would be no recovery at all. Recovery, if any, by any means other than settlement would require additional years of litigation and possibly an appeal.

25.    Without the Settlement, the Parties faced the certainty that litigating this action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, would be complex, time-consuming, and expensive.

26.    Continued litigation could have impeded the successful prosecution of these claims at trial and in an eventual appeal – resulting in zero benefit to the Settlement Class. Under the

circumstances, we appropriately determined that the Settlement outweighs the risks of continued litigation.

27.     Whether the Action would have been tried as a class action is also relevant in assessing the fairness of the Settlement. However, as the Court had not yet certified a class at the time the Agreement was executed, it is unclear whether certification would have been granted. Briefing class certification would have required the parties to expend significant resources.

28.     In sum, the Settlement includes substantial monetary and non-monetary benefits for Settlement Class Members and multiple options for recovery. The Settlement, which provides for a Settlement Fund in the amount of $850,000, is fair and reasonable in light of LBP's defenses, and the challenging, unpredictable path of litigation Plaintiffs would have faced absent a settlement.

**The Notice Program**

29.     The parties agree to use Angeion Group as the Settlement Administrator for purposes of disseminating Notice and administering the Settlement. Angeion Group is one of the leading notice administration firms in the United States.

30.     As described in detail in the Motion for Preliminary Approval, the Notice Program satisfies all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and constitutional due process, and will be completed in accordance with this Court's instructions in the Preliminary Approval Order.

**Opinions of Class Counsel**

31.     It is the opinion of Class Counsel, who achieved the Settlement, that this Settlement is fair and reasonable to the members of the Settlement Class.

32.     Our firms have significant experience in the litigation, certification, trial, and settlement of national class actions, including substantial time and resources dedicated to past and present benzene litigation across the country, and have recovered hundreds of millions of dollars for the classes they have represented. The experience, resources, and knowledge Class Counsel brings to this Action is extensive and formidable.

33.      Attached hereto as **Exhibit B** are true and correct copies of the resumes of our firms, Bursor & Fisher, P.A., Kopelowitz Ostrow PA, and Milberg, Coleman, Bryson, Phillips, Grossman, PLLC.

34.      We have devoted substantial time and resources to this Action, are qualified to represent the Settlement Class, and will, along with the Class Representatives, vigorously protect the interests of the Settlement Class.

35.      Based on the substantial experience as outlined above, Class Counsel is confident that the Settlement warrants the Court's preliminary approval. Its terms are not only fair, reasonable and adequate, but also are very favorable result for the Settlement Class. The Agreement provides substantial and concrete benefits to tens of thousands of purchasers. Based on all of the foregoing factors, we recommend that the Court grant Preliminary Approval of the Agreement.

We declare under penalty of perjury that the foregoing is true and correct.


Executed on February 9, 2024.


_/s/ Sarah N. Westcot_____
Sarah N. Westcot


_/s/  Kristen Lake Cardoso_____
Kristen Lake Cardoso


_/s/ Trenton Kashima_____
Trenton Kashima

**EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
CASE NO. 3:22-cv-07011-TLT

ELLA HENNING and LEA AMMIANO,
on behalf of themselves and all others
similarly situated,

               Plaintiffs,

vs.

LUXURY BRAND PARTNERS, LLC,

               Defendant.

_____ /

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Settlement" or "Agreement"),[1] dated as of February 7, 2024, is entered into between Plaintiffs, Ella Henning and Lea Ammiano, on behalf of themselves and the Settlement Class, on the one hand, and Defendant, Luxury Brand Partners, LLC, on the other hand. The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final Approval Order entered by the Court.

### I.    Procedural History

1.    On October 31, 2022, Valisure submitted a Citizens Petition to the Food and Drug Administration, alleging that it tested several brands and batches of dry shampoo products and allegedly found that many contained harmful levels of the alleged carcinogen benzene, and requested governmental intervention and action.

2.    LBP was one of the businesses whose products were allegedly tested and allegedly found to contain harmful levels of benzene. As a result, LBP was named a defendant in this Action

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II below or as defined elsewhere in the Agreement.

1

arising from its alleged manufacture, distribution, and sale of allegedly contaminated dry shampoo products.  LBP at all times has denied and disputed the allegations in this Action.

3.    On November 8, 2022, Plaintiff Henning filed a Class Action Complaint in this Action against LBP in the United States District Court for the Northern District of California. *See Henning v. Luxury Brand Partners, LLC*, No. 3:22-cv-07011 (N.D. Cal.).

4.    In doing so, Plaintiff Henning asserted claims on behalf of herself and a nationwide class, a California subclass, and a consumer fraud multi-state subclass against LBP for violation of California's False Advertising Law, Business & Professions Code Section 17500, violation of California's Unfair Competition Law, Business & Professions Code Section 17200 et seq., violation of California's Consumers Legal Remedies Act, Civil Code Section 1770, unjust enrichment, and violation of state consumer fraud acts.

5.    LBP filed its Motion to Dismiss on February 1, 2023.

6.    On February 24, 2023, Plaintiff Henning and LBP filed a Joint Case Management Statement.

7.    On March 1, 2023, Plaintiff Henning filed her Opposition to LBP's Motion to Dismiss.

8.    On March 2, 2023, the Court held an initial Case Management Conference.

9.    On March 8, 2023, the Court issued a Case Management and Scheduling Order.

10.    On March 15, 2023, LBP filed a Notice of Supplemental Authority in support of its Motion to Dismiss.

11.    On March 22, 2023, LBP filed its Reply in Support of its Motion to Dismiss.

12.    On May 11, 2023, the Court issued an Order granting in part and denying in part LBP's Motion to Dismiss.

13.     On June 9, 2023, Plaintiff Henning and LBP filed a joint case management statement.

14.     On June 23, 2023, Plaintiff Henning and LBP participated in a full day mediation with this District's ADR Multi-Option Program.  In advance of the mediation, LBP provided Class Counsel with sales data and other related information.  While unsuccessful, the Parties continued to engage in settlement discussions and case discovery over the following months.

15.     On November 28, 2023, the Court issued an Order of Reference to Magistrate Judge for Settlement, referring the case to Magistrate Judge Lisa J. Cisneros.

16.     On December 20, 2023, Plaintiff Henning and LBP appeared for a telephonic pre-settlement conference with Magistrate Judge Cisneros.

17.     On January 3, 2024, Plaintiff Henning and LBP filed a Notice of Settlement and Joint Stipulation Staying Pre-Trial Deadlines.

18.     On February 8, 2024, Plaintiffs filed a First Amended Class Action Complaint.

19.     The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. LBP has entered into this Agreement to resolve all controversies and disputes arising out of or relating to the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. LBP does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (or any previous complaints filed by Class Counsel) or Valisure's October 31, 2022 Citizens Petition, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Action. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be

offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede the claims alleged in the Action lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, LBP, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.       Definitions

29.       "Action" means the lawsuit entitled *Ella Henning, et al. v. Luxury Brand Partners, LLC*, No. 3:22-cv-07011-TLT (N.D. Cal.).

30.       "Attorneys' Fees and Cost Award" means the amount of attorneys' fees and costs awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

31.       "CAFA Notice" means the Class Action Fairness notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

32.       "Cash Payment" means the cash payment out of the Settlement Fund to which Settlement Class Members who have purchased IGK Products and have submitted a Valid Claim are entitled as a benefit under this Settlement.

33.       "Claim" means the submission of a Claim Form by a Claimant.

34.    "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit C***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator, and pursuant to which Settlement Class members may apply for a Cash Payment.

35.    "Claim Form Deadline" shall be the date of the originally scheduled Final Approval Hearing and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment.

36.    "Claimant" means a Settlement Class member who submits a Claim Form.

37.    "Class Counsel" means: Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Trent Kashima of Milberg Coleman Bryson Phillips Grossman, PLLC, and Sarah N. Westcot of Bursor & Fisher, P.A.

38.    "Class Period" means the period extending from the earliest date of any allowable claim pursuant to the applicable statutes of limitation with respect to the Released Claims up to and including the date of Preliminary Approval.

39.    "Class Representatives" means Ella Henning and Lea Ammiano.

40.    "Complaint" means the First Amended Class Action Complaint filed in the Action on February 8, 2024.

41.    "Court" means the United States District Court for the Northern District of California and the Judge(s) assigned to the Action.

42.    "LBP" means Defendant, Luxury Brand Partners, LLC.

43.    "Defendant" means Luxury Brand Partners, LLC.

44.    "Defendant's Counsel" or "LBP's Counsel" means Ropes & Gray LLP.

45.    "Effective Date" means 5 days after the entry of the Final Approval Order,

provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

46.    "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

47.    "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval and to further determine the amounts of attorneys' fees and costs to be awarded to Class Counsel and the amount of Service Awards to the Class Representatives.

48.    "Final Approval Order" means the order the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel and the amount of any Service Awards to the Class Representatives.

49.    "IGK Product(s)" means and includes all products within the scope of the claims asserted in the Complaint or Action, including all Direct Flight, Jet Lag, and First Class dry shampoo product lines manufactured, distributed, marketed, offered for sale, or sold by the Released Parties.

50.    "Long Form Notice" means the long form notice of the Settlement, substantially

in the form attached hereto as ***Exhibit B***, that shall be posted on the Settlement Website and shall be available to Settlement Class members by mail on request made to the Settlement Administrator.

51.    "Motion for Attorneys' Fees, Costs, and Service Awards" means the motion that Plaintiffs and Class Counsel will file with the Court seeking attorneys' fees, costs and Service Awards. The Motion for Attorneys' Fees, Costs, and Service Awards will be filed with the Court no less than 45 days before the Final Approval Hearing.

52.    "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel will file with the Court seeking Final Approval of the Settlement. The Motion for Final Approval will be filed with the Court no less than 45 days before the Final Approval Hearing.

53.    "Motion for Preliminary Approval" means the motion that Plaintiffs and Class Counsel will file with the Court seeking Preliminary Approval.

54.    "Notice" means the Long Form Notice and Publication Notice that Plaintiffs and Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

55.    "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Long Form Notice and Publication Notice.

56.    "Notice of Missing or Inaccurate Information" means the notice sent by the Settlement Administrator to a Settlement Class member who has submitted a Claim Form with inaccurate, disqualifying, incomplete, or missing information that is required for the Settlement Class member to be considered eligible for a Cash Payment.

57.    "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval

Hearing.

58.     "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

59.     "Party" means each of the Plaintiffs and Defendant, and "Parties" means Plaintiffs and Defendant collectively.

60.     "Plaintiffs" means Ella Henning and Lea Ammiano.

61.     "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

62.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

63.     "Proof of Purchase" means documentation evidencing the purchase of an IGK Product such as a store receipt.

64.     "Publication Notice" means the Notice that will be published in digital media to be agreed upon by the Parties and the Settlement Administrator.  The Publication Notice shall be substantially in the form attached as ***Exhibit A***.

65.     "Releases" means the releases and waiver of claims set forth in Section XII of this Agreement.

66.     "Released Claims" means the claims described in Section XII of this Agreement.

67.     "Released Parties" means LBP, and its present and former parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, employees,

stockholders, heirs, agents, servants, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, manufacturers, suppliers, wholesalers, resellers, distributors, retailers, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on LBP's behalf, in their capacity as such.  It is expressly understood that to the extent a Released Party is not a party to the Agreement, all such Released Parties are intended third-party beneficiaries of the Agreement.

68.    "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

69.    "Service Award" means the payment the Court may award the Plaintiffs for serving as Class Representatives. The Service Award shall be paid out of the Settlement Fund.

70.    "Settlement Administrator" means Angeion Group.

71.    "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration. All Settlement Administration Costs shall be paid out of the Settlement Fund.

72.    "Settlement Fund" shall mean the gross amount of $850,000.00 USD that shall represent Defendant's maximum financial obligation in this matter.  In no event shall the total out-of-pocket costs paid by Defendant exceed the Settlement Fund.  The following shall be subject to and capped by the gross amount of Settlement Fund: (i) all Approved Claims for Cash Payments; (ii) any Fee Award approved by the Court; (iii) any incentive awards approved by the Court; and (iv) any Settlement Administration Expenses approved by the Court.

73.    "Settlement Class" means all persons in the United States who, during the Class Period, purchased one or more of the IGK Products for personal, family, or household use and not for resale.  Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of LBP, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the IGK Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

74.    "Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

75.    "Settlement Class member" means a member of the Settlement Class.

76.    "Settlement Website" means the website the Settlement Administrator will establish as a means for Settlement Class members to submit Claim Forms and obtain Notice and information about the Settlement, including hyperlinked access to this Agreement, the Long Form Notice, Preliminary Approval Order, Claim Form, Motion for Final Approval, and Final Approval

Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

77.    "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the directions accompanying the Claim Form and the provisions of the Settlement; (b) accurately, fully and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Missing or Inaccurate Information for additional information may result in a determination that the Claim is not a Valid Claim.

### III.    Certification of the Settlement Class

78.    Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. LBP agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any class certification shall be null and void and, for the avoidance of doubt, LBP shall retain all rights to object to any future requests to certify a class. Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

**IV.**     <u>**Settlement Consideration**</u>

79.     **Monetary Relief**

a.     *Settlement Fund in the amount of $850,000.00* – The Settlement Fund shall be used to pay: (1) Cash Payments; (2) Service Awards; (3) attorneys' fees and costs awarded by the Court to Class Counsel; and (4) all Settlement Administration Costs.

b.     *Cash Payments*

   i.     To qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Form Deadline, including Proof of Purchase, or if the Claimant does not have Proof of Purchase, the Claimant may attest under oath that he or she purchased an IGK Product(s).

   ii.     If a Claimant includes Proof of Purchase with the Claim Form, the Claimant will be entitled to a full refund of the purchase price for as many IGK Products for which Proof of Purchase is provided.

   iii.     If the Claimant does not include Proof of Purchase with the Claim Form, but attests to purchasing an IGK Product(s), the Claimant shall be entitled to $4.00 for each IGK Product purchased, for a maximum of five IGK Products, or $20.00.

c.     The amount of each Settlement Class Member's Cash Payment will be determined once all Valid Claims are approved. There may be a pro rata reduction to the amount of each Settlement Class Member's Cash Payment, depending upon the total number and total dollar value of Valid Claims.

d.     Other than the Settlement Fund, LBP shall not be required to make any other payments as part of this Settlement.

e.      Within 10 business days of the Final Approval Order, Defendant shall wire the Settlement Fund to an escrow bank account established by the Settlement Administrator and approved by the Parties.

f.      The escrow bank account in which the Settlement Fund is deposited shall at all times be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendant with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively, "Taxes"), will be paid out of the Settlement Fund. Defendant and its counsel, and Plaintiffs and Class Counsel, will have no liability or responsibility for any of the Taxes. The Settlement Fund will indemnify and hold harmless Defendant and its counsel, and Plaintiffs and Class Counsel, for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

## V.      <u>**Settlement Approval**</u>

80.      Upon execution of this Agreement by all Parties and Class Counsel, Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Class Counsel and Defendant's Counsel.

81.      The Motion for Preliminary Approval shall, among other things, request that the Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable terms; (2) provisionally certify the Settlement Class for settlement

purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form submission process; (5) approve the procedures set forth herein for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Class Counsel, and LBP's Counsel, at which the Court will conduct a further inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards.

## VI.      <u>Settlement Administrator</u>

82.      The Parties agree that, subject to Court approval, Angeion Group shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

83.      The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Settlement Fund, and distributing the Cash Payments.

84.      The duties of the Settlement Administrator are as follows:

      i.      Provide CAFA Notice;

      ii.      Complete the Court-approved Notice Program by noticing the Settlement

Class by Publication Notice, sending out Long Form Notices, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Missing or Inaccurate Information, and sending Cash Payments to Settlement Class Members who submit a Valid Claim;

iii.    Establish and maintain the Settlement Fund escrow bank account approved by the Parties;

iv.    Establish and maintain a post office box for opt-out requests from the Settlement Class and to receive Claim Forms;

v.    Establish and maintain the Settlement Website;

vi.    Establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

vii.    Respond to any mailed Settlement Class member inquiries;

viii.    Process all opt-out requests from the Settlement Class;

ix.    Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information;

x.    In advance of the Final Approval Hearing, prepare a declaration to submit to the Court confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the amount of Valid Claims received, providing the

names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

   xi. Distribute, out of the Settlement Fund, Cash Payments electronically to Settlement Class Members who submit a Valid Claim for Cash Payment.

   xii. Pay Court-approved attorneys' fees and costs, and Service Awards out of the Settlement Fund;

   xiii. Pay Settlement Administration Costs out of the Settlement Fund following approval by Class Counsel;

   xiv. Any other Settlement Administration function at the instruction of Class Counsel and Defendant's Counsel, including, but not limited to, verifying that the Settlement Fund has been properly administered and that the Cash Payments have been properly distributed.

85. All costs incurred by the Settlement Administrator operating as administrator of the Settlement Fund shall be considered Settlement Administration Costs borne solely by the Settlement Fund. Any interest proceeds and/or income earned by the Settlement Fund shall remain therein and be used to pay Settlement Administration Costs.

**VII.**  **Notice to the Settlement Class**

86. Beginning no later than 20 days following entry of the Preliminary Approval Order, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court. The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date

by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. The Settlement Administrator shall establish the Settlement Website no later than the day Publication Notice is first made and shall have the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in a printable version that can be sent by U.S. Mail to the Settlement Administrator.

87.    The Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class, and the Publication Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day of the Opt-Out Period. The opt-out request must state the Settlement Class member's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form.

88.    The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to the Motion for Attorneys' Fees, Costs, and Service Awards, and the Publication Notice shall direct Settlement Class members to review the Long

Form Notice to obtain the objection instructions. Objections to the Settlement, and to the Motion for Attorneys' Fees, Costs, and Service Awards, must be mailed to the Clerk of the Court, Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

89.    For an objection to be considered by the Court, the objection must also set forth:

a.    the objector's full name, mailing address, telephone number, and email address (if any);

b.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

c.    the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.    the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards;

e.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

f.      any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

g.      the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

h.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

i.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

j.      the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or LBP may conduct limited discovery on any objector or objector's counsel.

**VIII.      Final Approval Order and Final Judgment**

90.      Plaintiffs shall file their Motion for Final Approval no later than 45 days before the Final Approval Hearing.

91.      Plaintiffs shall file their Motion for Attorneys' Fees, Costs, and Service Awards, no later than 45 days before the Final Approval Hearing.

92.     At the Final Approval Hearing, the Court will hear any argument on Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees, Costs, and Service Awards. In the Court's discretion, the Court also will hear any argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Motion for Attorneys' Fees, Costs, and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

93.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to approve the Motion for Attorneys' Fees, Costs and Service Awards. Such proposed Final Approval Order shall, among other things:

    a.     Determine that the Settlement is fair, adequate, and reasonable;

    b.     Finally certify the Settlement Class for settlement purposes only;

    c.     Determine that the Notice Program satisfies Due Process requirements;

    d.     Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order;

    e.     Release LBP and the other Released Parties from the Released Claims; and

    f.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including LBP, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

IX.    <u>**Claim Form Process and Disbursement of Cash Payments**</u>

94.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated in the Notice.

95.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement. Claims that have been properly and timely submitted are Valid Claims. The Settlement Administrator shall examine the Claim Form before designating the claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete and contains sufficient information to enable the mailing or electronic delivery of a Cash Payment. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

96.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate Claims.  No Settlement Class Member may submit more than one Claim Form. Settlement Class Members seeking benefits from the Settlement Fund shall submit a single Claim Form encompassing the request. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

97.    The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process.  The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can

instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

98. Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator, and the Settlement Administrator shall advise the Claimant or Settlement Class member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Missing or Inaccurate Information explaining what information is missing or inaccurate and is needed to validate the Claim and have it submitted for consideration.  The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form Deadline, or 15 days from the date the Notice of Missing or Inaccurate Information is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Missing or Inaccurate Information and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator for a Cash Payment. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless LBP's Counsel and Class Counsel

otherwise agree.

99.     Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

      a.     The Claimant purchased products that are not covered by the Settlement;

      b.     Failure to fully complete and/or sign the Claim Form;

      c.     Illegible Claim Form;

      d.     The Claim Form is fraudulent;

      e.     The Claim Form is duplicative of another Claim Form;

      f.     The Claimant is not a Settlement Class member;

      g.     The Claimant submitted a timely and valid request to opt out of the Settlement Class.

      h.     The person or entity submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

      i.     Failure to submit a Claim Form by the Claim Form Deadline; and/or

      j.     The Claim Form otherwise does not comply with the requirements of this Settlement.

100.     The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

      a.     The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

      b.     A request for additional information by sending a Notice of Missing or Inaccurate Information shall not be considered a rejection for purposes of this Paragraph.

      c.     If a Claim is rejected for fraud or duplication, the Settlement Administrator

shall notify the Claimant using the contact information provided in the Claim Form.

      d.    Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

      e.    The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

    101.    The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by

Class Counsel or Defendant's Counsel.  Additionally, Class Counsel and Defendant's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

    102.    No person or entity shall have any claim against LBP, Defendant's Counsel, Plaintiffs, the Settlement Class, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

    103.    No later than 75 days after Final Approval or 15 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Cash Payments to Class Members.

    104.    The Notice and the Settlement Website will explain to Settlement Class members that they may be entitled to a Cash Payment and how to submit a Claim Form.

    **X.**      **Service Awards, Attorneys' Fees and Costs**

    105.    *Service Awards* – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class

Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $2,500.00 each. If approved, the Service Awards shall be paid by the Settlement Administrator out of the Settlement Fund within 5 business days of the Effective Date. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Settlement Fund.

106.    *Attorneys' Fees and Costs* - Class Counsel shall apply to the Court for an award of attorneys' fees of up to 25 percent of the Settlement Fund, plus reimbursement of its litigation costs. If approved, the Attorneys' Fees and Cost Award shall be payable by the Settlement Administrator out of the Settlement Fund within 10 days of the Final Approval Order Date, and Class Counsel shall be responsible for providing to the Settlement Administrator all applicable payment routing information and tax I.D. numbers for Class Counsel.  Payment of the Attorneys' Fees and Cost Award shall be made by wire transfer to Bursor & Fisher, P.A. in accordance with wire instructions to be provided to the Settlement Administrator by Bursor & Fisher, P.A., and completion of necessary forms, including but not limited to W-9 forms.  Notwithstanding the foregoing, if for any reason the final judgment is reversed or rendered void as a result of an appeal(s), then Class Counsel shall return such funds to the Settlement Fund.

107.    This Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after the material Settlement terms, including the amount of the Settlement Fund, were negotiated.

108.    This Settlement is contingent on approval of the Settlement consideration set forth

in Section IV and the Releases set forth in Section XII of this Agreement. If the Court denies or modifies those proposed terms, the remaining provisions of the Agreement shall be null and void.

**XI.    Disposition of Residual Funds**

109.    Any funds remaining in the Settlement Fund following the 180-day period after the Settlement Administrator's provision of Cash Payments to Settlement Class Members on account of any unexecuted or undeliverable payments shall be distributed pro rata to Settlement Class Members who submitted Valid Claims, or shall otherwise be distributed cy pres to an organization agreed to by the Parties and agreed to by the Court.

**XII.    Releases**

110.    As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the alleged adulteration or contamination of any of the IGK Products, including any alleged benzene adulteration or contamination, (b) any of the alleged violations of laws or regulations cited in the Complaint or otherwise asserted in the Action or any alleged violations of any materially similar laws or regulations, (c) any of the advertising, labeling, or marketing identified in the Complaint or otherwise asserted in the Action, including but not limited to the alleged failure to disclose the presence of benzene in the IGK Products, (d) any testing or data alleged in the Complaint or otherwise asserted in the Action, (e) any acts, omissions, or

misrepresentations that were raised or could have been raised within the scope of the facts asserted in the Complaint or Action, including any claim that was or could be asserted under California's Proposition 65, or (f) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), (d), or (e) of this paragraph.

111.    Plaintiffs and Settlement Class Members covenant and agree that they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

112.    Settlement Class members who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement.

113.    With respect to the Released Claims, Plaintiffs and Settlement Class Members, expressly understand and acknowledge that it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and LBP with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code (to the extent it is applicable, or any other similar provision under federal, state or local law to the extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

114.    Plaintiffs or any Settlement Class Member expressly understand and acknowledge that they may hereafter discover facts other than or different from those that he or she knows or believes to be true with respect to the subject matter of the claims released herein, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he or she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be bound by this Agreement, including by the release herein and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he or she never receives actual notice of the Settlement and/or never receives a Cash Payment from the Settlement.

115.    Plaintiffs expressly represent that they do not currently have any other claims as to any IGK Products.

116.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

**XIII.**        <u>**Termination of the Settlement**</u>

117.    This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

       a.      Court approval of the Settlement consideration set forth in Section IV and the Releases set forth in Section XII of this Agreement;

       b.      The Court has entered the Preliminary Approval Order;

       c.      The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of approval; and

       d.      The Effective Date has occurred.

118.    If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

119.    In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action. In such event, the terms and provisions of this Agreement shall have no further force and effect with respect to the Parties and shall not be used in this case or in any other action or proceeding for any other purpose, and any order entered by this Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*.

120.    In the event this Agreement is terminated or fails to become effective, all funds in the Settlement Fund shall be promptly returned to LBP by no later than five (5) business days from such termination. In the event the Court denies Final Approval or it is overturned on appeal, such

funds shall be returned to LBP within five (5) business days of the Court's denial or the decision overturning the Settlement.

### XIV.     Effect of Termination

121.    The grounds upon which this Agreement may be terminated are set forth herein above. In the event of a termination, this Agreement shall be considered null and void; all of Plaintiffs', Class Counsel's, and LBP's obligations under the Settlement shall cease to be of any force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved.

122.    In the event the Settlement is terminated in accordance with the provisions of this Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

### XV.     No Admission of Liability

123.    This Agreement reflects the Parties' compromise and settlement of disputed claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law.  LBP has denied and continues to deny each of the claims and contentions alleged in the Complaint. LBP specifically denies that a class could or should be certified in the Action for litigation purposes. LBP does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. LBP has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted

in the Action.

124.    Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class members.

125.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

126.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, whether in the Action or in any proceeding in any court, administrative agency, or other tribunal.

127.    In addition to and without waiving any other defenses LBP may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or

other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

### XVI.        <u>Miscellaneous Provisions</u>

128.    <u>Gender and Plurals</u>. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

129.    <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

130.    <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

131.    <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

132.    <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

133.    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

134.    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of California, without regard to the principles thereof regarding choice of law.

135.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

136.    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

137.    <u>Notices</u>. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs:

Kristen Lake Cardoso, Esq.
Kopelowitz Ostrow P.A.
1 W. Las Olas Blvd., Ste. 500
Fort Lauderdale, FL 33301
cardoso@kolawyers.com

Sarah N. Westcot, Esq.
Bursor & Fisher P.A.
701 Brickell Ave., Ste. 1420
Miami, FL 33131
swestcot@bursor.com

Trent Kashima, Esq.
Milberg Coleman Bryson Phillips Grossman
402 W. Broadway, Suite 1760
San Diego, CA 92101
jnelson@milberg.com

If to Defendant:

Rocky C. Tsai, Esq.
Ropes & Gray LLP
Three Embarcadero Center, Suite 300
San Francisco, CA 94111
rocky.tsai@ropesgray.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

138.    <u>Modification and Amendment</u>. This Agreement may not be amended or modified, except by a written instrument signed by Class Counsel and LBP's Counsel and, if the Settlement has been approved preliminarily by the Court, as approved by the Court.

139.    <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

140.    <u>Authority</u>. Class Counsel (on behalf of the Plaintiffs and the Settlement Class

members), and LBP's Counsel, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and LBP to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

141.    Agreement Mutually Prepared. Neither Plaintiffs nor LBP shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

142.    Independent Investigation and Decision to Settle. The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with the Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge that they reviewed and analyzed data for a subset of the time at issue and that they and their experts used extrapolation to make certain determinations, arguments, and settlement positions. The Parties agree that this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to fully resolve their disputes in connection with the Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional

facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

143.    <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: ___02/08/2024_____

_____
Ella Henning (Feb 8, 2024 11:50 PST)
ELLA HENNING
*Plaintiff*

Dated: ___02/08/2024_____

_____
Lea Ammiano (Feb 8, 2024 14:15 EST)
LEA AMMIANO
*Plaintiff*

Dated: ___02/08/2024_____

_____
Kristen Lake Cardoso (Feb 8, 2024 12:05 EST)
KRISTEN LAKE CARDOSO, ESQ.
KOPELOWITZ OSTROW P.A.
*Class Counsel*

Dated: ___02/08/2024_____

_____
SARAH N. WESTCOT, ESQ.
BURSOR & FISHER
*Class Counsel*

Dated: ___02/08/2024_____

_____
TRENT KASHIMA, ESQ.
MILBERG
*Class Counsel*

Dated: _____     LUXURY BRAND PARTNERS, LLC

_____

By: _____

ITS_____

Dated: _____     _____

ROCKY C. TSAI

*Counsel for Defendant*

facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

143.   <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: _____          _____
                                        ELLA HENNING
                                        *Plaintiff*

Dated: _____          _____
                                        LEA AMMIANO
                                        *Plaintiff*

Dated: _____          _____
                                        KRISTEN LAKE CARDOSO, ESQ.
                                        KOPELOWITZ OSTROW P.A.
                                        *Class Counsel*

Dated: _____          _____
                                        SARAH N. WESTCOT, ESQ.
                                        BURSOR & FISHER
                                        *Class Counsel*

Dated: _____          _____
                                        TRENT KASHIMA, ESQ.
                                        MILBERG
                                        *Class Counsel*

Dated: _2/8/2024 | 10:53 AM EST_         LUXURY BRAND PARTNERS, LLC
       _____

36

DocuSigned by:

_Tevya Finger_

AE12B5CB1F984DB...

By: Tevya Finger

ITS President


Dated: _2/8/2024_____

_R. D._

ROCKY C. TSAI
*Counsel for Defendant*

*Henning et al. v. Luxury Brand Partners, LLC*, United States District Court for the Northern District of California Case No. 3:22-cv-07011

**IF YOU PURCHASED AN IGK DRY SHAMPOO PRODUCT MARKETED BY LUXURY BRAND PARTNERS, LLC, PRIOR TO _____, 2024, YOU MAY BE ENTITLED TO MAKE A CLAIM FOR A CASH PAYMENT UNDER A CLASS ACTION SETTLEMENT, AND YOUR LEGAL RIGHTS COULD BE AFFECTED BY THAT SETTLEMENT.**

*A U.S. District Court for the Northern District of California authorized this Notice.*
*This is **not** a solicitation from a lawyer.*

**You must file a timely and Valid Claim to receive a Cash Payment under the Settlement. Read this Notice and visit www._____ or call _____ for more information.**

**What is this Notice about?** A proposed Settlement has been reached in a class action proceeding. The complaint in this Action claims that IGK dry shampoo products marketed by Luxury Brand Partners, LLC, ("LBP") allegedly contained benzene. LBP denies the allegations of the complaint and disputes any allegation of wrongdoing whatsoever. The Parties, however, have decided to settle the Action. The Settlement, if approved, resolves the Action and provides benefits to Settlement Class Members who do not opt-out from the Settlement Class.

**Who is included?** The Settlement Class consists of all natural persons in the United States who prior to [INSERT DATE OF PRELIMINARY APPROVAL] have purchased one or more of the IGK Products for personal, family, or household use and not for resale.

**What benefits does the Settlement provide?** Under the Settlement, LBP has agreed to pay a total amount of $850,000.00 into a Settlement Fund, for the benefit of Settlement Class Members who purchased any of the following IGK dry shampoo Product lines: IGK Direct Flight; IGK Jet Lag; and IGK First Class. Under the Settlement, each Settlement Class member will have an opportunity to file a Claim for a Cash Payment from LBP. If the Settlement is approved and becomes final, each Settlement Class Member who purchased an IGK dry shampoo Product who files a Valid Claim will be entitled to a Cash Payment, the amount of which depends on whether there is Proof of Purchase. If Proof of Purchase is submitted with the Claim, the Cash Payment will be for the full purchase price for as many IGK dry shampoo Products purchased and identified on the Claim Form, subject to the *pro rata* reduction described below. Settlement Class Members who purchased IGK Products, but do not have Proof of Purchase, shall be entitled to $4.00 for each IGK dry shampoo Product purchased (subject to the *pro rata* reduction described below), for a maximum of five products claimed. The Settlement Fund will be used to pay Court-awarded attorneys' fees and costs to Class Counsel, Service Awards to the Class Representatives, and Settlement Administration Costs. Class Counsel will be requesting up to 25.00% of the Settlement Fund, or $212,500.00, for attorneys' fees and up to $2,500.00 for Service Awards for each of the Plaintiffs for serving as Class Representatives. Each eligible Settlement Class Member's actual Cash Payment from the Net Settlement Fund may be reduced *pro rata* based upon the number and total dollar value of Valid Claims.

**What are the options?** You must file a timely and Valid Claim to receive a Cash Payment. Claim Forms may be filed online at www._____ or by mailing the Claim Form to _____. Claim Forms must be submitted or postmarked no later than _____, **2024**. If you are a Settlement Class member and do nothing, and the Settlement is approved and becomes final, you will <u>not</u> receive a Cash Payment under this Settlement, and you will give up your right to bring your own lawsuit against LBP about the issues in the Action. If you opt-out of the Settlement Class (meaning you are excluding yourself), you will give up your right to receive a Cash Payment, but will retain any right you may have to sue LBP about the issues in this Action. To opt-out, you must mail a signed, written request to opt-out, postmarked no later than _____, **2024**, to: _____. Requests to opt-out must be specific to individual Settlement Class members, and Settlement Class members cannot request to opt-out as a class or group. If you do not opt-out, you may object to the Settlement and/or to Class Counsel's request for attorneys' fees and costs and for Service Awards to the Class Representatives. Your objection must be postmarked no later than _____, **2024**. For more information on the opt-out and objection requirements, visit www._____.

**What happens next?** The Court will hold a final approval hearing on _____, **2024 at _____ a.m./p.m. PT**, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom _____, to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class. If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost. The date and time of this hearing may change without further notice. Please check www._____ for updates.

**Who represents the Settlement Class?** The Court has appointed the following attorneys at the following law firms to represent the Settlement Class: Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Trent Kashima of Milberg Coleman Bryson Phillips Grossman, and Sarah N. Westcot of Bursor & Fisher P.A. Together, these attorneys are called Class Counsel. Settlement Class members do not need to pay these attorneys out of their pocket. These attorneys and their law firms, who worked on behalf of the Plaintiffs and Settlement Class, will apply for compensation under the terms of the Settlement. If you are a Settlement Class member and want to be represented by your own lawyer, you may hire one at your own expense.

**How do I get more information?** For more information and to view copies of case documents, including a Long Form Notice about your rights under the proposed Settlement, the full Settlement Agreement, and other important documents related to the Settlement (once they are filed), visit www._____ or call _____. **PLEASE DO NOT CONTACT THE COURT OR LUXURY BRAND PARTNERS, LLC.**

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

United States District Court for the Northern District of California
*Henning et al. v. Luxury Brand Partners, LLC,*
Case No. 3:22-cv-07011

> **IF YOU PURCHASED AN IGK DRY SHAMPOO PRODUCT MARKETED BY LUXURY BRAND PARTNERS, LLC, PRIOR TO _____, 2024,**
> **YOU MAY BE ENTITLED TO MAKE A CLAIM FOR A CASH PAYMENT UNDER A CLASS ACTION SETTLEMENT, AND YOUR LEGAL RIGHTS COULD BE AFFECTED BY THAT SETTLEMENT.**

*A federal court authorized this Notice. You are not being sued.*
*This is **not** a solicitation from a lawyer.*

- A Settlement has been reached with Defendant, Luxury Brand Partners, LLC, in a class action lawsuit about alleged benzene contamination in IGK dry shampoo products marketed by Defendant ("IGK Products").

- The lawsuit is captioned *Henning et al. v. Luxury Brand Partners, LLC*, Case No. 3:22-cv-07011, pending in the United States District Court, Northern District of California. Defendant denies the lawsuit's allegations and denies that it did anything wrong but has agreed to settle the Action to avoid the costs and distractions associated with continuing this case.

- You are included in this Settlement as a Settlement Class member if, in the United States, you purchased one or more of the IGK Products for personal, family, or household use and not for resale prior to _____, 2024.

- Your rights are affected whether you act or don't act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a Cash Payment from this Settlement is by submitting a valid and timely Claim Form.<br><br>You can submit your Claim Form online at _____ or download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **_____, 2024** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no Cash Payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | **_____, 2024** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for a Cash Payment. | **_____, 2024** |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not get a Cash Payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them—**are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION ................................................................................................................ 3

WHO IS IN THE SETTLEMENT ................................................................................................ 4

THE SETTLEMENT BENEFITS .................................................................................................. 5

HOW TO GET A CASH PAYMENT—MAKING A CLAIM ...................................................... 5

THE LAWYERS REPRESENTING YOU ................................................................................... 6

OPTING OUT OF THE SETTLEMENT ...................................................................................... 7

COMMENTING ON OR OBJECTING TO THE SETTLEMENT ............................................... 7

THE COURT'S FINAL APPROVAL HEARING ......................................................................... 9

IF I DO NOTHING ....................................................................................................................... 9

GETTING MORE INFORMATION ............................................................................................. 9

# BASIC INFORMATION

## 1. Why was this Notice issued?

A federal court authorized this Notice because you have a right to know about the proposed Settlement of this Action and about all of your options before the Court decides whether to grant Final Approval of the Settlement. This Notice explains the Action, your legal rights, what benefits are available, and who can receive them.

The Honorable Trina L. Thompson of the United States District Court for the Northern District of California is overseeing this Action. The Action is captioned *Henning et al. v. Luxury Brand Partners, LLC,* Case No. 3:22-cv-07011 (N.D. Cal.). The people who filed this Action are called the "Plaintiffs" and the company they sued, Luxury Brand Partners, LLC, is called the "Defendant."

## 2. What is this Action about?

This Action alleges that IGK Products allegedly contained unsafe levels of benzene. The Defendant denies the Action's allegations, and denies that it did anything wrong, but nevertheless has decided to settle the Action to avoid the costs and distractions associated with continuing this case. The Settlement, if approved, resolves the Action and provides benefits to Settlement Class Members who do not opt-out from the Settlement Class.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit [Website URL]**    3

142089645_1

## 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Class Representatives" or "Plaintiffs." Together, the people included in the class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out from a settlement. In this Settlement, the Class Representatives are Ella Henning and Lea Ammiano.

## 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or the Defendant. The Defendant denies all claims and contends that it has not violated any laws whatsoever. Plaintiffs and the Defendant agreed to a Settlement to avoid the costs and distractions associated with continuing this case, and to allow the Settlement Class Members to receive Cash Payments from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Settlement Class members.

## WHO IS IN THE SETTLEMENT?

## 5. Who is included in the Settlement?

The Settlement Class consists of all persons in the United States who, prior to [INSERT DATE OF PRELIMINARY APPROVAL], 2024, purchased one or more of the IGK Products for personal, family, or household use and not for resale.

"IGK Product(s)" means and includes the IGK Direct Flight, IGK Jet Lag, and IGK First Class dry shampoo product or products marketed by Defendant.

## 6. Are there exceptions to being included?

Yes. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Defendant, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the IGK Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly opt-out of the Settlement; and (e) the Court, the Court's immediate family, and Court staff.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing or writing to Settlement Administrator at:

[email address]

_____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

You may also view the Settlement Agreement and Releases at [Website URL].

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

Under the Settlement, Defendant has agreed to pay a total amount of $850,000.00 into a Settlement Fund for IGK Products, for the benefit of Settlement Class Members. Under the proposed Settlement, each Settlement Class member will have an opportunity to file a Claim for a Cash Payment. The Settlement Fund will also be used to pay Court-awarded attorneys' fees and costs to Class Counsel, Service Awards to the Class Representatives, and Settlement Administration Costs.

### 8. How much will my payment be?

If the Settlement is approved and becomes final, each Settlement Class Member who purchased an IGK Product and who files a Valid Claim will be entitled to a Cash Payment, the amount of which depends upon whether there is Proof of Purchase. If Proof of Purchase is submitted with the Claim, the Cash Payment will be for the full purchase price for as many IGK Products purchased and identified on the Claim Form. Settlement Class Members who purchased IGK Products, but do not have Proof of Purchase, shall be entitled to $4.00 for each IGK Product purchased, for a maximum of five products claimed. There may be a pro rata reduction to each Settlement Class Member's amount of their Cash Payment depending upon the total amount of dollars calculated for Valid Claims in comparison to the $850,000.00 Settlement Fund.

Each eligible Settlement Class Member's actual Cash Payment from the Net Settlement Fund may be reduced pro rata based upon the number and total dollar value of Valid Claims.

### 9. What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this Settlement resolves. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement can be found at [Website URL].

## HOW TO GET A CASH PAYMENT – MAKING A CLAIM

### 10. How do I submit a Claim and get a Cash Payment?

You may file a Claim if you are a person in the United States who, prior to _____, 2024, purchased one or more of the IGK Products for personal, family, or household use and not for resale.

Claim Forms may be submitted online at [Website URL] or printed from the website and mailed to the Settlement Administrator at: _____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

You may also contact the Settlement Administrator to request a Claim Form by telephone 1-XXX-XXX-XXXX, by email [Email Address], or by U.S. mail at the address above.

## 11. What is the deadline for submitting a Claim?

If you submit a Claim by U.S. mail, the completed and signed Claim Form must be postmarked by **[Deadline Date]**. If submitting a Claim Form online, you must do so by **[Deadline Date]**.

## 12. When will I get my Cash Payment?

The Court will hold a Final Approval Hearing on _____, 2024 to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class.

If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Cash Payments will be distributed as soon as possible, if and when the Court grants Final Approval of the Settlement and after any appeals are resolved.

## THE LAWYERS REPRESENTING YOU

## 13. Do I have a lawyer in the case?

Yes. The Court has appointed the following attorneys at the following law firms to represent the Settlement Class: Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Trent Kashima of Milberg Coleman Bryson Phillips Grossman, and Sarah N. Westcot of Bursor & Fisher P.A. Together, these attorneys are called Class Counsel.

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Class Counsel will be requesting up to 25.00% of the Settlement Fund, or $212,500.00 for attorneys' fees and up to $2,500.00 for each of the Plaintiffs for serving as Class Representatives. The Court may award less than these amounts. If approved, these fees, costs, and Service Awards will be paid from the Settlement Fund.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 16. How do I opt out of the Settlement?

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is **[Deadline Date]**.

To exclude yourself from the Settlement, you must submit a written request for exclusion that includes the following information: (i) the case name: *Henning et al. v. Luxury Brand Partners, LLC*, Case No. 3:22-cv-07011 (N.D. Cal.); (ii) your name, address, telephone number, and email address (if any); (iii) your personal signature; and (iv) a statement clearly indicating your intent to be excluded from the Settlement Class.

Your request for exclusion must be mailed to the Settlement Administrator at the address below, postmarked no later than **[Deadline Date]**.

_____Settlement
ATTN: Exclusion Request
PO Box 58220
Philadelphia, PA 19102

If you exclude yourself, you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive a Cash Payment if you exclude yourself. You may only exclude yourself – not any other person.

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

## 17. How do I tell the Court if I like or do not like the Settlement?

If you are a Settlement Class Member, you can choose (but are not required) to object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

For an objection to be considered by the Court, the objection must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Class Counsel's application for attorneys' fees, costs, and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or Defendant may conduct discovery on any objector or objector's counsel.

Objections must be mailed to the Clerk of the Court, Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator. The deadline to submit an objection is **[Deadline Date]**.

If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

| Clerk of Court | Class Counsel | Class Counsel |
|---|---|---|
| Clerk of Court United States District Court 450 Golden Gate Avenue San Francisco, CA 94102 | Kristen Lake Cardoso Kopelowitz Ostrow P.A. 1 W. Las Olas Blvd., Ste. 500 Fort Lauderdale, FL 33301 | Sarah N. Westcot Bursor & Fisher P.A. 701 Brickell Ave., Ste. 1420 Miami, FL 33131 |

| Class Counsel | Defendant's Counsel | Settlement Administrator |
|---|---|---|
| Trent Kashima<br>Milberg Coleman Bryson<br>Phillips Grossman<br>402 W. Broadway, Suite 1760<br>San Diego, CA 92101 | Rocky C. Tsai<br>Ropes & Gray LLP<br>Three Embarcadero Center,<br>Suite 300<br>San Francisco, CA 94111 | _____ Settlement<br>ATTN: Objections<br>PO Box 58220<br>Philadelphia, PA 19102 |

## 18. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 19. When is the Court's Final Approval Hearing?

The Court will hold a Final Approval Hearing on _____, 2024 at _____ a.m./p.m. PT, at the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom _____, to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class. If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost. The date and time of this hearing may change without further notice. Please check www._____ for updates.

## 20. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Approval Hearing to talk about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider an objection that was filed on time.

## IF I DO NOTHING

## 21. What happens if I do nothing at all?

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit [Website URL]**          9

142089645_1

If you are a Settlement Class member and you do nothing, you will give up the rights explained in **Question 9**, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendant and the Released Parties about the legal issues resolved by this Settlement. In addition, you will not receive a Cash Payment from this Settlement.

## GETTING MORE INFORMATION

### 22. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, [Website URL].

If you have additional questions, you may contact the Settlement Administrator by email, phone, or mail:

Email: [Email Address]

Toll-Free: 1-XXX-XXX-XXXX

Mail: _____*Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Publicly filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of California or by reviewing the Court's online docket.

**PLEASE DO NOT CONTACT THE COURT OR LUXURY BRAND PARTNERS, LLC**

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court
Northern District of California**

*Henning et al. v. Luxury Brand Partners, LLC.*
Case No. 3:22-cv-07011

**Claim Form**

</td><td>

**Luxury Brand Partners, LLC**

</td></tr>
</table>

### CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at [WEBSITE URL] or by U.S. Mail to the following address: _____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Please make sure to include the completed and signed Claim Form and all supporting materials in one envelope.

2. You must complete the entire Claim Form. Please type or write your responses legibly.

3. Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. Copies of documentation submitted in support of your Claim should be clear and legible.

4. If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information. If you do not respond, the Settlement Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS] or by mail at the address listed above.

6. "IGK Product(s)" means and includes the IGK Direct Flight, IGK Jet Lag, and IGK First Class dry shampoo product or products marketed by Luxury Brand Partners, LLC.

7. You must notify the Settlement Administrator if your address or payment information changes. If you do not, you may not receive your Cash Payment.

8. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be mailed to the Settlement Administrator postmarked no later than [DEADLINE DATE].**

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of California**

*Henning et al. v. Luxury Brand Partners, LLC.*
Case No. 3:22-cv-07011

**Claim Form**

</td><td>

**Luxury Brand Partners, LLC**

</td></tr>
</table>

## I.  NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

|  |  |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

|  |  |  |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address**

## II.  IGK PRODUCT PURCHASE INFORMATION

*Complete this section if you purchased one or more **IGK** products in the United States prior to _____.*

Select **one** of the following options:

☐ **I am enclosing Proof of Purchase of one or more IGK Products.**

Please provide the amount paid for the IGK Products for which you are providing Proof of Purchase:

☐ **I do not have Proof of Purchase but attest to having purchased one or more IGK Products.**

Enter the number of IGK Products you attest to having purchased (maximum of 5):

Note: Cash Payments may be decreased on a *pro rata* basis depending on the total amount of dollars calculated for Valid Claims in comparison to the $850,000.00 Settlement Fund.

2

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of California**

*Henning et al. v. Luxury Brand Partners, LLC.*
Case No. 3:22-cv-07011

**Claim Form**

</td><td>

**Luxury Brand Partners, LLC**

</td></tr>
</table>

Please select **<u>one</u>** of the following Cash Payment options:

☐ **Prepaid Mastercard** *(Requires an email address)*

☐ **Venmo** *(Requires the mobile number associated with your Venmo account)*

☐ **Zelle** *(Requires the email address or mobile number associated with your Zelle account)*

Enter the email address or mobile number required for the payment option you selected: _____

---

### III. VERIFICATION AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that all the information provided in this Claim Form, including supporting documentation, is true and correct, and that nobody has submitted another Claim Form in connection with this Settlement on my behalf.

I understand that by signing and submitting this Claim Form, the Settlement Administrator may request additional information to validate my Claim Form, and that failure to provide requested information may result in the denial of my Claim Form.

_____          Date: _____
Your signature                                                                  MM          DD          YYYY

_____
Your name

**EXHIBIT B**

# BURSOR & FISHER

P.A.

www.bursor.com

**701 BRICKELL AVENUE**          **1330 AVENUE OF THE AMERICAS**          **1990 NORTH CALIFORNIA BLVD.**
**MIAMI, FL 33131**                    **NEW YORK, NY 10019**                     **WALNUT CREEK, CA 94596**

## <u>FIRM RESUME</u>

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act. During the pendency of the defendant's appeal, the case settled for $75.6 million, the largest settlement in the history of the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

BURSOR&FISHER
P.A.

5. *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6. *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7. *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8. *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9. *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein et al. v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard-brand antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19,

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19,

70. *Armstead v. VGW Malta Ltd. et al.* (Cir. Ct. Henderson Cnty. Oct. 3, 2022) to present a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

71. *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, (N.D. Ill. Oct. 26, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act;

72. *Delcid et al. v. TCP HOT Acquisitions LLC et al.* (S.D.N.Y. Oct. 28, 2022) to represent a certified nationwide class of purchasers of Sure and Brut-brand antiperspirants that were allegedly contaminated with benzene,

73. *Kain v. The Economist Newspaper NA, Inc.* (E.D. Mich. Dec. 15, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

74. *Strano v. Kiplinger Washington Editors, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

75. *Moeller v. The Week Publications, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

76. *Ambrose v. Boston Globe Media Partners, LLC* (D. Mass. May 25, 2023) to represent a class of newspaper subscribers who were also Facebook users under the Video Privacy Protection Act.

77. *In re: Apple Data Privacy Litigation*, (N.D. Cal. July 5, 2023) to represent a putative nationwide class of all persons who turned off permissions for data tracking and whose mobile app activity was still tracked on iPhone mobile devices.

78. *Pratt v. KSE Sportsman Media, Inc.* (E.D. Mich. Aug. 25, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

## <u>SCOTT A. BURSOR</u>

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor.  The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict.  Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury.  Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims.  After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation.  Mr. Bursor served as lead trial counsel for this class again in 2013

during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class. Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert. This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members. In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.* Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system. In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case. Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006. This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*. After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement. The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004. In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science. Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council." He is also a member of Phi Beta Kappa.

### ***Representative Cases***

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court). Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor. The case lasted more than seven years and involved two trials. The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000. The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court). Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems. Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions. The settlements fundamentally

changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### ***Selected Class Settlements***

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late fees.

*West v. California Service Bureau*, *Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A. Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation. He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings. Recently, he served on the Plaintiffs' Executive Committee in *In Re: Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement. Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal. In 1998, Joe graduated with honors from Bucknell University.

### *Selected Published Decisions:*

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### ***Selected Class Settlements:***

*Edwards v. Mid-Hudson Valley Federal Credit Union*, Case No. 22-cv-00562-TJM-CFH (N.D.N.Y. 2023) – final approval granted for $2.2 million class settlement to resolve claims that an upstate New York credit union was unlawfully charging overdraft fees on accounts with sufficient funds.

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

BURSOR&FISHER
P.A.

### SARAH N. WESTCOT

Sarah N. Westcot is the Managing Partner of Bursor & Fisher's Miami office. She focuses her practice on consumer class actions, complex business litigation, and mass torts.

She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience.  Sarah served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Sarah also has significant experience in high-profile, multi-district litigations.  She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida).  She also serves on the Plaintiffs' Executive Committee in *In re Apple Inc. App Store Simulated Casino-Style Games Litigation,* MDL No. 2985 (N.D. Cal.) and *In Re: Google Play Store Simulated Casino-Style Games Litigation*, MDL No. 3001 (N.D. Cal.).

Sarah is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the United States District Courts for the Southern and Middle Districts of Florida, and the bars of the United States Courts of Appeals for the Second, Eighth, and Ninth Circuits.

Sarah received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, she was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA, gaining early trial experience in both roles. She graduated with honors from the University of Florida in 2005.

Sarah is a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to The National Trial Lawyers Top 40 Under 40 Civil Plaintiff Lawyers for 2022.

### JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the District Court for the District of Columbia, and the United States Courts of Appeals for the Second and Ninth Circuits.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015, 2016 and 2017 Super Lawyer Rising Star.

### *Selected Published Decisions:*

*Fields v. Syrian Arab Republic*, Civil Case No. 18-1437 (RJL), entering a judgment of approximately $850 million in favor of the family members of victims of terrorist attacks carried out by ISIS with the material support of Syria.

*Farwell v. Google LLC*, 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022), denying social media defendant's motion to dismiss BIPA claims brought on behalf of Illinois school students using Google's Workspace for Education platform on laptop computers.

*Weiman v. Miami University*, Case No. 2020-00614JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Waitt v. Kent State University*, Case No. 2020-00392JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Duke v. Ohio University*, Case No. 2021-00036JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Keba v. Bowling Green State University*, Case No. 2020-00639JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Kirkbride v. The Kroger Co.*, Case No. 2:21-cv-00022-ALM-EPD, denying motion to dismiss claims based on the allegation that defendant overstated its usual and customary prices and thereby overcharged customers for generic drugs.

### *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing in photos on the Google Photos platform.

## JOEL D. SMITH

Joel D. Smith is a Partner with Bursor & Fisher, P.A.  Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters.  Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming.  Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several dozen witnesses.  Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley.  While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California and Massachusetts, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, --- Fed App'x --- 2022 WL 1744107 (9th Cir. May 31, 2022), reversing dismissal in a class action alleging surreptitious monitoring of internet communications.

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

### *Selected Class Settlements:*

*Recinos et al. v. The Regents of the University of California,* Superior Court for the State of California, County of Alameda, Case No. RG19038659 – final approval granted for a settlement providing debt relief and refunds to University of California students who were charged late fees.

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.) – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

## **NEAL J. DECKANT**

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery. Neal focuses his practice on complex business litigation and consumer class actions. Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards. During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state. Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star. In

2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

BURSOR&FISHER
P.A.

### *Selected Publications:*

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

## YITZCHAK KOPEL

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation. He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act. Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions. Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern District of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.*, 482 F.Supp.3d 80, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

## YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A.  Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation.  He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages

under the Telephone Consumer Protection Act.  Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements.  Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar.  Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes.  In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice.  In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019).  Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent.  Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case towards trial.  With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times.  Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

### *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc.*, 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

*Brown v. Comcast Corp.*, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc*., 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co*., Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co*., 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc*., 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. (d/b/a Turkish Airlines)*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying airline's motion to dismiss its customers claims for failure to refund flights cancelled due to COVID-19.

### ***Selected Class Settlements:***

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2022) granting final approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc.* (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc.* (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## PHILIP L. FRAIETTA

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A.  He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York.  Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*.  During law school, Alec served as an Articles Editor for Brooklyn Law Review.  In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County.  Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

## STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## STEFAN BOGDANOVICH

Stefan Bogdanovich is an Associate with Bursor & Fisher, P.A. Stefan litigates complex civil and class actions typically involving privacy, intellectual property, entertainment, and false advertising law.

Prior to working at Bursor & Fisher, Stefan practiced at two national law firms in Los Angeles.  He helped represent various companies in false advertising and IP infringement cases, media companies in defamation cases, and motion picture producers in royalty disputes.  He also advised corporations and public figures on complying with various privacy and advertising laws and regulations.

Stefan is admitted to the State Bar of California and all of the California Federal District Courts.  He is also a Certified Information Privacy Professional.

Stefan received his Juris Doctor from the University of Southern California Gould School of Law in 2018, where he was a member of the Hale Moot Court Honors Program and the Trial Team.  He received the highest grade in his class in three subjects, including First Amendment Law.

## BRITTANY SCOTT

Brittany Scott is an Associate with Bursor & Fisher, P.A.  Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions.  Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy

Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act.  In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, the Northern District of Illinois, the Ninth Circuit Court of Appeals, the Seventh Circuit Court of Appeals, and Second Circuit Court of Appeals.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor.  Brittany published a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court.  In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### *Selected Class Settlements:*

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (Cir. Ct. DuPage Cnty. 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

*Clarke et al. v. Lemonade Inc.*, Case No. 2022LA000308 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $4 million class settlement to resolve claims for alleged BIPA violations.

*Whitlock v. Jabil Inc.*, Case No. 2021CH00626 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $995,000 class settlement to resolve claims for alleged BIPA violations.

### MAX S. ROBERTS

Max Roberts is an Associate in Bursor & Fisher's New York office.  Max focuses his practice on class actions concerning data privacy and consumer protection.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm and is now Co-Chair of the firm's Appellate Practice Group.

In 2023, Max was named "Rising Star" in the New York Metro Area by Super Lawyers®.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.*  During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis*.  In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic.  Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), affirming district court's denial of motion to compel arbitration.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that Section 631 of the California Invasion of Privacy Act requires prior consent to wiretapping.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Mora v. J&M Plating, Inc.*, 213 N.E.3d 942 (Ill. App. Ct. 2d Dist. 2022), reversing circuit court and holding that Section 15(a) of Illinois' Biometric Information Privacy Act requires an entity to establish a retention and deletion schedule for biometric data at the first moment of possession.  Max personally argued the appeal before the Second District, which can be listened to here.

*James v. Walt Disney Co.*, --- F. Supp. 3d ---, 2023 WL 7392285 (N.D. Cal. Nov. 8, 2023), largely denying motion dismiss alleged violations of California and Pennsylvania wiretapping statutes.

*Yockey v. Salesforce, Inc.*, 2023 WL 5519323 (N.D. Cal. Aug. 25, 2023), denying in part motion dismiss alleged violations of California and Pennsylvania wiretapping statutes.

*Cristostomo v. New Balance Athletics, Inc.*, 647 F. Supp. 3d 1 (D. Mass. 2022), denying motion to dismiss and motion to strike class allegations in case involving sneakers marketed as "Made in the USA."

*Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022), denying in part motion to dismiss in case involving non-invasive prenatal testing product.

*Louth v. NFL Enterprises LLC*, 2022 WL 4130866 (D.R.I. Sept. 12, 2022), denying motion to dismiss alleged violations of the Video Privacy Protection Act.

*Soo v. Lorex Corp.*, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

### *Selected Class Settlements:*

*Sholopa v. Turk Hava Yollari A.O. (d/b/a Turkish Airlines)*, Case No. 1:20-cv-3294-ALC (S.D.N.Y. 2023) – final approval granted for $14.1 million class settlement to resolve claims of passengers whose flights with Turkish Airlines were cancelled due to COVID-19 and who did not receive refunds.

*Payero v. Mattress Firm, Inc.*, Case No. 7:21-cv-3061-VB (S.D.N.Y. 2023) – final approval granted for $4.9 million class settlement to resolve claims of consumers who purchased allegedly defective bed frames.

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

### *Bar Admissions*

- New York State
- Southern District of New York
- Eastern District of New York
- Northern District of New York
- Northern District of Illinois
- Central District of Illinois
- Eastern District of Michigan
- District of Colorado
- Third Circuit Court of appeals
- Seventh Circuit Court of Appeals
- Ninth Circuit Court of Appeals

### JULIA K. VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A. Julia focuses her practice on complex civil litigation and class actions. Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes. During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award. Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.

In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

### JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

### MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A.  Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations.  Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

### JENNA GAVENMAN

Jenna Gavenman is an Associate with Bursor & Fisher, P.A.  Jenna focuses her practice on complex civil litigation and consumer class actions.  Jenna was a Summer Associate and a part-time intern with Bursor & Fisher prior to joining the firm as a full-time Associate in September 2022.

Jenna is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

BURSOR&FISHER
P.A.

Jenna received her Juris Doctor in 2022 from the University of California, Hastings College of the Law (now named UC Law SF).  During law school, she was awarded an Honorable Mention for Best Oral Argument in her First-Year Moot Court section.  Jenna also participated in both the Medical Legal Partnership for Seniors (MLPS) and the Lawyering for Children Practicum at Legal Services for Children—two of UC Hastings's nationally renowned clinical programs.  Jenna was awarded the Clinic Award for Outstanding Performance in MLPS for her contributions to the clinic.  In addition, Jenna volunteered with her law school's Legal Advice and Referral Clinic and as a LevelBar Mentor.

In 2018, Jenna graduated *cum laude* from Villanova University with a B.A. in Sociology and Spanish (double major).  Jenna was a Division I athlete, competing on the Villanova Women's Water Polo varsity team for four consecutive years.

### EMILY HORNE

Emily Horne is an Associate with Bursor & Fisher, P.A.  Emily focuses her practice on complex civil litigation and consumer class actions.  Emily was a Summer Associate with Bursor & Fisher prior to joining the firm.

Emily is admitted to the State Bar of California.

Emily received her Juris Doctor from the University of California, Hastings College of the Law in 2022 (now UC, Law SF).  During law school, Emily served as Editor-in-Chief for the UC Hastings Communications and Entertainment Law Journal, and she competed on the Moot Court team.  Emily also served as a judicial extern in the Northern District of California and as a Teaching Assistant for Legal Writing & Research.  In 2015, Emily graduated from Scripps College with a B.A. in Sociology.

### IRA ROSENBERG

Ira Rosenberg is an Associate with Bursor & Fisher, P.A.  Ira focuses his practice on complex civil litigation and class actions.

Ira received his Juris Doctor in 2022 from Columbia Law School. During law school, Ira served as a Student Honors Legal Intern with Division of Enforcement at the U.S. Securities and Exchange Commission.  Ira also interned during law school in the Criminal Division at the United States Attorney's Office for the Southern District of New York and with the Investor Protection Bureau at the Office of the New York State Attorney General.  Ira graduated in 2018 from Beth Medrash Govoha with a B.A. in Talmudic Studies.

### LUKE SIRONSKI-WHITE

Luke Sironski-White is an Associate with Bursor & Fisher, P.A., focusing on complex civil litigation and consumer class actions.  Luke joined the firm as a full-time Associate in August 2022.

Luke is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Luke received his Juris Doctor in 2022 from the University of California, Berkeley School of Law.  During law school, Luke was on the board of the Consumer Advocacy and Protection Society (CAPS), edited for the Berkeley Journal of Employment and Labor Law, and volunteered with the Prisoner Advocacy Network.

In 2017, Luke graduated from the University of Chicago with a B.A. in Anthropology. Before entering the field of law Luke was a professional photographer and filmmaker.

## JONATHAN L. WOLLOCH

Jonathan L. Wolloch is an Associate with Bursor & Fisher, P.A.  Jonathan focuses his practice on complex civil litigation and class actions.  Jonathan was a Summer Associate with Bursor & Fisher prior to joining the firm.

Jonathan is admitted to the State Bar of Florida and the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Jonathan received his Juris Doctor from the University of Miami School of Law in 2022, graduating magna cum laude.  During law school, Jonathan served as a judicial intern to the Honorable Beth Bloom for the Southern District of Florida.  He received two CALI Awards for earning the highest grade in his Trusts & Estates and Substantive Criminal Law courses, and he was elected to the Order of the Coif.  Jonathan was also selected for participation in a semester long externship at the Florida Supreme Court, where he served as a judicial extern to the Honorable John D. Couriel.  In 2018, Jonathan graduated from the University of Michigan with a B.A. in Political Science.

## INES DIAZ

Ines Diaz is an Associate with Bursor & Fisher, P.A. Ines focuses her practice on complex civil litigation and class actions.

Ines is admitted to the State Bar of California.

Ines received her Juris Doctor in 2023 from the University of California, Berkeley School of Law.  During law school, Ines served as an Executive Editor of the California Law Review. She also served as an intern with the East Bay Community Law Center's Immigration Clinic and as a Fellow of the Berkeley Law Academic Skills Program.  Additionally, Ines served as an instructor with the University of California, Berkeley Extension, Legal Studies Global Access Program where she taught legal writing to international law students.  In 2021, Ines was selected for a summer externship at the California Supreme Court where she served as a judicial extern for the Honorable Mariano-Florentino Cuéllar.

BURSOR&FISHER
P.A.

### CAROLINE C. DONOVAN

Caroline C. Donovan is an Associate with Bursor & Fisher, P.A.  Caroline focuses her practice on complex civil litigation, data protection, mass arbitration, and class actions.  Caroline interned with Bursor & Fisher during her third year of law school before joining full time in Fall 2023.

Caroline is admitted to the State Bar of New York.

Caroline received her Juris Doctor in 2023 from Brooklyn Law School.  During law school, Caroline was a member of the Moot Court Honor Society Trial Division, where she was chosen to serve as a National Team Member.  Caroline competed and coached in numerous competitions across the country, and placed second at regionals in AAJ's national competition in both her second and third year of law school.  Caroline was also the President of the Art Law Association, and the Treasurer of the Labor and Employment Law Association.

During law school, Caroline was a judicial intern for Judge Kenneth W. Chu of the National Labor Relations Board.  She also interned at the United States Attorney's Office in the Eastern District of New York, as well as a securities class action firm.

### JOSHUA B. GLATT

Joshua Glatt is an Associate with Bursor & Fisher, P.A.  Joshua focuses his practice on complex civil litigation and consumer class actions.  Joshua was a Summer Associate with Bursor & Fisher prior to joining the firm as an Associate.

Joshua earned his Juris Doctor from the University of California College of the Law, San Francisco (formerly U.C. Hastings).  While there, he received a CALI Award for earning the highest grade in Constitutional Law II and served on the executive boards of the Jewish Law Students Association and the American Constitution Society.  Prior to law school, Joshua graduated *summa cum laude* from the Walter Cronkite School of Journalism and Mass Communication at Arizona State University in 2016 and earned a master's degree from the University of Southern California in 2018.

### JOSHUA R. WILNER

Joshua Wilner is an Associate with Bursor & Fisher, P.A.  Joshua focuses his practice on complex civil litigation, data privacy, consumer protection, and class actions.  Joshua was a Summer Associate at Bursor & Fisher prior to joining the firm full time in Fall 2023.

Joshua is admitted to the State Bar of California.

Joshua received his Juris Doctor in 2023 from Berkeley Law.  During law school, he received the American Jurisprudence Award for Constitutional Law.

During law school, Joshua served on the board of the Berkeley Journal of Employment and Labor Law.  Joshua also interned at Disability Rights California, Legal Aid at Work, and a private firm that worked closely with the ACLU of Northern California to enforce the California

BURSOR&FISHER
P.A.

Racial Justice Act.  In 2022 and 2023, Joshua worked as a research assistant for Professor Abbye Atkinson.

## VICTORIA ZHOU

Victoria Zhou is an Associate in Bursor & Fisher's New York office.  Victoria focuses her practice on class actions concerning data privacy and consumer protection.

Victoria is admitted to the State Bar of New York.

Victoria received her Juris Doctor from Fordham Law School in 2023.  During law school, Victoria served as an Associate Editor of the Moot Court Board and competed in multiple mock trial competitions as a member of the Brendan Moore Trial Advocates.  In addition, Victoria served as a judicial extern to Chief Judge Mark A. Barnett of the United States Court of International Trade.  In 2019, Victoria graduated *magna cum laude* from Fei Tian College with a B.F.A. in Classical Dance.

## KYLE D. GORDON

Kyle Gordon is a Law Clerk with Bursor & Fisher, P.A. who is interested in data privacy and consumer class actions.  Kyle was a Summer Associate prior to joining the firm

Kyle passed the July 2023 New York State Bar Examination and will be applying to the State Bar of New York.

Kyle received his Juris Doctor from Columbia Law School in 2023, where he was a Harlan Fiske Stone Scholar.  During law school, Kyle was a Staff Editor for the Columbia Science and Technology Law Review.  In 2020, Kyle graduated *summa cum laude* from New York University with a B.A. in Politics and became a member of Phi Beta Kappa.  Prior to law school, Kyle interned in the Clerk's Office of the United States District Court for the District of Columbia.



# FIRM **RESUME**

One West Las Olas Boulevard, Suite 500
Fort Lauderdale, Florida 33301

**Telephone:** 954.525.4100
**Facsimile:** 954.525.4300
**Website:** www.kolawyers.com

**Miami  –  Fort Lauderdale  –  Boca Raton**

## OUR FIRM

For over two decades, Kopelowitz Ostrow Ferguson Weiselberg Gilbert (KO) has provided comprehensive, results-oriented legal representation to individual, business, and government clients throughout Florida and the rest of the country. KO has the experience and capacity to represent its clients effectively and has the legal resources to address almost any legal need. The firm's 25 attorneys have practiced at several of the nation's largest and most prestigious firms and are skilled in almost all phases of law, including consumer class actions, multidistrict litigation involving mass tort actions, complex commercial litigation, and corporate transactions. In the class action arena, the firm has experience not only representing individual aggrieved consumers, but also defending large institutional clients, including multiple Fortune 100 companies.

## WHO WE ARE

The firm has a roster of accomplished attorneys. Clients have an opportunity to work with some of the finest lawyers in Florida and the United States, each one committed to upholding KO's principles of professionalism, integrity, and personal service. Among our roster, you'll find attorneys whose accomplishments include Board Certified in their specialty; serving as in-house counsel for major corporations, as city and county attorneys handling government affairs, and as public defenders and prosecutors; achieving multi-millions of dollars through verdicts and settlements in trials, arbitrations, and alternative dispute resolution procedures; successfully winning appeals at every level in Florida state and federal courts; and serving government in various elected and appointed positions.

KO has the experience and resources necessary to represent large putative classes. The firm's attorneys are not simply litigators, but rather, experienced trial attorneys with the support staff and resources needed to coordinate complex cases.

**CLASS
ACTION
PLAINTIFF**

Since its founding, KO has initiated and served as lead class counsel in dozens of high-profile class actions. Although the actions are diverse by subject area, KO has established itself as one of the leading firms that sue national and regional banks and credit unions related to the unlawful assessment of fees. Their efforts spanning a decade plus have  resulted in recoveries in excess of $500 million and monumental practices changes that have changed the industry and saving clients billions of dollars.

Additionally, other past and current cases have been prosecuted for breaches of insurance policies; data breaches; data privacy; wiretapping; biometric privacy; gambling; false advertising; defective consumer products and vehicles; antitrust violations; and suits on behalf of students against colleges and universities arising out of the COVID-19 pandemic.

The firm has in the past litigated certified and proposed class actions against Blue Cross Blue Shield and United Healthcare related to their improper reimbursements of health insurance benefits.  Other insurance cases include auto insurers failing to pay benefits owed to insureds with total loss vehicle claims. Other class action cases include cases against Microsoft Corporation related to its Xbox 360 gaming platform, ten of the largest oil companies in the world in connection with the destructive propensities of ethanol and its impact on boats, Nationwide Insurance for improper mortgage fee assessments, and several of the nation's largest retailers for deceptive advertising and marketing at their retail outlets and factory stores.

## CLASS ACTION **DEFENSE**

The firm also brings experience in successfully defended many class actions on behalf of banking institutions, mortgage providers and servicers, advertising conglomerates, aircraft manufacturer and U.S. Dept. of Defense contractor, a manufacturer of breast implants, and a national fitness chain.

## MASS TORT **LITIGATION**

The firm also has extensive experience in mass tort litigation, including serving as Lead Counsel in the Zantac Litigation, one of the largest mass torts in history. The firm also has handled cases against 3M related to defective earplugs, several vaginal mash manufacturers, Bayer in connection with its pesticide Roundup, Bausch & Lomb for its Renu with MoistureLoc product, Wyeth Pharmaceuticals related to Prempro, Bayer Corporation related to its birth control pill YAZ, and Howmedica Osteonics Corporation related to the Stryker Rejuvenate and AGB II hip implants. In connection with the foregoing, some of which has been litigated within the multidistrict arena, the firm has obtained tens of millions in recoveries for its clients.

## OTHER AREAS **OF PRACTICE**

In addition to class action and mass tort litigation, the firm has extensive experience in the following practice areas: commercial and general civil litigation, corporate transactions, health law, insurance law, labor and employment law, marital and family law, real estate litigation and transaction, government affairs, receivership, construction law, appellate practice, estate planning, wealth preservation, healthcare provider reimbursement and contractual disputes, white collar and criminal defense, employment contracts, environmental, and alternative dispute resolution.

## FIND US **ONLINE**

To learn more about KO, or any of the firm's other attorneys, please visit www.kolawyers.com.

# CLASS ACTION AND MASS TORT SETTLEMENTS

## FINANCIAL INSTITUTIONS

*Abercrombie v. TD Bank, N.A.,* 0:21-cv-61376 (S.D. Fla. 2022) - $4.35 million

*Perks, et al. v. TD Bank, N.A.,* 1:18-cv-11176 (E.D.N.Y. 2022) - $41.5 million

*Fallis v. Gate City Bank,* 09-2019-CV-04007 (Dist. Ct., Cty. of Cass, N.D. 2022) - $1.8 million

*Mayo v. Affinity Plus Fed. Credit Union,* 27-CV-20-11786 (4th Judicial District Minn. 2022) - $1 million

*Glass, et al. v. Delta Comm. Cred. Union,* 2019CV317322 (Sup. Ct. Fulton Cty., Ga. 2022) - $2.8 million

*Roy v. ESL Fed. Credit Union,* 19-cv-06122 (W.D.N.Y. 2022) - $1.9 million

*Clark v. Hills Bank and Trust Co.,* LACV080753 (Iowa Dist. Johnson Co. 2022) - $740,000

*Wallace v. Wells Fargo,* 17CV317775 (Sup. Ct. Santa Clara 2021) - $10 million

*Doxey v. Community Bank, N.A.,* 8:19-CV-919 (N.D.N.Y. 2021) - $3 million

*Coleman v. Alaska USA Federal Credit Union,* 3:19-cv-0229-HRH (Dist. of Alaska 2021) - $1 million

*Perri v. Notre Dame Federal Credit Union,* 71C01-1909-PL-000332 (Cir. Ct. St. Joseph 2021) - $800,000

*Smith v. Fifth Third Bank,* 1:18-cv-00464-DRC-SKB (W.D. Ohio 2021) - $5.2 million

*Lambert v. Navy Federal Credit Union,* 1:19-cv-00103-LO-MSN (S.D. Va. 2021) - $16 million

*Roberts v. Capital One, N.A.,* 16 Civ. 4841 (LGS) (S.D.N.Y 2021) - $17 million

*Baptiste v. GTE Financial,* 20-CA-002728 (Cir. Ct. Hillsborough 2021) - $975,000

*Morris v. Provident Credit Union,* CGC-19-581616 (Sup. Ct. San Francisco 2020) - $1.1 million

*Lloyd v. Navy Federal Credit Union,* 17-cv-01280-BAS-RBB (S.D. Ca. 2019) - $24.5 million

*Lashambae v. Capital One Bank, N.A.,* No. 17-cv-06406 (E.D.N.Y. 2020) - $320,000

*Farrell v. Bank of America, N.A.,* 3:16-cv-00492-L-WVG (S.D. Ca. 2018) - $66.6 million

*Bodnar v. Bank of America, N.A.,* 5:14-cv-03224-EGS (E.D. Pa. 2015) - $27.5 million

*Morton v. Green Bank,* 11-135-IV (20th Judicial District Tenn. 2018) - $1.5 million

*Hawkins v. First Tenn. Bank,* CT-004085-11 (13th Jud. Dist. Tenn. 2017) - $16.75 million

*Payne v. Old National Bank,* 82C01-1012 (Cir. Ct. Vanderburgh 2016) - $4.75 million

*Swift. v. Bancorpsouth,* 1:10-CV-00090 (N.D. Fla. 2016) - $24.0 million

*Mello v. Susquehanna Bank,* 1:09-MD-02046 (S.D. Fla. 2014) – $3.68 million

*Johnson v. Community Bank,* 3:11-CV-01405 (M.D. Pa. 2013) - $1.5 million

*McKinley v. Great Western Bank,* 1:09-MD-02036 (S.D. Fla. 2013) - $2.2 million

*Blahut v. Harris Bank,* 1:09-MD-02036 (S.D. Fla. 2013) - $9.4 million

*Wolfgeher v. Commerce Bank,* 1:09-MD-02036 (S.D. Fla. 2013) - $18.3 million

*Case v. Bank of Oklahoma,* 09-MD-02036 (S.D. Fla. 2012) - $19.0 million Settlement

*Hawthorne v. Umpqua Bank,* 3:11-CV-06700 (N.D. Cal. 2012) - $2.9 million Settlement

*Simpson v. Citizens Bank,* 2:12-CV-10267 (E.D. Mich. 2012) - $2.0 million

*Harris v. Associated Bank,* 1:09-MD-02036 (S.D. Fla. 2012) - $13.0 million

*LaCour v. Whitney Bank,* 8:11-CV-1896 (M.D. Fla. 2012) - $6.8 million

*Orallo v. Bank of the West,* 1:09-MD-202036 (S.D. Fla. 2012) - $18.0 million

*Taulava v. Bank of Hawaii,* 11-1-0337-02 (1st Cir. Hawaii 2011) - $9.0 million

## FALSE PRICING

*Gattinella v. Michael Kors* (USA), 14-Civ-5731 (WHP) (S.D. NY 2015) - $4.875 million

*Stathakos v. Columbia Sportswear*, 4:15-cv-04543-YGR (N.D. Ca. 2018) - Injunctive relief prohibiting deceptive pricing practices

## CONSUMER PROTECTION

*Lopez, et al. v. Volusion, LLC,* 1:20-cv-00761 (W.D. Tex. 2022) - $4.3 million

*Gupta v. Aeries Software, Inc.,* 8:20-cv-00995 (C.D. Ca. 2022) - $1.75 million

*In Re: CaptureRx Data Breach,* 5:21-cv-00523 (W.D. Tex. 2022) - $4.75 million

*Ostendorf v. Grange Indemnity Ins. Co.,* 2:19-cv-01147-ALM-KAJ (E.D. Ohio 2020) – $12.6 million

*Walters v. Target Corp.,* 3:16-cv-1678-L-MDD (S.D. Cal. 2020) – $8.2 million

*Papa v. Grieco Ford Fort Lauderdale, LLC,* 18-cv-21897-JEM (S.D. Fla. 2019) - $4.9 million

*Bloom v. Jenny Craig, Inc.,* 18-cv-21820-KMM  (S.D. Fla. 2019) - $3 million

*Masson v. Tallahassee Dodge Chrysler Jeep, LLC,* 1:17-cv-22967-FAM (S.D. Fla. 2018) - $850,000

*DiPuglia v. US Coachways, Inc.,* 1:17-cv-23006-MGC (S.D. Fla. 2018) - $2.6 million

*In re Disposable Contact Lens Antitrust Litig.,* MDL 2626 (M.D. Fla.) - Liaison Counsel

## MASS TORT

*In re Zantac (Ranitidine) Prods. Liab. Litig.,* 9:20-md-02924-RLR (S.D. Fla.) - MDL No. 2924 – Co-Lead Counsel

*In re: Stryker Rejuvenate and ABG II PRODUCTS LIABILITY LITIGATION,* 13-MD-2411 (17th Jud. Cir. Fla. Complex Litigation Division)

*In re: National Prescription Opiate Litigation,* 1:17-md-02804-DAP (N.D. Ohio) - MDL 2804

*In re: Smith and Nephew BHR Hip Implant Products Liability Litigation,* MDL-17-md-2775

*Yasmin and YAZ Marketing, Sales Practices and Products Liability Litigation,* 3:09-md-02100-DRH-PMF (S.D. Ill.) – MDL 2100

*In re: Prempro Products Liab. Litigation,* MDL Docket No. 1507, No. 03-cv-1507 (E.D. Ark.)

# JEFF OSTROW

Managing Partner



**Bar Admissions**
The Florida Bar
District of Columbia Bar

**Court Admissions**
Supreme Court of the United States
U.S. Court of Appeals for the Eleventh Circuit
U.S. Court of Appeals for the Ninth Circuit
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Northern District of Florida
U.S. District Court, Northern District of Illinois
U.S. District Court, Eastern District of Michigan
U.S. District Court, Western District of Tennessee
U.S. District Court, Western District of Wisconsin
U.S. District Court, Western District of Kentucky
U.S. District Court, Northern District of New York
U.S. District Court, District of Colorado

**Education**
Nova Southeastern University, J.D. - 1997
University of Florida, B.S. – 1994

**Email:** Ostrow@kolawyers.com

Jeff Ostrow is the Managing Partner of Kopelowitz Ostrow P.A. He established his own law practice in 1997 immediately upon graduation from law school and has since grown the firm to 25 attorneys in 3 offices throughout south Florida. In addition to overseeing the firm's day-to-day operations and strategic direction, Mr. Ostrow practices full time in the areas of consumer class actions, sports and business law. He is a Martindale-Hubbell AV® Preeminent™ rated attorney in both legal ability and ethics, which is the highest possible rating by the most widely recognized attorney rating organization in the world.

Mr. Ostrow often serves as outside General Counsel to companies, advising them in connection with their legal and regulatory needs. He has represented many Fortune 500® Companies in connection with their Florida litigation. He has handled cases covered by media outlets throughout the country and has been quoted many times on various legal topics in almost every major news publication, including the Wall Street Journal, New York Times, Washington Post, Miami Herald, and Sun-Sentinel. He has also appeared on CNN, ABC, NBC, CBS, Fox, ESPN, and almost every other major national and international television network in connection with his cases, which often involve industry changing litigation or athletes in Olympic swimming, professional boxing, the NFL, NBA and MLB.

Mr. Ostrow is an accomplished trial attorney who represents both Plaintiffs and Defendants, successfully trying many cases to verdict involving multi-million dollar damage claims in state and federal courts. Currently, he serves as lead counsel in nationwide and statewide class action lawsuits against many of the world's largest financial institutions in connection with the unlawful assessment of fees. To date, his efforts have successfully resulted in the recovery of over $1 billion for tens of millions of bank and credit union customers, as well as monumental changes in the way they assess fees. Those changes have forever revolutionized an industry, resulting in billions of dollars of savings . In addition, Mr. Ostrow has served as lead Class Counsel in consumer class actions against some of the

world's largest airlines, pharmaceutical companies, clothing retailers, health and auto insurance carriers, technology companies, pharmaceutical companies, and oil conglomerates, along with serving as class action defense counsel for some of the largest advertising and marketing agencies in the world, banking institutions, real estate developers, and mortgage companies.

In addition to the law practice, he is the founder and president of ProPlayer Sports LLC, a full-service sports agency and marketing firm. He represents both Olympic Gold Medalist Swimmers, World Champion Boxers, and select NFL athletes, and is licensed by both the NFL Players Association as a certified Contract Advisor. At the agency, Mr. Ostrow handles all player-team negotiations of contracts, represents his clients in legal proceedings, negotiates all marketing and NIL engagements, and oversees public relations and crisis management. He has extensive experience in negotiating, mediating, and arbitrating a wide range of issues on behalf of clients with the NFL Players Association, the International Olympic Committee, the United States Olympic Committee, USA Swimming and the World Anti-Doping Agency. He has been an invited sports law guest speaker at New York University and Nova Southeastern University and has also served as a panelist at many industry-related conferences.

Mr. Ostrow received a Bachelor of Science in Business Administration from the University of Florida in 1994 and Juris Doctorate from Nova Southeastern University in 1997. He is a licensed member of The Florida Bar and the District of Columbia Bar, is fully admitted to practice before the U.S. Supreme Court, the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida, Eastern District of Michigan, Northern District of Illinois, Western District of Tennessee, Western District of Wisconsin, and the U.S. Court of Appeals for the Eleventh Circuit. Mr. Ostrow is also member of several Bar Associations.

He is a lifetime member of the Million Dollar Advocates Forum. The Million Dollar Advocates Forum is the most prestigious group of trial lawyers in the United States. Membership is limited to attorneys who have had multi-million dollar jury verdicts. Additionally, he is consistently named as one of the top lawyers in Florida by Super Lawyers®, a publication that recognizes the best lawyers in each state. Mr. Ostrow is an inaugural recipient of the University of Florida's Warrington College of Business Administration Gator 100 award for the fastest growing University of Florida alumni-owned law firm in the world.

When not practicing law, Mr. Ostrow serves on the Board of Governors of Nova Southeastern University's Wayne Huizenga School of Business and is a Member of the Broward County Courthouse Advisory Task Force. He is also the Managing Member of One West LOA LLC, a commercial real estate development company with holdings in downtown Fort Lauderdale. He has previously sat on the boards of a national banking institution and a national healthcare marketing company. Mr. Ostrow is a founding board member for the Jorge Nation Foundation, a 501(c)(3) non-profit organization that partners with the Joe DiMaggio Children's Hospital to send children diagnosed with cancer on all-inclusive Dream Trips to destinations of their choice. Mr. Ostrow resides in Fort Lauderdale, Florida, and has 3 sons, 2 of which currently attend the University of Florida.



# ROBERT C. GILBERT

Partner

**Bar Admissions**
The Florida Bar
District of Columbia Bar

*Court Admissions*
Supreme Court of the United States
U.S. Court of Appeals for the 11th Circuit
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida

*Education*
University of Miami School of Law, J.D. - 1985
Florida International University, B.S. - 1982

*Email:* Gilbert@kolawyers.com

Robert C. "Bobby" Gilbert has over three decades of experience handling class actions, multidistrict litigation and complex business litigation throughout the United States. He has been appointed lead counsel, co-lead counsel, coordinating counsel or liaison counsel in many federal and state court class actions. Bobby has served as trial counsel in class actions and complex business litigation tried before judges, juries and arbitrators. He has also briefed and argued numerous appeals, including two precedent-setting cases before the Florida Supreme Court.

Bobby was appointed as Plaintiffs' Coordinating Counsel in *In re Checking Account Overdraft Litig.*, MDL 2036, class action litigation brought against many of the nation's largest banks that challenged the banks' internal practice of reordering debit card transactions in a manner designed to maximize the frequency of customer overdrafts. In that role, Bobby managed the large team of lawyers who prosecuted the class actions and served as the plaintiffs' liaison with the Court regarding management and administration of the multidistrict litigation. He also led or participated in settlement negotiations with the banks that resulted in settlements exceeding $1.1 billion, including Bank of America ($410 million), Citizens Financial ($137.5 million), JPMorgan Chase Bank ($110 million), PNC Bank ($90 million), TD Bank ($62 million), U.S. Bank ($55 million), Union Bank ($35 million) and Capital One ($31.7 million).

Bobby has been appointed to leadership positions is numerous other class actions and multidistrict litigation proceedings. He is currently serving as co-lead counsel in *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 9:20-md-02924-RLR (S.D. Fla.), as well as liaison counsel in *In re Disposable Contact Lens Antitrust Litig.*, MDL 2626 (M.D. Fla.); liaison counsel in *In re 21st Century Oncology Customer Data Security Beach Litig.*, MDL 2737 (M.D. Fla.); and *In re Farm-Raised Salmon and Salmon Products Antitrust Litig.*, No. 19-21551 (S.D. Fla.). He previously served as liaison counsel for indirect purchasers in *In re Terazosin Hydrochloride Antitrust Litig.*, MDL 1317 (S.D. Fla.), an antitrust class action that settled for over $74 million.

For the past 18 years, Bobby has represented thousands of Florida homeowners in class actions to recover full compensation under the Florida Constitution based on the Florida Department of Agriculture's taking and destruction of the homeowners' private property. As lead counsel, Bobby argued before the Florida Supreme Court to establish the homeowners' right to pursue their claims; served as trial counsel in non-jury liability trials followed by jury trials that established the amount of full compensation owed to the homeowners for their private property; and handled all appellate proceedings. Bobby's tireless efforts on behalf of the homeowners resulted in judgments exceeding $93 million.

Bobby previously served as an Adjunct Professor at Vanderbilt University Law School, where he co-taught a course on complex litigation in federal courts that focused on multidistrict litigation and class actions. He continues to frequently lecture and make presentations on a variety of topics.

Bobby has served for many years as a trustee of the Greater Miami Jewish Federation and previously served as chairman of the board of the Alexander Muss High School in Israel, and as a trustee of The Miami Foundation.



# JONATHAN M. STREISFELD

Partner

**Bar Admissions**
The Florida Bar

**Court Admissions**
Supreme Court of the United States
U.S. Court of Appeals for the First, Second, Fourth, Fifth Ninth, and Eleventh Circuits
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Northern District of Florida
U.S. District Court, Northern District of Illinois
U.S. District Court, Western District of Michigan
U.S. District Court, Western District of New York
U.S. District Court, Western District of Tennessee

**Education**
Nova Southeastern University, J.D. - 1997
Syracuse University, B.S. - 1994

**Email:** streisfeld@kolawers.com

Jonathan M. Streisfeld joined KO as a partner in 2008. Mr. Streisfeld concentrates his practice in the areas of consumer class actions, business litigation, and appeals nationwide. He is a Martindale Hubbell AV® Preeminent™ rated attorney in both legal ability and ethics.

Mr. Streisfeld has vast and successful experience in class action litigation, serving as class counsel in nationwide and statewide consumer class action lawsuits against the nation's largest financial institutions in connection with the unlawful assessment of fees. To date, his efforts have successfully resulted in the recovery of over $500,000,000 for tens of millions of bank and credit union customers, as well as profound changes in the way banks assess fees. Additionally, he has and continues to serve as lead and class counsel for consumers in many class actions involving false advertising and pricing, defective products, data breach and privacy, automobile defects, airlines, mortgages, and payday lending. Mr. Streisfeld has also litigated class actions against some of the largest health and automobile insurance carriers and oil conglomerates, and defended class and collective actions in other contexts.

Mr. Streisfeld has represented a variety of businesses and individuals in a broad range of business litigation matters, including contract, fraud, breach of fiduciary duty, intellectual property, real estate, shareholder disputes, wage and hour, and deceptive trade practices claims. He also assists business owners and individuals with documenting contractual relationships and resolving disputes. Mr. Streisfeld has also provided legal representation in bid protest proceedings.

Mr. Streisfeld oversees the firm's appellate and litigation support practice, representing clients in the appeal of final and non-final orders, as well as writs of certiorari, mandamus, and prohibition. His appellate practice includes civil and marital and family law matters.

Previously, Mr. Streisfeld served as outside assistant city attorney for the City of Plantation and Village of Wellington in a broad range of litigation matters. As a member of The Florida Bar, Mr. Streisfeld served for many years on the Executive Council of the Appellate Practice Section and is a past Chair of the Section's Communications Committee. Mr. Streisfeld currently serves as a member of the Board of Temple Kol Ami Emanu-El.

# KEN GRUNFELD

Partner



**Bar Admissions**
The Pennsylvania Bar
The New Jersey Bar

**Court Admissions**
U.S. Court of Appeals for the Third, Fourth, Fifth, Ninth, Tenth and Eleventh Circuits
U.S. District Ct, Eastern District of Pennsylvania
U.S. District Ct, Middle District of Pennsylvania
U.S. District Ct, Western District of Pennsylvania
U.S. District Ct, District of New Jersey
U.S. District Ct, Eastern District of Michigan
U.S. District Ct, Western District of Wisconsin

**Education**
Villanova University School of Law, J.D., 1999
University of Michigan, 1996

**Email: grunfeld@kolawyers.com**

Ken Grunfeld is one of the newest KO partners, having just started working at the firm in 2023. Having worked at one of Philadelphia's largest and most prestigious defense firms for nearly a decade defending pharmaceutical manufacturers, national railroads, asbestos companies and corporate clients in consumer protection, products liability, insurance coverage and other complex commercial disputes while working, Mr. Grunfeld "switched sides" about 15 years ago.

Since then, he has become one of the city's most prolific and well-known Philadelphia class action lawyers. His cases have resulted in the recovery of hundreds of millions of dollars for injured individuals.

Mr. Grunfeld brings with him a wealth of pre-trial, trial, and appellate work experience in both state and federal courts. He has successfully taken many cases to verdict. Currently, he serves as lead counsel in a number of nationwide class actions. Whether by settlement or judgment, Mr. Grunfeld makes sure the offending companies' wrongful practices have been addressed.  He believes the most important part of bringing a wrongdoer to justice is to ensure that it never happens again; class actions can be a true instrument for change if done well.

Mr. Grunfeld has been named a Super Lawyer numerous times throughout his career. He has been a member of the Philadelphia, Pennsylvania, and American Bar Associations, as well as a member of the American Association for Justice (AAJ). He was a Finalist for AAJ's prestigious Trial Lawyer of the Year Award in 2012 and currently serves as AAJ's Vice Chair of the Class Action Law Group. To his strong view that attorneys should act ethically, he volunteers his time as a Hearing Committee Member for the Disciplinary Board of the Supreme Court of Pennsylvania.

Mr. Grunfeld received his undergraduate degree from the University of Michigan. He is an active member of the Michigan Alumni Association, Philadelphia chapter and serves as a Michigan Alumni Student recruiter for local high schools. He received his Juris Doctor from the Villanova University School of Law.  He was a member of the Villanova Law Review and graduated Order of the Coif.

Ken is a life-long Philadelphian. He makes his home in Bala Cynwyd, Pennsylvania, where he resides with his wife, Jennifer, and his year-old twins.

# KRISTEN LAKE CARDOSO
Partner



### Bar Admissions
The Florida Bar
The State Bar of California

### Court Admissions
U.S. District Court, Southern District of Florida
U.S. District Court, Middle District of Florida
U.S. District Court, Central District of California
U.S. District Court, Eastern District of California
U.S. District Court, Northern District of Illinois
U.S. District Court, Eastern District of Michigan

### Education
Nova Southeastern University, J.D., 2007
University of Florida, B.A., 2004
**Email:** cardoso@kolawyers.com

Kristen Lake Cardoso is a litigation attorney focusing on consumer class actions and complex commercial litigation. She has gained valuable experience representing individuals and businesses in state and federal courts at both the trial and appellate levels in a variety of litigation matters, including contractual claims, violations of consumer protection statutes, fraud, breach of fiduciary duty, negligence, professional liability, real estate claims, enforcement of non-compete agreements, trade secret infringement, shareholder disputes, deceptive trade practices, and other business torts.

Currently, Ms. Cardoso serves as counsel in nationwide and statewide class action lawsuits concerning violations of state consumer protection statutes, false advertising, defective products, data breaches, and breaches of contract. Ms. Cardoso is actively litigating cases against major U.S. airlines for their failure to refund fares following flight cancellations and schedule changes, as well cases against manufacturers for their sale and misleading marketing of products, including defective cosmetics and nutritional supplements. Ms. Cardoso as also represented students seeking reimbursements of tuition, room and board, and other fees paid to their colleges and universities for in-person education, housing, meals, and other services not provided when campuses closed during the COVID-19 pandemic. Additionally, Ms. Cardoso has represented consumers seeking recovery of gambling losses from tech companies that profit from illegal gambling games offered, sold, and distributed on their platforms.

Ms. Cardoso is admitted to practice law throughout the states of Florida and California, as well as in the United States District Courts for the Southern District of Florida, Middle District of Florida, Central District of California, Eastern District of California Northern District of Illinois, and Eastern District of Michigan.

Ms. Cardoso attended the University of Florida, where she received her Bachelor's degree in Political Science, cum laude, and was inducted as a member of Phi Beta Kappa honor society. She received her law degree from Nova Southeastern University, magna cum laude. While in law school, Ms. Cardoso served as an Articles Editor for the Nova Law Review, was on the Dean's List, and was the recipient of a scholarship granted by the Broward County Hispanic Bar Association for her academic achievements. When not practicing law, Ms. Cardoso serves as a volunteer at Saint David Catholic School, including as a member of the school Advisory Board and an executive member of the Faculty Student Association. She has also served on various committees with the Junior League of Greater Fort Lauderdale geared towards improving the local community through leadership and volunteering.

# STEVEN SUKERT
Partner



**Bar Admissions**
The Florida Bar
The New York Bar

**Court Admissions**
United States District Court, Southern District of Florida
United States District Court, Middle District of Florida
United States District Court, Southern District of New York
United States District Court, Eastern District of New York
United States District Court, Northern District of Illinois
United States District Court, Central District of Illinois

**Education**
Georgetown University Law Center, J.D., 20018
Northwestern University, B.S., 2010

***Email: sukert@kolawyers.com***

Steven Sukert has experience in all aspects of complex litigation in federal and state court, including drafting successful dispositive motions and appeals, handling discovery, and arguing court hearings. Steven focuses his practice at KO on complex class actions and multi-district litigations in courts around the country, including in data privacy, bank overdraft fee, and other consumer protection cases.

Before joining KO, Steven gained experience at Gunster, Yoakley & Stewart, P.A. in Miami in high-stakes commercial cases often involving trade secret and intellectual property claims, consumer contract claims, and legal malpractice claims, as well as in international arbitrations. Steven co-authored an amicus brief in the Florida Supreme Court case Airbnb, Inc. v. Doe (Case No. SC20-1167), and helped organize the American Bar Association's inaugural International Arbitration Masterclass, in 2021.

Steven was born and raised in Miami. He returned to his home city after law school to clerk for the Honorable James Lawrence King in the U.S. District Court for the Southern District of Florida.

In 2018, Steven earned his J.D. from Georgetown University Law Center. While living in the nation's capital, he worked at the U.S. Department of Labor, Office of the Solicitor, where he won the Gary S. Tell ERISA Litigation Award; the Civil Fraud Section of the U.S Department of Justice, where he worked on large Medicare fraud cases and pioneered the use of the False Claims Act in the context of pharmaceutical manufacturers who engaged in price fixing; and the Lawyers' Committee for Civil Rights Under Law, where his proposal for writing an amicus brief in the Janus v. AFSCME U.S. Supreme Court case was adopted by the organization's board of directors.

Steven has a degree in Molecular Biology from Northwestern University. Prior to his legal career, he worked as a biomedical laboratory researcher at the Diabetes Research Institute in Miami.



# FIRM RESUME



Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") is an AV-rated international law firm with more than 100 attorneys and offices across the United States, the European Union, and South America. Combining decades of experience, Milberg was established through the merger of Milberg Phillips Grossman LLP, Sanders Phillips Grossman LLC, Greg Coleman Law PC, and Whitfield Bryson LLP.

Milberg prides itself on providing thoughtful and knowledgeable legal services to clients worldwide across multiple practice areas. The firm represents plaintiffs in the areas of antitrust, securities, financial fraud, consumer protection, automobile emissions claims, defective drugs and devices, environmental litigation, financial and insurance litigation, and cyber law and security.

For over 50 years, Milberg and its affiliates have been protecting victims' rights. We have recovered over $50 billion for our clients. Our attorneys possess a renowned depth of legal expertise, employ the highest ethical and legal standards, and pride ourselves on providing stellar service to our clients. We have repeatedly been recognized as leaders in the plaintiffs' bar and appointed to numerous leadership roles in prominent national mass torts and class actions.

> *Milberg challenges corporate wrongdoing through class action, mass tort, consumer and shareholder right services, both domestically and globally.*

In the United States, Milberg currently holds more than 100 court-appointed full- and co-leadership positions in state and federal courts across the country. Our firm has offices in California, Chicago, Florida, Georgia, Illinois, Kentucky, Louisiana, Mississippi, New Jersey, New York, North Carolina, South Carolina, Tennessee, Washington, Washington D.C., and Puerto Rico. Milberg's commitment to its clients reaches beyond the United States, litigating antitrust, securities, and consumer fraud actions in Europe and South America, with offices located in the United Kingdom, and the Netherlands. Milberg prides itself on providing excellent service worldwide.

The firm's lawyers have been regularly recognized as leaders in the plaintiffs' bar by the National Law Journal, Legal 500, Chambers USA, Time Magazine, and Super Lawyers, among others.

> *"A powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."*
> **- THE NEW YORK TIMES**

# PRACTICE AREAS

Milberg maintains a robust practice, representing plaintiffs across numerous areas of law. Milberg attorneys have amassed a wealth of experience in the areas of antitrust and competition law, securities litigation, defective consumer product and automobile litigation, consumer services litigation, dangerous drugs and devices litigation, data breach and biometric data litigation, environmental and toxic tort litigation, finance and insurance litigation, state and local government litigation, and whistleblower and qui tam lawsuits. Milberg attorneys focus their practice among these groups to provide their clients with the best representation possible. Over decades, Milberg attorneys have developed expertise in handling class action lawsuits, leading and overseeing multidistrict litigation, and representing municipalities and other public and governmental clients. Based on their reputation and experience, Milberg attorneys have been assigned to leadership roles in class actions, mass torts litigation, and multidistrict litigation nationwide, across all of these practice areas.

## SECURITIES FRAUD

Milberg pioneered the use of class action lawsuits to litigate claims involving investment products, securities, and the banking industry. Fifty years ago, the firm set the standard for case theories, organization, discovery, methods of settlement, and amounts recovered for clients. Milberg remains among the most influential securities litigators in the United States and internationally.

Milberg and its attorneys were appointed Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases throughout its history.

**EXEMPLAR CASES**

**In re: Nortel Networks Corp. Securities Litigation**
**U.S. District Court for the Southern District of New York**
Milberg attorneys served as Lead Counsel for the class and the court-appointed lead plaintiff, the Trustees of the Ontario Public Service Employees' Union Pension Plan Trust Fund, in this federal securities class action. The court approved a settlement valued at more than $1.14 billion.

**In re: Initial Public Offering Securities Litigation**
**U.S. District Court for the Southern District of New York**
Milberg represented investors in 310 securities class actions alleging a market manipulation scheme involving hundreds of initial public offerings and approximately 55 defendant investment banks. Plaintiffs alleged this scheme significantly contributed to the high-tech "bubble" of the late 1990s and early 2000s. In approving a $586 million settlement, the court described the law firms on the Plaintiffs' Executive Committee as the "cream of the crop."

### In re: Zynga Inc. Sec. Litigation

**U.S. District Court for the Northern District of California**

A class action in which Zynga misled investors by portraying the online gaming company as financially strong and withholding non-public information, which in turn allowed a select few within the company to reap the benefits from the company's IPO, before the stock's value eventually collapsed.

### In re: Merck & Co., Inc. Sec. Litigation

**U.S. District Court for the District of New Jersey**

Milberg served as Co-Lead Counsel in this federal securities fraud class action, and after more than 12 years of hard-fought litigation, ultimately obtained a combined settlement totaling $1.062 billion, the largest securities class action settlement ever against a pharmaceutical company. The court described the settlement as "a settlement which is fair and just and which, in fact, is the best settlement which possibly could have been achieved in this case."

### In re: Deutsche Telekom AG Sec. Litigation

**U.S. District Court for the Southern District of New York**

Milberg attorneys served as Co-Lead Counsel in this class action on behalf of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. Milberg attorneys played a pivotal role in achieving a $120 million settlement.

### In re: Tyco Int'l Ltd., Sec. Litigation

**U.S. District Court for the District of New Hampshire**

Milberg attorneys served as Co-Lead Counsel in this litigation, which involved federal securities claims against Tyco and its former CEO, CFO, general counsel, and certain former directors for insider trading and the overstatement of billions of dollars in income. Milberg attorneys played a crucial role in achieving a $3.2 billion settlement.

### In re: Vivendi Universal, S.A. Securities Litigation

**U.S. District Court for the Southern District of New York**

Milberg was one of two Lead Trial Counsel in this securities fraud case tried to a jury over four months. The jury found Vivendi liable for dozens of false or misleading statements and awarded damages valued at well over a billion dollars. Six months later, in an unrelated case, the Supreme Court ruled that purchasers on foreign securities exchanges could not recover under U.S. law. Milberg's case against Vivendi continued with post-verdict proceedings under the new standard, and damages have been distributed to U.S. class members totaling over $100 million.

### In re: Washington Public Power Supply System Securities Litigation

**U.S. District Court for the District of Arizona**

In this massive securities fraud litigation, Milberg served as Co-Lead Counsel for a class that obtained, after several months of trial, settlements totaling $775 million, the largest securities fraud settlement at that time.

### In re: Lucent Technologies, Inc. Securities Litigation

**U.S. District Court for the District of New Jersey**

Milberg served as Co-Lead Counsel in this securities action, which alleged that Lucent and its senior officers misrepresented the demand for Lucent products and improperly recognized hundreds of millions of dollars in revenues. The case settled for $600 million.

### In re: Biovail Corp. Securities Litigation

**U.S. District Court for the Southern District of New York**

Milberg, representing Local 282 Welfare Trust Fund and serving as Co-Lead Counsel, litigated this securities action alleging that defendants made misleading statements concerning Biovail's financial results and its drug, Cardizem LA. Following substantial discovery, including depositions across the U.S. and Canada, Milberg obtained a $138 million settlement for the class, and Biovail agreed to institute significant corporate governance changes.

### In re: CVS Corp. Securities Litigation

**U.S. District Court for the District of Massachusetts**

Milberg served as Co-Lead Counsel in this securities action on behalf of a class of purchasers of American Depository Receipts. The plaintiffs alleged that Deutsche Telekom improperly failed to disclose plans to make a major corporate acquisition and overstated the value of real estate assets. In 2005, following extensive discovery, including depositions in Germany, the court approved a $120 million cash settlement.

### In re: CVS Corp. Securities Litigation

**U.S. District Court for the District of Massachusetts**

Milberg served as Co-Lead Counsel in this securities class action alleging that defendants issued false and misleading statements, which artificially inflated the price of CVS stock.
The court approved a $110 million settlement.

### In re: American Express Financial Advisors Securities Litigation

**U.S. District Court for the Southern District of New York**

This case involved allegations that American Express Financial Advisors violated securities laws by representing to class members that the company would provide tailored financial advice when the company actually provided "canned" financial plans and advice designed to steer clients into American Express and certain non-proprietary mutual funds. The case settled for $100 million and required the company to adopt various remedial measures.

### Irvine v. ImClone Systems, Inc.

**U.S. District Court for the Southern District of New York**

Milberg served as Co-Lead Counsel in this case, in which the court approved a $75 million cash settlement. The plaintiffs alleged that ImClone misrepresented the likelihood that its drug, Erbitux, would be approved, thereby artificially inflating the price of ImClone stock.

## ANTITRUST

For over fifty years, Milberg's Antitrust Practice Group has prosecuted complex antitrust class actions against defendants in the healthcare, technology, agriculture, and manufacturing industries engaged in price-fixing, monopolization and other violations of antitrust law and trade restraints.

**EXEMPLAR CASES**

**In re: Dealer Management Systems Antitrust Litigation**
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed Lead Counsel in this nationwide class action representing car dealerships. Plaintiffs allege that leading software providers entered into an unlawful agreement, monopolizing access to auto sales and service data in dealer management software used by dealers, thereby reducing competition and increasing prices. Milberg attorneys achieved a $29.5 million settlement against one defendant and the case is proceeding against the remaining defendant.

**In re: ACTOS Antitrust Litigation**
**U.S. District Court for the Southern District of New York**
Milberg attorneys played a significant role in this litigation, including appointment to the MDL Discovery Committee, which accused Takeda Pharmaceuticals of failing to warn patients of the risks of bladder cancer, heart failure and other side effects associated with the Type 2 diabetes drug. In 2015, roughly 9,000 claims were settled for $2.4 billion and significant injunctive relief.

**In re: Cathode Ray Tube (CRT) Antitrust Litigation**
**U.S. District Court for the Northern District of California**
Milberg represented indirect purchaser plaintiffs in this class action alleging an international conspiracy among defendants to keep prices for cathode ray tube (CRT) displays artificially high. Milberg had a significant discovery role in the prosecution of this class action with settlements exceeding $580 million.

**Blessing v. Sirius XM Radio Inc.**
**U.S. District Court for the Southern District of New York**
Milberg served as Co-Lead Counsel in this case alleging that the merger of two U.S. satellite radio providers led to the monopolization of the satellite radio market and the elimination of competition.

**In re: Disposable Contact Lens Antitrust Litigation**
**U.S. District Court for the Middle District of Florida**
Milberg represented indirect purchasers in a class action alleging that defendants conspired to maintain artificially high prices for disposable contact lenses through policies that prevented resale of the subject contact lenses below a minimum price. Settlements exceeded $118 million.

**In re: Liquid Aluminum Sulfate Antitrust Litigation**
**U.S. District Court for the District of New Jersey**
Milberg was appointed to the Plaintiffs Steering Committee in this class action alleging that manufacturers of a chemical essential to municipal water treatment engaged in price-fixing, bid-rigging and market allocation in violation of federal antitrust laws. Settlements were valued at $92.5 million.

### Sandhaus v. Bayer AG
**Kansas State Court**
Milberg served as Co-Lead Counsel in this case alleging that Bayer and several generic drug manufacturers entered into pay-for-delay agreements concerning an antibiotic marketed by Bayer, which caused the plaintiffs to continue paying supracompetitive prices for the drug throughout the class period. The case settled for $9 million.

### In re: Fresh Process Potatoes Antitrust Litigation
**United States District Court, District of Idaho**
Milberg served as Co-Lead Counsel for indirect purchaser plaintiffs in this class action alleging that potato growers, their cooperatives, processors, and packers violated federal antitrust laws by conspiring to manipulate the price and supply of potatoes. Milberg achieved a settlement for $5.5 million and meaningful injunctive relief.

### In re: Google Play Consumer Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg is appointed part of a three-member Steering Committee in this consolidated class action alleging Google engaged in anticompetitive behavior through the Google Play Store, seeking injunctive relief and monetary damages on behalf of consumers forced to pay inflated prices for Play Store purchases.

### Series 17-03-615, a series of MSP Recovery Claims, Series LLC. v. Express Scripts, Inc.
**U.S. District Court for the Northern District of Illinois**
Milberg represents third-party payers in this class action alleging that defendants participated in a vertical price-fixing scheme and their monopolistic, anticompetitive behavior caused plaintiffs and the class to pay inflated prices for the drug, H.P. Acthar Gel.

### In re: Hard Disk Drive Assemblies Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg represents a class of indirect purchaser end user plaintiffs in a class action alleging that the two largest manufacturers of hard disk drive (HDD) suspension assemblies illegally conspired to fix prices of these component parts, thereby raising prices of products purchased by plaintiffs and the class.

### In re: Deere & Co. Repair Services Antitrust Litigation
**U.S. District Court for the Northern District of Illinois**
Milberg is appointed to the Plaintiffs Steering Committee in this class action alleging that John Deere illegally monopolized the repair and diagnostic services market for Deere brand agricultural equipment with onboard central computers known as engine control units, thereby inflating the prices of these services.

### Harley-Davidson Aftermarket Parts Marketing, Sales Practices and Antitrust Litigation
**U.S. District Court for the Eastern District of Wisconsin**
Milberg represents a class of Harley-Davison motorcycle owners in a case alleging that Harley-Davidson uses its monopoly power to force motorcycle owners to use its compatible branded parts for repairs or risk losing warranty coverage.

In re: California Gasoline Spot Market Antitrust Litigation
**U.S. District Court for the Northern District of California**
Milberg represents California consumers who were forced to pay supracompetitive prices for gasoline due to the manipulation of the California gasoline spot market.

## FINANCIAL LITIGATION

For over five decades, Milberg has spearheaded litigation challenging unethical practices by some of the biggest financial and insurance institutions in the world and has been at the cutting edge of cases that directly impacted large banks, lenders, and insurers.

**EXEMPLAR CASES**

In re: Prudential Insurance Co. Sales Practice Litigation
**U.S. District Court for the Northern District of California**
Milberg attorneys were appointed Lead Counsel and recovered more than $4 billion for certain policyholders in this landmark case challenging Prudential's insurance sales practices.

In re: Raytheon Co. Securities Litigation
**U.S. District Court for the District of Massachusetts**
Milberg served as Lead Counsel in this case, which alleged that a major defense contractor failed to properly write down assets on construction contracts. Raytheon and its auditor, PricewaterhouseCoopers LLP, settled for a total of $460 million.

In re: Chase Bank USA, N.A. "Check Loan" Contract Litigation
**U.S. District for the Northern District of California**
Milberg served on the Executive Committee representing the class in this action against JP Morgan Chase & Co. The complaint alleged that Chase improperly increased the minimum monthly payment by 150% required for customers who entered into balance transfer loans with "fixed" interest rates that were guaranteed to remain so for the "life of the loan." Milberg and its Co-Counsel achieved a $100 million settlement for the class.

In re: General Electric Co. ERISA Litigation
**U.S. District Court for the Northern District of New York**
Milberg, serving as Co-Lead Counsel, achieved a $40 million settlement on behalf of current and former G.E. employees who claimed that G.E.'s 401(k) Plan fiduciaries imprudently invested more than two-thirds of the Plan's assets in company stock. The settlement included important structural changes to G.E.'s 401(k) plan valued at more than $100 million.

In re: Royal Dutch/Shell Transport ERISA Litigation
**U.S. District Court for the District of New Jersey**
Milberg attorneys led this ERISA breach of fiduciary duty class action against the Royal Dutch/Shell Oil Group of Companies on behalf of certain of the companies' U.S. employee investment plan participants. The $90 million settlement included important provisions regarding the monitoring and training of individuals appointed to be ERISA fiduciaries.

### Mason v. Medline

**U.S. District Court for the Northern District of Illinois**

Milberg successfully represented a healthcare worker in a False Claims Act case against his former employer, Medline Industries, Inc., one of the nation's largest suppliers of medical and surgical products, along with its charitable arm, The Medline Foundation. The suit alleged that Medline engaged in a widespread illegal kickback scheme targeting hospitals and other healthcare providers that purchase medical products paid for by federal healthcare programs. Milberg pursued the case on a non-intervened basis and recovered $85 million on behalf of the federal government — one of the largest settlements of a False Claims Act case in which the government declined to intervene.

### In re: Comverse Technology, Inc. Derivative Litigation

**U.S. Supreme Court for the State of New York, New York County**

As Co-Lead Counsel, Milberg negotiated a $62 settlement which was approved by the court. The settlement also resulted in significant corporate governance reforms, including the replacement of various directors and officers; the amendment of the company's bylaws to permit certain shareholders to propose in the company's proxy materials nominees for election as directors; and the requirement that all equity grants be approved by both the compensation committee and a majority of the non-employee directors.

## CONSUMER PROTECTION

Milberg's Consumer Protection Practice Group focuses on improving product safety and protecting those who have fallen victim to deceptive marketing and advertising of goods and services and/or purchased defective products. Milberg attorneys have served as Lead Counsel and Co-Lead Counsel in hundreds of federal, state, and multidistrict litigation cases alleging the sale of defective products, improper marketing of products, and violations of consumer protection statutes.

**EXEMPLAR CASES**

### Cleveland v. Whirlpool Corp.

**U.S. District Court for the District of Minnesota**

Milberg attorneys led this class action involving leaking and defective washing machines. Milberg attorneys were pivotal in achieving a settlement valued at approximately $21 million, which included meaningful service plan benefits and reimbursement for out-of-pocket repair expenses.

### Berman et al. v. General Motors LLC

**U.S. District Court for the Southern District of Florida**

Milberg attorneys held leadership roles in this class action involving excessive oil consumption in Chevrolet and GMC vehicles. Milberg attorneys played a pivotal role in achieving a nationwide settlement valued at over $40 million, securing vehicle repairs and reimbursement for out-of-pocket repair costs.

### Chess v. Volkswagen Group of America, Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving Volkswagen vehicles with defective transmissions. Milberg attorneys secured a settlement that included up to full reimbursement for out-of-pocket repair expenses and significant injunctive relief.

### Hamm v. Sharp Electronics Corporation
**U.S. District Court for the Southern District of Florida**
Milberg attorneys served as Co-Class Counsel in this class action involving defectively designed microwave drawers. Milberg attorneys were instrumental in achieving a settlement valued at more than $100 million, which included meaningful extended service plan benefits and reimbursement for out-of-pocket repair expenses.

### In re: Allura Fiber Cement Siding Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys were appointed Co-Lead Counsel and Steering Committee members by the court in this class action alleging defective fiber cement board siding. Milberg attorneys helped to secure a nationwide settlement for repair and replacement of homeowners' siding.

### In re: MI Windows and Doors, Inc., Products Liability Litigation
**U.S. District Court for the District of South Carolina**
Milberg attorneys served as Co-Lead Counsel in this multidistrict class action litigation and helped to secure a nationwide class settlement for homeowners who purchased defectively designed windows.

### In re: Zurn Pex Plumbing Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys served on the Executive Committee in this multidistrict class action involving leaking and defective plumbing systems. Milberg attorneys secured monetary benefits valued at $100,000 per class settlement member, and plumbing repairs in value up to $7,000 per class settlement member.

### Hobbie, et al. v. RCR Holdings II, LLC, et al.
**U.S. District Court for the District of Louisiana**
Milberg attorneys served as Co-Lead Counsel in a multidistrict class action alleging improper usage of toxic and defective Chinese drywall. Milberg attorneys played an important role in securing a $30 million settlement for remediation of 364-unit residential high-rise buildings constructed with the toxic drywall.

### In re: Chinese Manufactured Drywall Products Liability Litigation
**U.S. District Court for the Eastern District of Louisiana**
Milberg attorneys served on the Executive Committee in a multidistrict class action involving defective and toxic drywall.

### In re: Synthetic Stucco Litigation
**U.S. District Court for the Eastern District of North Carolina**
Milberg attorneys were appointed to the Steering Committee and played a pivotal role in securing settlements with four exterior insulation finishing system manufacturers for homeowners valued at over $50 million.

### Bridget Smith v. Floor and Decor Outlets of America, Inc.
**U.S. District Court for the Northern District of Georgia**
Milberg attorneys were appointed Co-Lead Counsel in this class action alleging undisclosed formaldehyde exposure from wood and laminate flooring. Milberg attorneys achieved a national class action settlement for homeowners who purchased unsafe laminate wood flooring.

### In re: Lumber Liquidators Chinese-Manufactured Flooring Products Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the Eastern District of Virginia**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging formaldehyde exposure and secured a $36 million national class action settlement for members who purchased a certain type of laminate flooring.

### In re: Windsor Wood Clad Window Products Liability Litigation

**U.S. District Court for the Eastern District of Wisconsin**

Milberg attorneys were appointed Lead Counsel in this class action alleging window defects. Milberg attorneys helped to secure a nationwide settlement for customers providing repairs, replacements, and compensation for out-of-pocket expenses.

### In re: Allura Fiber Cement Siding Products Liability Litigation

**U.S. District Court for the District of South Carolina**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging defective cement board siding. Milberg attorneys helped to secure a nationwide settlement for customers providing repairs, replacements, and compensation for out-of-pocket expenses.

### Norman et al. v. Nissan North America

**U.S. District Court for the Middle District of Tennessee**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging CVT transmission defects in Nissan vehicles. Milberg attorneys played a pivotal role in securing a nationwide settlement valued at approximately $17 million for repairs, replacements, extended warranty, and cash benefits.

### In re: Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation

**U.S. District Court for the Southern District of Florida**

Milberg attorneys were appointed Co-Lead Counsel in this class action alleging falsely advertised brain health benefits. Milberg attorneys were essential in securing a settlement valued at $1.3 million for consumers.

### In re: All-Clad Metalcrafters, LLC, Cookware Marketing and Sales Practices Litigation

**U.S. District Court for the Western District of Pennsylvania**

Milberg attorneys were appointed to leadership positions in this multidistrict class action involving All-Clad's false advertising that its stainless-steel cookware was dishwasher safe. Milberg attorneys secured a nationwide settlement valued at $4 million, including replacement products, monetary benefits, partial reimbursements for purchases of the defective products, and discounts on future product purchases.

### Julian, et al., v. TTE Technology, Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys were appointed Co-Lead Counsel in this litigation involving the false advertising of TCL televisions' refresh rates. Milberg attorneys played an important role in securing a class settlement valued at $2.5 million in cash benefits to class members.

### Roberts et al. v. Electrolux Home Products Inc.

**U.S. District Court for the Central District of California**

Milberg attorneys were named Co-Lead Counsel in this class action involving defective dryers manufactured by Electrolux. Milberg attorneys helped to obtain a settlement on behalf of more than one million class members, valued at over $35 million.

### Tabak v. Apple Inc.

**U.S. District Court for the Northern District of California**

Milberg attorneys brought this class action against Apple for a defect in the iPhone 7 and iPhone 7 Plus, which negatively impacted the audio quality of the phones. Milberg attorneys played a pivotal role in bringing the case, briefing, and discovery. The parties have agreed to a class settlement in principle, valued at $35 million.

### Koenig v. VIZIO, Inc.

**Superior Court of Los Angeles County, California**

Milberg attorneys litigated this class action involving the false advertising of Vizio televisions' refresh rates. Milberg attorneys played a pivotal role, including briefing, discovery, and handling all trial responsibilities. The parties have agreed to a class settlement in principle, valued at over $40 million.

### In re: Outer Banks Power Outage Litigation

**U.S. District Court for the Eastern District of North Carolina**

Milberg attorneys served as Co-Lead Counsel and secured a $10.35 million settlement in a class action in which residents, businesses, and vacationers on Hatteras and Ocracoke Islands in North Carolina were impacted by a 9-day power outage.

### Elliott et al v. KB Home North Carolina Inc.

**North Carolina Superior Court**

In this class action involving homeowners who purchased homes that were improperly built without weather-resistant barriers, Milberg attorneys played an essential role in securing a settlement valued at approximately $6,500 to $17,000 for each class member.

### In re: Allergan Biocell Textured Breast Implant Product Liability Litigation

**U.S. District Court for the District of New Jersey**

Milberg attorneys were appointed to the Plaintiffs Steering Committee in this multidistrict class action against Allergan for breast implants that caused cancer. Milberg attorneys continue to play a pivotal role in this ongoing case.

### In re: Evenflo Co., Inc. Marketing, Sales Practices and Products Liability Litigation

**U.S. District Court for the District of Massachusetts**

Milberg attorneys were appointed Co-Lead Counsel in this multidistrict litigation against Evenflo for deceptively marketing its child booster seats.

**Carder v. Graco Children's Safety products, Inc.**
U.S. District Court for the Northern District of Georgia
Milberg attorneys were appointed to multiple leadership positions in this class action involving the deceptive marketing of child car seats.

**Coleman, et al, v. Britax Child Safety, Inc.**
U.S. District Court for the District of South Carolina
Milberg attorneys were appointed Co-Lead Counsel in this class action involving the deceptive marketing of child car seats.

**In re: Seresto Flea and Tick Collar Marketing, Sales Practices And Products Liability Litigation**
U.S. District Court for the Northern District of Illinois
Milberg attorneys were appointed Co-Lead Counsel in this multidistrict class action against the manufacturers of Seresto flea and tick collars, which were linked to numerous pet deaths. The litigation is ongoing.

## DANGEROUS DRUGS & DEVICES

Milberg is a nationally renowned firm in mass torts, fighting some of the largest, wealthiest, and most influential pharmaceutical and device companies and corporate entities in the world. Our experienced team of attorneys has led or co-led numerous multidistrict litigations of defective drugs and medical devices.

**EXEMPLAR CASES**
**In re: Avandia Marketing, Sales Practices, and Products Liability Litigation**
U.S. District Court for the Eastern District of Pennsylvania
Milberg attorneys were appointed to the Plaintiffs Steering Committee and served on the Discovery and Media Sub-Committees on behalf of thousands of patients who took the Type 2 diabetes drug Avandia, alleging the manufacturer failed to disclose the known and increased risk of heart attack and cardiac death. GlaxoSmithKline set aside $3.4 billion in 2011 to settle lawsuits.

**In re: Benicar (Olmesartan) Products Liability Litigation**
U.S. District Court for the District of New Jersey
Milberg attorneys were appointed to the Plaintiffs Steering Committee and Common Benefit Fee Committee in this multidistrict litigation which alleged that Benicar manufacturer Daiichi Sankyo and co-promoter Forest Laboratories were responsible for serious gastrointestinal injuries. In 2017, the defendants agreed to a $300 million settlement.

**In re: Chantix (Varenicline) Products Liability Litigation**
U.S. District Court for the Northern District of Alabama, Southern Division
Milberg attorneys served as Co-Lead Counsel in the Chantix Coordination in New York State Court and court-appointed member of the Plaintiffs Steering Committee in the MDL in Alabama.

### In re: Fluoroquinolone Products Liability Litigation
**U.S. District Court for the District of Minnesota**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the MDL in Minnesota litigating the broad-spectrum antibiotic that resulted in severe tendon damage, particularly debilitating Achilles tendon ruptures.

### Fosamax Litigation (I & II)
**U.S. District Court for the District of New Jersey**
Fosamax I: Milberg was appointed Lead Counsel in this New York MDL for ONJ cases and served on the Discovery Team in the Superior Court of New Jersey. Fosamax II: Milberg was appointed to Fosamax Femur MDL Plaintiffs Steering Committee for MDL in the District of New Jersey.

### In re: Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation
**U.S. District Court for the District of Massachusetts**
Milberg attorneys served on the Plaintiffs Steering Committee in the MDL. Granuflo and NaturaLyte were manufactured and marketed by Fresenius Medical for use in dialysis treatment to address kidney failure both chronic and acute, but also caused increased heart complications.

### In re: Incretin Mimetics Products Liability Litigation
**U.S. District Court for the Southern District of California (San Diego)**
Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in California. Incretins are a class of Type 2 Diabetes drugs which result in a significant increase in gastric side effects.

### In re: Infusion Pump Cases (JCCP 4615)
**U.S. Nineth Circuit Court, Eastern District of California**
Milberg attorneys were appointed Plaintiffs Liaison Counsel. Studies showed that pain pumps were associated with high failure rates when used appropriately and often mis-used leading to increased failure rates and resultant complications.

### Risperdal and Invega Product Liability Litigation (JCCP 4775)
**California Second District Court of Appeal, Division Three**
Milberg attorneys were appointed Co-Lead Counsel in Risperdal/Invega Product Liability Litigation against Johnson & Johnson/Janssen regarding these anti-psychotic dopamine receptor blockers that cause hormonal changes in male users that can result in breast tissue growth.

### In re: Mirena IUD Levonorgestrel-Related Products Liability Litigation
**U.S. District Court for the Southern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Mirena, a hormone releasing IUD for contraception was intended for longer term placement, are prone to failure and breakage and resultant injuries.

### Propecia Finasteride Product Liability Litigation
**U.S. District Court for the Eastern District of New York**
Milberg attorneys were appointed to the Plaintiffs Steering Committee. Another Milberg attorney was appointed Lead Counsel in the New Jersey Multi County Litigation in Middlesex County, New Jersey.  These litigations centered on sexual dysfunction resulting from use of Merck's male pattern hair loss product, Propecia.

### In re: Reglan Litigation
**U.S. Superior Court of New Jersey, Law Division Atlantic County**
Milberg attorneys were appointed Co-Lead Counsel in the Multi County Litigation in New Jersey State Court, Atlantic County. Reglan is often used for longer terms to address symptoms of GERD resulting in neurological injuries including Tardive Dyskinesia.

### Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation (MDL 2738)
**U.S. District Court for the District of New Jersey**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the Johnson & Johnson Talcum Powder Litigation and served on the Science Committee and Bellwether Committee in the MDL in District Court New Jersey, as well as on the Science and Experts Committee of the PSC.

### In re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation
**U.S. District Court for the Southern District of West Virginia**
Milberg attorneys were appointed to the Plaintiffs Steering Committee in the AMS, Bard, Boston Scientific and Ethicon MDLs.

### In re: Vioxx Products Liability Litigation
**U.S. District Court for the Eastern District of Louisiana**
Milberg attorneys served as Liaison to the media for Vioxx Plaintiffs Steering Committee and Public Relations Committee in Louisiana and on the New Jersey Multi County Litigation Vioxx discovery team.

### In re: Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation
**U.S. District Court for the District of Arizona**
Milberg attorneys were appointed to the MDL Plaintiffs Steering Committee in Arizona in this case involving a homeopathic, over the counter common cold and allergy symptom product that left many with impaired ability to smell.

### In re: Zimmer Nexgen Knee, Implant Products Liability Litigation
**U.S. District Court for the Northern District of Illinois, Eastern Division**
Milberg attorneys were appointed to the MDL Plaintiff's Steering Committee in Illinois as well as the Electronic Storage Information Committee. Zimmer manufactures multiple devices including knee devices which resulted in premature failure necessitating additional, painful, and costly surgeries.

### In re: Crestor Products Liability Cases (JCCP 4713)
**California Superior Court**
Milberg attorneys served as Co-Lead Counsel in the JCCP in State Court California on this highly potent AstraZeneca "me too" cholesterol managing statin litigation where serious side effects included newly onset diabetes and liver damage as well as reactions with Coumadin.

## EMPLOYMENT & CIVIL RIGHTS

Milberg's Employment & Civil Rights attorneys focus on class actions and individual cases nationwide arising from discriminatory banking and housing practices, unpaid wages and sales commissions, improperly managed retirement benefits, workplace discrimination, and wrongful termination.

**EXEMPLAR CASES**

In re: Black Farmers Discrimination Litigation
**U.S. District Court for the District of Columbia**
Milberg attorneys were appointed Lead Counsel and secured a $1.25 billion settlement fund for black farmers who alleged the U.S. Department of Agriculture discriminated against them by denying farm loans.

Kingston v. IBM
**U.S. District Court for the Western District of Washington**
Milberg attorneys spearheaded a series of landmark cases against IBM alleging wrongful termination of software sales managers through a pattern of fraudulent conduct.

Parry et al. v. Farmers Insurance Exchange, et al.
**Superior Court of Los Angeles County, California**
Milberg attorneys were named Class Counsel and secured a $75 million class-action settlement with Farmers Insurance on behalf of its agents alleging that Farmers Insurance misclassified its agents as independent contractors.

Meek v. SkyWest, Inc.
**U.S. District Court for the Northern District of California**
Milberg attorneys were Lead Counsel and secured a $4.2 million class action settlement against SkyWest Airlines for allegedly failing to provide proper rest and meal breaks to its employees.

Craig v. Rite Aid Corporation
**U.S. District Court for the Middle District of Pennsylvania**
This FLSA collective action and class action settled for $20.9 million.

Stillman v. Staples, Inc.
**U.S. District Court for the District of New Jersey**
This FLSA collective action had a Plaintiffs' trial verdict for $2.5 million and a national settlement approved for $42 million.

Lew v. Pizza Hut of Maryland, Inc.
**U.S. District Court for the District of New Jersey**
This FLSA collective action had a statewide settlement for managers-in-training and assistant managers, providing recompense of 100% of lost wages.

## ENVIRONMENTAL LITIGATION & TOXIC TORTS

Milberg's Environmental Litigation & Toxic Torts Practice Group focuses on representing clients in mass torts, class actions, multi-district litigation, regulatory enforcement, citizen suits, and other complex environmental and toxic tort matters. Milberg and its attorneys have held leadership roles in all facets of litigation in coordinated proceedings, with a particular focus on developing the building blocks to establish general causation, which is often the most difficult obstacle in an environmental or toxic tort case.

**EXEMPLAR CASES**

**Nnadili, et al. v. Chevron U.S.A., Inc,**
**U.S. District Court for the District of Columbia**
Milberg attorneys were Lead Counsel in a $6.2 million settlement for owners and residents of 200 properties located above underground plume of petroleum from former Chevron gas station.

**In re: Swanson Creek Oil Spill Litigation**
**U.S. District Court for the District of Maryland**
Milberg attorneys served as Lead Counsel and achieved a $2.25 million settlement arising from the largest oil spill in history of State of Maryland.

**In re: Exxon Valdez**
**U.S. District Court for the District of Alaska**
Milberg was a member of the Plaintiffs' Coordinating Committee and co-chair of the Plaintiffs' Law Committee in this massive litigation resulting from the Exxon Valdez oil spill in Alaska. The plaintiffs obtained a jury verdict of $5 billion, which, after years of appeals by Exxon, was reduced to approximately $500 million by the United States Supreme Court. The United States Court of Appeals for the Ninth Circuit has since held that plaintiffs are entitled to post-judgment interest on the award in the amount of approximately $470 million.

**Municipality of Bayamon, et al., v. Exxon Mobil Corp., et al.**
**United States District Court for the District of Puerto Rico**
More than a dozen municipalities of Puerto Rico have filed a class action lawsuit against fossil fuel companies for their alleged role in the deadly 2017 hurricane season that devastated the Commonwealth, causing billions in damages and leaving thousands of people dead. The first-of-its-kind lawsuit seeks financial compensation from oil and coal companies for marketing and selling carbon-based products that they intentionally misrepresented to the public and worked together to publicly conceal the climate risk changes of their products while internally acting on climate science to safeguard their own assets.

**Sharon Weatherly v. Eastman Chemical Co.**
**Circuit Court of Sullivan County, Tennessee Second Judicial District**
Milberg attorneys led the effort to bring justice for hundreds of injured workers and their families resulting from a steam explosion at the Eastman Chemical Company which released asbestos and other toxic materials. Milberg filed a class-action lawsuit, pursuing claims for public and private nuisance, trespass, negligence, and strict liability for ultra-hazardous activity.

## STATE & LOCAL GOVERNMENTS

Milberg attorneys are dedicated to defending the Constitutional and statutory rights of individuals and businesses that are subjected to unlawful government exactions and fees by state and local governments or bodies.

**EXEMPLAR CASES**

**Daedalus, LLC, et al. v. City of Charlotte**
North Carolina Superior Court, Mecklenburg County
Milberg attorneys recovered a $106 million class action settlement for property owners for unlawful water and sewer capacity fees and system development fees charged by the City of Charlotte, North Carolina as a condition of providing water and sewer service to property owners.

**Upright Builders, Inc., et al. v. Town of Apex**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $15.3 million class action settlement for property owners for unlawful water and sewer capacity replacement fees and transportation impact fees charged by the Town of Apex, North Carolina as a condition of providing water and sewer service to property owners.

**Plantation Builders of Wilmington, Inc., et al. v. County of Brunswick**
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $15.25 million class action settlement for property owners for unlawful water and sewer capacity fees charged by Brunswick County, North Carolina as a condition of providing water and sewer service to property owners.

**Gerald Currin Builders, Inc. v. Town of Holly Springs**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.9 million class action settlement for property owners for unlawful water and sewer capacity replacement fees charged by the Town of Holly Springs, North Carolina as a condition of providing water and sewer service to property owners.

**Meritage Homes of the Carolinas, Inc. v. Town of Holly Springs**
North Carolina Superior Court, Wake County
Milberg attorneys recovered a $7.5 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Holly Springs, North Carolina as a condition of granting development approval to residential subdivision developers.

**Plantation Building of Wilmington, Inc. v. Town of Leland**
North Carolina Superior Court, Brunswick County
Milberg attorneys recovered a $6.2 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Leland, North Carolina as a condition of providing water and sewer service to property owners.

### Shenandoah Homes, LLC v. Town of Clayton

**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.7 million class action settlement for property owners for unlawful water and sewer impact fees charged by the Town of Clayton, North Carolina as a condition of providing water and sewer service to property owners.

### Granite Land and Timber, LLC v. Town of Clayton

**North Carolina Superior Court, Johnston County**
Milberg attorneys recovered a $2.45 million class action settlement for property owners for unlawful parks and recreation fees in-lieu of land dedication charged by the Town of Clayton, North Carolina as a condition of granting development approval to residential subdivision developers.

### Mayfair Partners, LLC et al. v. City of Asheville

**North Carolina Superior Court, Buncombe County**
Milberg attorneys recovered a $1.85 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Asheville, North Carolina as a condition of providing water and sewer service to property owners.

### Eastwood Construction, LLC, et. al v. City of Monroe

**North Carolina Superior Court, Union County**
Milberg attorneys recovered a $1.75 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Monroe, North Carolina as a condition of providing water and sewer service to property owners.

### Larry Shaheen v. City of Belmont

**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $1.65 million class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Belmont, North Carolina as a condition of providing water and sewer service to property owners.

### Brookline Homes, LLC v. City of Mount Holly

**North Carolina Superior Court, Gaston County**
Milberg attorneys recovered a $483,468 class action settlement for property owners for unlawful water and sewer impact fees charged by the City of Mount Holly, North Carolina as a condition of providing water and sewer service to property owners.

## INFORMATION TECHNOLOGY

Milberg is a leader in the fields of cyber security, data breach litigation, and biometric data collection, litigating on behalf of clients – both large and small – to change data security practices so that large corporations respect and safeguard consumers' personal data.

**EXEMPLAR CASES**

In re: Google Buzz Privacy Litigation
**U.S. District Court for the Northern District of California**
Milberg attorneys were appointed Lead Class Counsel and secured a $8.5 million cy pres settlement.

In re: Dept. of Veterans Affairs (VA) Data Theft Litigation
**U.S. District Court for the District of Columbia**
Milberg attorneys were appointed Co-Lead Counsel representing veterans whose privacy rights were compromised by the theft of an external hard drive containing personal information of approximately 26.6 million veterans and their spouses; creation of a $20 million fund for affected veterans and a cy pres award for two non-profit organizations.

In re: Target Corporation Customer Data Security Breach Litigation
**U.S. District Court for the District of Minnesota**
Milberg represented as many as 110 million Target customers whose personal information was compromised in this landmark data breach case. Milberg, together with Co-Counsel, achieved compensation of $10 million, entitling individual consumers to recover losses of up to $10,000. An appeal of the settlement has been remanded to the District Court of Minnesota and remains pending.

## APPELLATE

Consisting of former appellate judges, experienced appellate advocates, and former law clerks who understand how best to present compelling arguments to judges on appeal and secure justice for our clients beyond the trial courts, Milberg's Appellate Practice Group boasts an impressive record of success on appeal in both state and federal courts.

### EXEMPLAR CASES

#### Home Depot, U.S.A., Inc. v. Jackson
United States Supreme Court

Milberg attorneys represented a consumer who was originally sued in a state court debt collection action. In response, Milberg attorneys filed third-party class action claims against Home Depot for deceptive trade practices regarding its store credit cards marketed to customers. Home Depot sought to remove the class action counterclaims, which were filed in the existing state court action, to federal court. Lengthy appeals followed, in which Milberg attorneys worked cooperatively with attorneys at Public Justice to represent the original consumer and class of consumers. Ultimately, the Supreme Court agreed with the consumers' position and held that a third-party counterclaim defendant may not remove state court claims either under the removal statute or under the Class Action Fairness Act. This decision represents a significant victory for consumer plaintiffs.

#### Webb v. Injured Workers Pharmacy, LLC
First Circuit Court of Appeals

Milberg attorneys scored a significant victory for plaintiffs in data breach and other federal tort cases. The decision animated the Supreme Court's decision in TransUnion v. Ramirez, by applying its standing analysis in a common sense and logically consistent manner to the real-world fact patterns posed by data breach cases. The decision demonstrates that federal court is still a viable forum for data breach cases based upon the material risk of future misuse, as well as actual misuse of data.

#### Kingston v. Int'l Bus. Machines Corp.
Ninth Circuit Court of Appeals

Milberg attorneys represented an IBM software sales manager who was fired for reporting racial discrimination and the unlawful capping of sales commissions. A jury awarded the plaintiff almost $15 million. The Ninth Circuit affirmed the jury's finding of liability and most of the damages award, over a dissent.

#### Fessler v. Int'l Bus. Machines Corp.
Fourth Circuit Court of Appeals

Milberg attorneys represented an IBM software salesman whose sales commissions IBM had wrongly capped. The district court dismissed the salesman's claims. The Fourth Circuit reversed the dismissal, distinguishing a long line of older cases in which IBM had prevailed on the grounds that the new case was factually distinct and presented novel legal theories. The case was later resolved.

### Lytle v. Nutramax Labs., Inc.
**Ninth Circuit Court of Appeals**
Milberg attorneys represented a class of consumers who purchased pet joint health supplements, which they claimed were deceptively marketed and labeled. The trial court granted class certification, and the defendant sought to appeal to the Ninth Circuit, which agreed to hear the appeal. Milberg attorneys argued that class certification was proper, and that the plaintiffs' proposed damages model—a conjoint analysis that surveyed consumers to determine the value of the product's deceptive statements—was valid for calculating classwide damages. The Ninth Circuit heard the parties' arguments in 2023, but has not yet ruled.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Sixth Circuit Court of Appeals**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant raised a new defense based on a recent Supreme Court case, Thacker v. Tennessee Valley Authority. The defendant argued that it should be immune because it was acting as an agent of the federal government. The Sixth Circuit rejected this defense, finding that based upon the facts, the Tennessee Valley Authority—and, by extension, the defendant—were not immune, paving the way for future litigants to bring claims against the TVA and its agents. Following this ruling, the parties reached a settlement.

### Chisum v. Campagna
**North Carolina Supreme Court**
Milberg attorneys represented a contractor who was wrongfully kicked out of several valuable real estate companies by his partners. The jury awarded the plaintiff millions of dollars, but the trial court granted judgment to the defendants on some of the claims. The North Carolina Supreme Court affirmed the jury's verdict while reversing the trial court's grant of judgment to the defendants. Following the reversal, the parties reached settlement, which was more lucrative for plaintiff than the original jury verdict.

### Plantation Bldg. of Wilmington, Inc. v. Town of Leland
**North Carolina Supreme Court**
Milberg attorneys represented a class of contractors who sued a local government for charging illegal fees. The trial court certified the class, but the government appealed, raising a dangerous new legal theory that would have prevented class certification. The North Carolina Supreme Court rejected that new theory, after which the case settled for even more than the class had demanded before the appeal.

### Adkisson v. Jacobs Engineering Grp., Inc.
**Tennessee Supreme Court**
Milberg attorneys represented a group of hundreds of workers and their families who were injured when cleaning up a large coal ash spill in Kingston, Tennessee. The workers alleged, among other things, that the defendant had denied them essential personal protection equipment. Following years of litigation and a trial on certain issues, the defendant argued that the plaintiffs' claims must be dismissed under the Tennessee Silica Claims Protection Act, and the trial court certified the question to the Tennessee Supreme Court. Milberg attorneys briefed the issues and argued on the workers' behalf that the TSCPA did not cover or require dismissal of their claims. Before the Tennessee Supreme Court could rule, the parties settled their claims.

# LOCATIONS

### PUERTO RICO
1311 Avenida Juan Ponce de León
San Juan, Puerto Rico 00907

### CALIFORNIA
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212

402 West Broadway, Suite 1760
San Diego, California 92101

### FLORIDA
201 Sevilla Avenue, Suite 200,
Coral Gables, Florida 33134

3833 Central Avenue
St. Petersburg, Florida 33713

### ILLINOIS
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606

### KENTUCKY
19 North Main Street
Madisonville, Kentucky 42431

### LOUISIANA
5301 Canal Boulevard
New Orleans, Louisiana 70124

### MICHIGAN
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301

### NEW JERSEY
1 Bridge Plaza North, Suite 675
Fort Lee, New Jersey 07024

### NEW YORK
100 Garden City Plaza, Suite 500
Garden City, New York 11530

405 E 50th Street
New York, New York 10022

### NORTH CAROLINA
900 West Morgan Street
Raleigh, North Carolina 27603

5 West Hargett Street, Suite 812
Raleigh, North Carolina 27601

### SOUTH CAROLINA
825 Lowcountry Blvd, Suite 101
Mount Pleasant, South Carolina 29464

### TENNESSEE
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929

518 Monroe Street
Nashville, Tennessee 37208

### WASHINGTON
1420 Fifth Ave, Suite 2200
Seattle, Washington 98101

17410 133rd Avenue, Suite 301
Woodinville, Washington 98072

### WASHINGTON, D.C.
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015

### NETHERLANDS

### UNITED KINGDOM

