**BURSOR & FISHER, P.A.**
Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)
401 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
          tkashima@milberg.com

**KOPELOWITZ OSTROW, P.A.**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLA HENNING and LEA AMMIANO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>LUXURY BRAND PARTNERS, LLC,<br><br>                              Defendant. | Case No. 3:22-cv-07011-TLT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    November 19, 2024<br>Time:    2:00 p.m.<br>Courtroom:  9<br>Judge:  Hon. Trina L. Thompson |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 19, 2024, at 2:00 p.m., or as soon thereafter as this matter may be heard in Courtroom 9 of the above captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiffs Ella Henning and Lea Ammiano ("Plaintiffs") will move, and hereby do move the Court for an order granting final approval of the Class Settlement Agreement ("Settlement") (ECF No. 59-1) entered into in this action.

This motion is based on: this notice of motion and motion; the accompanying memorandum of points and authorities; the Settlement, including all exhibits thereto (ECF No. 59-1); the Joint Declaration of Class Counsel, filed herewith; the papers filed in support of preliminary settlement approval; the Court's Preliminary Approval Order (ECF No. 65); the argument of counsel; all papers and records on file in this matter; and such other matters as the Court may consider.

As discussed in the accompanying memorandum, the requested relief is appropriate because the Settlement satisfies the standards for final approval under Fed. R. Civ. P. 23 and Ninth Circuit precedent.

Dated:  August 2, 2024                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
       Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)
401 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
          tkashima@milberg.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KOPELOWITZ OSTROW, P.A.**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

**PAGE**

I.   INTRODUCTION .................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ........................................... 2

III. THE SETTLEMENT .............................................................................................. 3

   A.   The Settlement Class ................................................................................ 3

   B.   Monetary Relief ......................................................................................... 4

   C.   Release ........................................................................................................ 4

   D.   Incentive Awards ....................................................................................... 4

   E.   Attorneys' Fees And Expenses .................................................................. 5

   F.   Administrative Costs ................................................................................. 5

IV.  THE NOTICE PROGRAM DIRECTED BY THE COURT IS BEING
     IMPLEMENTED AND SATISFIES ALL APPLICABLE STANDARDS ................... 5

   A.   Publication, Media, and Internet Notice .................................................. 5

   B.   Settlement Website And Toll-Free Number ............................................. 5

   C.   CAFA Notice .............................................................................................. 6

   D.   Class Members' Response ......................................................................... 6

V.   THE SETTLEMENT WARRANTS FINAL APPROVAL ............................................ 6

   A.   The Settlement Class Meets The *Hanlon* Factors .................................. 8

        1.   *Hanlon* Factor 1 – The Strength Of Plaintiffs' Case ................................. 8

        2.   *Hanlon* Factor 2 – The Risk, Expense, Complexity, and
             Likely Duration of Further Litigation ......................................................... 9

        3.   *Hanlon* Factor 3 – The Risk of Maintaining Class Action
             Status Throughout the Trial ......................................................................... 9

        4.   *Hanlon* Factor 4 – The Amount Offered in Settlement ........................... 10

        5.   *Hanlon* Factor 5 – The Extent of Discovery Completed and
             the Stage of the Proceedings .................................................................... 10

        6.   *Hanlon* Factor 6 – The Experience and Views of Counsel ................... 11

        7.   *Hanlon* Factor 7 – The Reaction of the Class Members to
             the Settlement ............................................................................................ 11

B.    The Settlement Class Meets All Of The Rule 23(e)(2) Factors ........................ 12

    1.    Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class ................................ 12

    2.    Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length ................................................................................................ 12

    3.    Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate .............................................................................................. 13

    4.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other ...................................................... 14

VI.    FINAL   CERTIFICATION   OF   THE   SETTLEMENT   CLASS   IS APPROPRIATE ............................................................................................... 15

    A.    The Requirements of Rule 23(a) Are Satisfied .................................... 15

        1.    Fed. R. Civ. P. 23(a)(1) – Numerosity ................................... 15

        2.    Fed. R. Civ. P. 23(a)(2) – Commonality ................................ 16

        3.    Fed. R. Civ. P. 23(a)(3) – Typicality ...................................... 16

        4.    Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation ........................ 17

    B.    The Requirements Of Rule 23(b)(3) Are Satisfied ............................................. 18

VII.    CONCLUSION ................................................................................................ 19

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Ahmed v. Beverly Health & Rehab. Servs., Inc.*,
2018 WL 746393 (E.D. Cal. Feb. 7, 2018) ............................................................ 10

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................. 18

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................... 15

*Bravo v. Gale Triangle, Inc.*,
2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ........................................................... 10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................................... 6, 12

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ....................................................... 8, 9

*Deaver v. Compass Bank*,
2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ......................................................... 10

*G. F. v. Contra Costa Cnty.*,
2015 WL 4606078 (N.D. Cal. July 30, 2015) .......................................................... 13

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ..................................................... 8, 13

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982) .............................................................................................. 16

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 7, 16, 18

*Hawkins v. Kroger Co.*,
337 F.R.D. 518 (S.D. Cal. 2020) ........................................................................... 18

*Hawkins v. Kroger Co.*,
2022 WL 345639 (S.D. Cal. Feb. 4, 2022) .............................................................. 15

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................................................. 12, 14

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2018 WL 6300479 (S.D. Cal. Nov. 29, 2018) ......................................................... 19

*Hilsley v. Ocean Spray Cranberries, Inc.*,
  2020 WL 520616 (S.D. Cal. Jan. 31, 2020) ................................ 12, 13, 16

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) .......................................... 15

*In re First Alliance Mortg. Co.*,
  471 F.3d 977 (9th Cir. 2006) ................................................................ 18

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................. 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................ 18

*In re Mego Financial Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .......................................................... 10, 12

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ......................................... 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008)............................................ 11, 12

*In re Syncor ERISA Litigation*,
  516 F.3d 1095 (9th Cir. 2008) ................................................................ 6

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
  2020 WL 4212811 (N.D. Cal. July 22, 2020) .................................. 16, 19

*Kramer v. XPO Logistics, Inc.*,
  2020 WL 1643712 (N.D. Cal. Apr. 2, 2020)......................................... 13

*Littlejohn v. Copland*,
  819 F. App'x 491 (9th Cir. 2020) ........................................................... 7

*Millan v. Cascade Water Servs., Inc.*,
  310 F.R.D. 593 (E.D. Cal. 2015) .......................................................... 15

*Murillo v. Pac. Gas & Elec. Co.*,
  266 F.R.D. 468 (E.D. Cal. 2010) .......................................................... 18

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
  688 F.2d 615 (9th Cir. 1982) .................................................................. 8

*Perks v. Activehours, Inc.*,
  2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ...................................... 15

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .............................................. 8, 9, 11, 13

*Satchell v. Fed. Express Corp.*,
  2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)........................................................ 13

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .............................................................................. 17

*Theodore Broomfield v. Craft Brew All., Inc.*,
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ....................................................... 14

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ................................................................................ 6

*Vega v. Weatherford U.S., Ltd. P'ship*,
  2016 WL 7116731 (E.D. Cal. Dec. 7, 2016) ....................................................... 11

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) .................................................... 17

*Wal–Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................................... 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................ 19

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)........................................................ 7

*Woodard v. Labrada*,
  2019 WL 6998775 (C.D. Cal. Oct. 7, 2019) ....................................................... 10

**STATUTES**

28 U.S.C. § 1715 ...................................................................................................... 6

**RULES**

Fed. R. Civ. P. 23 ............................................................................................. 17, 18

Fed. R. Civ. P. 23(a) .................................................................................... 12, 15, 16

Fed. R. Civ. P. 23(b) ............................................................................................. 15

Fed. R. Civ. P. 23(c) ............................................................................................... 5

Fed. R. Civ. P. 23(e) ...................................................................................... passim

Fed. R. Civ. P. 23(f) ............................................................................................. 10

**OTHER AUTHORITIES**

NEWBERG ON CLASS ACTIONS § 11.28 ............................................................................ 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Court previously granted Preliminary Approval[1] of the Settlement reached by the Parties in this Action and approved the proposed Notice Program.  (ECF No. 65).  Notice is being disseminated to the Settlement Class members as directed by the Court.  By this motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.

As previously reported, the Settlement was reached after a full-day mediation with a court-appointed mediator, Howard A. Herman of JAMS, followed by roughly six months of additional arms-length negotiations.  The Settlement provides a real and substantial monetary benefit to the Settlement Class.

The Settlement here resolves claims on behalf of a nationwide class.  Pursuant to the terms of the Settlement, Defendant will pay $850,000.00 to create a non-reversionary common Settlement Fund, from which Cash Payments will be made to Settlement Class Members.

All Settlement Class members who purchased one or more of the relevant IGK Products are eligible to submit a Claim for a Cash Payment.  Claimants who include Proof of Purchase with the Claim Form will be entitled to a full refund of the purchase price for as many IGK Products for which Proof of Purchase is provided.  Claimants who do not include Proof of Purchase with the Claim Form will be entitled to Cash Payments of $4.00 for each IGK Product purchased, for a maximum of five IGK Products, or $20.00.  This is an excellent result for Settlement Class Members.

The Settlement also provides for a robust class notice program—approved by the Court and being implemented by the Settlement Administrator and the Parties—that includes a robust social media and Internet notice program and establishment of a Settlement Website and toll-free number.

---

[1] The Settlement is on file at ECF No. 59-1.  Capitalized terms not defined here have the meanings given in the Settlement.

Dissemination of Notice commenced on June 3, 2024.  The deadline for Settlement Class members to request exclusion or object is September 6, 2024.  To date, not a single Settlement Class Member has either objected to the Settlement or opted out of the Settlement.  Weisbrot Decl. ¶¶ 16-17.

For the foregoing reasons and the others detailed below, the Settlement meets the standards for Final Approval and should be approved.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

On October 31, 2022, Valisure submitted a Citizens Petition to the Food and Drug Administration, alleging that it tested several brands and batches of dry shampoo products and allegedly found that many contained harmful levels of the alleged carcinogen benzene, and requested governmental intervention and action.  *See* Joint Declaration of Class Counsel ("JD.") ¶ 4.  Defendant was one of the businesses whose products were tested and found to allegedly contain harmful levels of benzene.  *Id.*  As a result, Defendant was named a defendant in this Action arising from its alleged manufacture, distribution, and sale of allegedly contaminated dry shampoo products.  *Id.* ¶ 3.  Defendant at all times has denied and disputed the allegations in this Action.

On November 8, 2022, Plaintiff Ella Henning commenced this putative class action captioned on behalf of herself, a nationwide class, a California subclass, and a consumer fraud multi-state subclass against Defendant.  ECF No. 1.  Plaintiff Henning alleged that third party testing found benzene concentrations as high as 2.49 ppm in IGK Products, which is above any legal limit that may be applicable to IGK Products.  ECF No. 1 ¶ 51.  Further, Plaintiff Henning alleged she purchased an IGK Product that was worthless because it was adulterated and illegally sold, and she would not have purchased the IGK Product, or would have paid less for it, but for Defendant's misrepresentations that the IGK Product did not contain benzene and/or Defendant's failure to disclose the presence of benzene.  *Id.* ¶ 99; *see, e.g.*, *id.* ¶¶ 6, 9, 99–101.

On February 1, 2023, Defendant filed a Motion to Dismiss the Complaint.  ECF No. 17.  Plaintiff Henning filed her memorandum in opposition to Defendant's Motion to Dismiss on March 1, 2023.  ECF No. 28.  Defendant's reply in support of the motion to dismiss was filed on

March 22, 2023.  ECF No. 34.  On May 11, 2023, the Court issued an Order granting in part and denying in part Defendant's Motion to Dismiss.  ECF No. 37.

Thereafter, counsel for the Parties engaged in substantial arm's-length negotiations in an effort to resolve this action.  JD. ¶¶ 9, 30.  On June 23, 2023, Plaintiff Henning and Defendant participated in a full day mediation with court-appointed mediator Howard A. Herman of JAMS.  While the mediation was unsuccessful, the Parties continued to engage in settlement discussions and case discovery over the following months before finally reaching a settlement in principle in December 2023.  *Id.* ¶ 22.

Plaintiff's counsel was also retained by Lea Ammiano, a Florida resident who purchased IGK First Class Charcoal Detox Dry Shampoo in approximately March 2023.  ECF No. 58 ¶ 10.  On February 8, 2024, Plaintiffs filed a First Amended Complaint ("FAC") adding Plaintiff Ammiano as a Class Representative, re-alleging a nationwide class, and adding a proposed Florida subclass.  *See generally* ECF No. 58.

On February 9, 2024, Plaintiffs filed their Motion for Preliminary Approval.  ECF No. 59.  On April 23, 2024, the Court entered a Preliminary Approval Order granting preliminary approval of the Settlement, certifying the Settlement Class for settlement purposes, and directing that, under Fed. R. Civ. P. 23(e)(1), class notice be disseminated pursuant to the Settlement's Notice Program.  ECF No. 63.

## III.    THE SETTLEMENT

The full Settlement terms are set forth in the Class Settlement Agreement, which is on file at ECF No. 59-1.  The following is a summary of the Settlement terms.

### A.    The Settlement Class

The Settlement Class here, as provisionally certified by the Court, is defined as:

> [A]ll persons in the United States who, during the Class Period, purchased one or more of the IGK Products for personal, family, or household use and not for resale.

Settlement ¶ 73.

Excluded from the Settlement Class are (a) Defendant's employees, directors, officers, agents, subsidiaries, and affiliated companies; (b) persons or entities who purchased the IGK

Products for resale; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff. *Id.*

**B.    Monetary Relief**

Defendant has agreed to pay a non-reversionary common fund of $850,000.00 to cover all Claims filed by Settlement Class Members as well as all Settlement Administration Costs, Notice, Service Awards, and attorneys' fees, costs, and expenses. Settlement ¶ 79(a). Claimants who include Proof of Purchase with their Claim Form will be entitled to a full refund of the purchase price for as many IGK Products for which Proof of Purchase is provided while claimants who do not include Proof of Purchase will be entitled to $4.00 for each IGK Product purchased, for a maximum of five IGK Products, or $20.00. *Id.* ¶ 79(b)(ii)–(iii). There may be a *pro rata* reduction to the amount of each Settlement Class Member's Cash Payment, depending upon the total number and total dollar value of Valid Claims. *Id.* ¶ 79(c).

**C.    Release**

In exchange for the relief described above, Defendant and each of its related and affiliated entities as well as all "Released Persons," as defined in Settlement ¶ 67, will receive a full release of all claims arising out of or related to the alleged adulteration or contamination of any of the IGK Products, and/or the purchase of any of the IGK Products. *See* Settlement ¶ 110 for full release language.

**D.    Incentive Awards**

Subject to the Court's approval, Defendant has agreed to pay incentive awards to each Plaintiff in the amount of $2,500.00. Settlement ¶ 105. Plaintiffs have spent substantial time on this action, have assisted with the investigation of this action and the drafting of the complaints, have been in contact with counsel frequently, and have stayed informed of the status of the action, including settlement. JD. ¶ 48; *see also Evans v. Church & Dwight Co., Inc.* Case No. 1:22-cv-06301, ECF No. 74 (N.D. Ill. Oct. 16, 2023) (granting request for $5,000 incentive award in class action settlement based on alleged presence of benzene in dry shampoo products). Plaintiffs will petition the Court for the $2,500.00 incentive awards as part of Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, which is being filed concurrently with this motion.

**E.    Attorneys' Fees And Expenses**

Class Counsel are filing concurrently with this motion, Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards, requesting, *inter alia*, an award of attorneys' fees of up to 25% (or $212,500.00) of the monetary value of the Settlement Fund, and up to $600.00 in litigation costs.

**F.    Administrative Costs**

The Settlement Administration Costs—for implementing the Notice Program, administering the Claims process, mailing checks to Claimants, and performing the other administrative tasks described in the Settlement—will be paid from the Settlement Fund.  The Settlement Administrator has agreed to provide notice and administration for a fixed fee amount of $225,000.00.   This amount is reasonable for the proposed services to be provided.  JD. ¶ 45.

**IV.    THE NOTICE PROGRAM DIRECTED BY THE COURT IS BEING IMPLEMENTED AND SATISFIES ALL APPLICABLE STANDARDS**

The Notice Program set forth in Section VII of the Settlement Agreement and approved by the Court in the Preliminary Approval Order (ECF No. 65), is being implemented.  JD. ¶ 45. The Court-approved Notice Program satisfies all applicable standards, including Fed. R. Civ. P. 23(e)(1) and 23(c)(2)(B), and includes the following:

**A.    Publication, Media, and Internet Notice**

Notice was provided via a media and Internet notice program, including banner ads on search engines and social media websites targeted to the Settlement Class members.  This campaign obtained roughly 34.66 million individual notice impressions, representing a 75.01% reach. Weisbrot Decl. ¶ 8.

**B.    Settlement Website And Toll-Free Number**

Before sending the Notices, the Settlement Administrator established the Settlement Website (www.igkdryshampoosettlement.com), where Settlement Class members can view the Settlement, the Long Form Notice, other key case documents, an online Claim Form, and a list of important dates.   Settlement Class members can submit Claims electronically via the

Settlement Website.  The Settlement Website also contains a Settlement email address and toll-free telephone line in addition to the Settlement Administrator's contact information, where Class Members can submit questions and receive further information and assistance.

**C.    CAFA Notice**

The Settlement Administrator timely served notice of the proposed Settlement, in accordance with 28 U.S.C. § 1715, upon the appropriate State and Federal officials.  JD. ¶ 5.

**D.    Class Members' Response**

It has been two months since the Settlement Website was made public and the Notice Program began.  The deadline to submit a Claim is November 19, 2024.  The Objection Period and Opt-Out Period end on September 6, 2024.  As of August 1, 2024, not a single Class Members has either objected to or opted out of the Settlement.  JD. ¶¶ 16-17.  Plaintiffs will provide the Court with a supplemental declaration in advance of the November 19, 2024 Final Approval Hearing which documents the following information: (1) the number of Settlement Class Members who submitted Valid Claims; (2) the number of Settlement Class members who elected to opt out of the Class; and (3) the number of Settlement Class Members who objected to or commented on the Settlement.

**V.    THE SETTLEMENT WARRANTS FINAL APPROVAL**

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277 (9th Cir. 1992).   The strong preference for class action settlements is precipitated by the overwhelming uncertainties of the outcome, expense, management, and difficulties in proof inherent in class action lawsuits.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) (noting that class action settlements are especially favorable in light of "an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

The overarching standard for class settlement approval is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). As part of that determination, Rule 23(e)(2) directs courts to consider whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

In the Ninth Circuit, courts traditionally also use a multi-factor balancing test to analyze whether a given settlement is fair, adequate, and reasonable. That test includes the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class members to the proposed settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (the "*Hanlon* Factors").

The Rule 23(e)(2) factors and the traditional Ninth Circuit factors overlap somewhat, and courts look to both when deciding whether to grant final approval of a class action settlement, while remaining ultimately focused on the underlying question of whether the settlement is fair, reasonable, and adequate. *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *5–*10 (N.D. Cal. Apr. 19, 2021) (discussing interplay between factors and considering both to grant final approval to class action settlement); *Littlejohn v. Copland*, 819 F. App'x 491, 493 (9th Cir. 2020).

1

2

**A.      The Settlement Class Meets The *Hanlon* Factors**

        **1.      *Hanlon* Factor 1 – The Strength Of Plaintiffs' Case**

3

4

5

6

7

8

9

10

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983) (internal quotations omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, as set forth in the Joint Declaration of Class Counsel, Class Counsel engaged in arms-length negotiations with Defendant's counsel and with the assistance of a neutral mediator, and Class Counsel was thoroughly familiar with the applicable facts, legal theories, and defenses on both sides.  JD. ¶¶ 9, 14–22, 30, 32.  Although Plaintiffs and Class Counsel had confidence in their claims, a favorable outcome was not assured.  *Id.* ¶¶ 33–34.  They also recognized that they would face risks at class certification, summary judgment, and trial.  *Id.* ¶¶ 34–35.  Defendant vigorously denies Plaintiffs' allegations and asserts that neither Plaintiffs nor the Settlement Class suffered any harm or damages.  In addition, Defendant would no doubt present a vigorous defense at trial, and there is no assurance that the Settlement Class would prevail—even if they did, they would not be able to obtain an award of damages significantly more than achieved here because only the claims of the California class survived Defendant's Motion to Dismiss.  (ECF No. 37).  Thus, in the eyes of Class Counsel, the proposed Settlement provides the Settlement Class with an outstanding opportunity to obtain significant relief at this stage in the Action.  *Id.* The Settlement also abrogates the risks that might prevent them from obtaining any relief.  *Id.*; *see also Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").  Accordingly, this factor is met.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    *Hanlon* Factor 2 – The Risk, Expense, Complexity, and Likely Duration of Further Litigation

As referenced above, proceeding in this Action in the absence of settlement poses various risks such as failing to certify a class, having summary judgment granted against Plaintiffs, or losing at trial.  Such considerations have been found to weigh heavily in favor of settlement.  *Id.*; *see Rodriguez*, 563 F.3d at 966.  Even assuming Plaintiffs were to survive summary judgment, they would face the risk of establishing liability at trial in light of conflicting expert testimony between their own expert witnesses and Defendant's expert witnesses.  The experience of Class Counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

Moreover, even if Plaintiffs *prevailed* at trial, in light of the possible damage theories that could be presented by both sides and the fact that only the claims of the California class survived Defendant's Motion to Dismiss (ECF No. 37), there is a substantial likelihood that Settlement Class Members may not have been awarded more (and they likely would have been awarded *less*) than is offered to them under this Settlement on an individual basis.  All Settlement Class members—which covers the entire United States as opposed to just California—will be eligible to receive either a full refund for an unlimited amount of IGK Products with Proof of Purchase or $4 per IGK Product purchased, for up to five IGK Products, or $20.00.  Settlement ¶ 79(b).

The Settlement provides prompt, certain, and meaningful relief to Settlement Class Members, all of whom purchased IGK Products before April 23, 2024.  Continued litigation would likely add several more years before there is a resolution.

### 3.    *Hanlon* Factor 3 – The Risk of Maintaining Class Action Status Throughout the Trial

In addition to the risks of continuing to litigate the Action, Plaintiffs would also face risks in certifying a class and maintaining class status through trial.  Even if the Court were to grant a motion for class certification, the class could still be decertified at any time.  *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (internal citations omitted).  From their prior experience, Class Counsel anticipates that Defendant would

1 likely appeal the Court's decision pursuant to Fed. R. Civ. P. 23(f), and/or move for
2 decertification at a later date.

3             **4.**    ***Hanlon* Factor 4 – The Amount Offered in Settlement**

4       By any measure, the Settlement here offers meaningful relief for the Settlement Class.
5 Defendant has agreed to settle this matter for $850,000.00, which, given the "finality and speed
6 of recovery under the parties' agreement," is reasonable and preferable to continued litigation.
7 *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (granting final
8 approval of settlement fund of $500,000.00).

9       Based on their experience in other benzene litigation, Plaintiffs' Counsel believes that the
10 $850,000.00 non-reversionary common fund here represents approximately a 19% to 32%
11 recovery as compared to the Settlement Class's best day at trial, which is well within the range
12 of reasonableness found by Courts in this Circuit. JD. ¶¶ 41–42; *see also*, *e.g.*, *Woodard v.*
13 *Labrada*, 2019 WL 6998775, at *6 (C.D. Cal. Oct. 7, 2019) (collecting cases and stating "[a]
14 recovery of approximately 22% of the damages the Settlement Class could have recovered is
15 consistent with and exceeds amounts routinely found to be fair and reasonable"); *In re Mego*
16 *Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement that was
17 16.67% of the potential recovery); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D.
18 Cal. Feb. 16, 2017) (approving a settlement where net recovery to class members was
19 approximately 7.5% of the projected maximum recovery amount); *Ahmed v. Beverly Health &*
20 *Rehab. Servs., Inc.*, 2018 WL 746393, at *10 (E.D. Cal. Feb. 7, 2018) (approving settlement that
21 was 1% of the potential recovery). Further, all Settlement Class Members will be eligible to
22 either receive a full refund with Proof of Purchase for as many IGK Products purchased or $4
23 per IGK Product purchased, for up to five IGK Products, which is very similar to the relief sought
24 by Plaintiffs in the FAC. Settlement ¶ 79(b). As such, this factor is satisfied.

25             **5.**    ***Hanlon* Factor 5 – The Extent of Discovery Completed**
                      **and the Stage of the Proceedings**

26       Under this factor, courts evaluate whether class counsel had sufficient information to
27 make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*,
28

---

213 F.3d at 459. Plaintiffs, through their counsel, have conducted research, discovery, and investigation during the prosecution of this Action, including: (i) the review of written documents produced by Defendant; (ii) the review of publicly available reports, journal articles, and other publications concerning Defendant's products; (iii) the review of publicly available information regarding Defendant and its business practices; and (iv) negotiating and drafting a stipulated protective order. This discovery was sufficient for Class Counsel to appreciate the merits of Plaintiffs' claims before negotiations. The Parties held numerous telephonic and written discussions regarding Plaintiffs' allegations, discovery, and settlement, as well as a full day mediation with Howard A. Herman of JAMS. JD. ¶¶ 14–22, 30, 32. The Settlement is the result of fully informed negotiations. *Vega v. Weatherford U.S., Ltd. P'ship*, 2016 WL 7116731, at *9 (E.D. Cal. Dec. 7, 2016) (noting the fifth *Hanlon* factor weighed in favor of final approval where "[g]iven the discovery completed by the parties, it appears that the parties made informed decisions, which lead to resolution of the matter with a mediator").

### 6.    *Hanlon* Factor 6 – The Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to Class Counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation. *See* (ECF No. 59-1). Based on their experience, Class Counsel concluded that the Settlement provides exceptional results for the Settlement Class while sparing the Settlement Class from the uncertainties of continued and protracted litigation.

### 7.    *Hanlon* Factor 7 – The Reaction of the Class Members to the Settlement

It has been two months since the settlement website was made public and the Notice Program began. The deadline to submit a Claim is November 19, 2024. The Objection Period and Opt-Out Period end on September 6, 2024. As of August 1, 2024, no Class Members have

either objected to or opted out of the Settlement (Weisbrot Decl. ¶¶ 16–17), which "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs.*, Inc., 559 F. Supp. 2d at 1043.  Plaintiffs will provide the Court with a supplemental declaration in advance of the November 19, 2024 Final Approval Hearing that documents the reaction of the Settlement Class members to the Settlement, including the following information: (1) the number of Settlement Class Members who submitted Valid Claims; (2) the number of Settlement Class members who elected to opt out of the Class; and (3) the number of Settlement Class Members who objected to or commented on the Settlement.

In sum, the *Hanlon* factors weigh in favor of granting Final Approval of the Settlement.

**B.    The Settlement Class Meets All Of The Rule 23(e)(2) Factors**

**1.    Rule 23(e)(2)(A) – The Class Representatives and Class Counsel Have Adequately Represented the Class**

"The Ninth Circuit has explained that 'adequacy of representation … requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 462).  This prong is met for the same reasons that Plaintiffs and Class Counsel meet the adequacy prong under Fed. R. Civ. P. 23(a)(4).  *See* § VI.A.4, *infra*; *see also Hilsley v. Ocean Spray Cranberries, Inc.*, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met.").

**2.    Rule 23(e)(2)(B) – The Proposal was Negotiated at Arm's Length**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992); *see also* Fed. R. Civ. P. 23(e)(2)(B).  A court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering

Plaintiff's likelihood of recovery." *Garner*, 2010 WL 1687832, at *9 (citing *Rodriguez*, 563 F.3d at 965).

Here, both Class Counsel and counsel for Defendant are experienced in class action litigation, and were "thoroughly familiar with the applicable facts, legal theories, and defenses on both sides." *Hilsley*, 2020 WL 520616, at *5. Further, "the Settlement was reached as a result of informed and non-collusive arms-length negotiations [over a number of months] facilitated by a neutral mediator." *Kramer v. XPO Logistics, Inc.*, 2020 WL 1643712, at *1 (N.D. Cal. Apr. 2, 2020); *G. F. v. Contra Costa Cnty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.") (internal quotations omitted); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same); *see also* JD. ¶¶ 14–22, 30, 32. Thus, this prong is met.

### 3. Rule 23(e)(2)(C) – The Relief Provided for the Class is Adequate

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." "The amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hilsley*, 2020 WL 520616, at *6. Each prong is met.

***The Costs, Risks, and Delay of Trial and Appeal.*** Plaintiffs established this factor is met above. *See* §§ V.B.1–V.B.3, *supra*.

***The Effectiveness of any Proposed Method of Distributing Relief to the Class.*** "The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Hilsley*, 2020 WL 520616, at *7. As described above, the Notice Program and Claims procedure is straightforward and comports with due process. *See* Section IV. The Notice Program was proposed by

experienced and competent counsel and ensures "the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 695 (S.D.N.Y. 2019) (internal quotations omitted).

**The Terms of any Proposed Award of Attorneys' Fees.**  Class Counsel are filing concurrently with this motion, Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, requesting an award of attorneys' fees of up to 25% of the Settlement Fund (or $212,500.00.00), plus litigation costs of up to $600.00. Settlement ¶ 106.  The proposed award of attorneys' fees is reasonable for the reasons set forth in that motion.

**Any Agreement Required to be Identified by Rule 23(e)(3).**  This prong asks whether there was "any agreement made in connection with the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 696 (S.D.N.Y. 2019).  Here, other than the Settlement, no such agreement exists.

In light of the foregoing, the Settlement provides adequate relief to the Settlement Class under Rule 23(e)(2)(C).

### 4.    Rule 23(e)(2)(D) – The Proposal Treats Class Members Equitably Relative To Each Other

Under this factor, courts consider whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hefler*, 2018 WL 6619983, at *8.  Although Settlement Class Members with Proof of Purchase will be eligible to receive compensation for as many IGK Products as they have proof for—as opposed to being limited to four IGK Products—that does not mean Settlement Class Members are treated inequitably. *Theodore Broomfield v. Craft Brew All., Inc.*, 2020 WL 1972505, at *9 (N.D. Cal. Feb. 5, 2020) (finding "the method of distribution is equitable and class representatives do not receive preferential treatment" where class members with proof of purchase could make claims for up to $20, versus up to $10 without proof of purchase).  Indeed, such a limitation on Settlement Class Members without Proof of Purchase is necessary to deter fraudulent claims and ensure as much of the Settlement Fund is available to Settlement Class Members with Proof of

Purchase as possible.  JD. ¶ 43.  Further, all Settlement Class Members' Claims are subject to an upward or downward *pro rata* adjustment if they exceed the available Settlement Fund.  A *pro rata* distribution has been found by courts in this Circuit to be equitable.  *See*, *e.g.*, *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) ("This pro rata distribution is inherently equitable because it treats Class Members fairly based on the amount of each member's potential damages."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) (finding a pro rata distribution equitable); *Hawkins v. Kroger Co.*, 2022 WL 345639, at *2, *8 (S.D. Cal. Feb. 4, 2022) (same).

## VI.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court previously provisionally certified the Settlement Class as part of the Preliminary Approval Order.  ECF No. 65.  The Court should reaffirm certification of the Settlement Class for settlement purposes because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied.  *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) ("In the Court's Order granting preliminary approval of the settlement, the Court found that the putative class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). The Court is unaware of any changes … Thus, the Court concludes that all four of Rule 23(a)'s requirements have been met.") (internal citations omitted).  Further, courts have granted final approval of similar consumer product class action settlements involving defendants allegedly failing to disclose to consumers that their respective products contain benzene.  *See*, *e.g.*, *Evans v. Church & Dwight Co.*, Case No. 1:22-cv-6301, ECF No. 75 (N.D. Ill. Oct. 16, 2023) (Kendall, J.); *Goldstein v. Henkel Corp.*, Case No. 3:22-cv-164, ECF No. 97 (D. Conn. Dec. 13, 2023); *Bangoura v. Beiersdorf, Inc.*, Case No. 1:22-cv-291, ECF No. 40 (E.D.N.Y. Jan. 10, 2023).

### A.    The Requirements of Rule 23(a) Are Satisfied

#### 1.    Fed. R. Civ. P. 23(a)(1) – Numerosity

A class must be so numerous that joinder of all members individually is impractical.  Fed. R. Civ. P. 23(a)(1).  "[G]enerally, forty or more members will satisfy the numerosity requirement." *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 603 (E.D. Cal. 2015).  Here,

the Settlement Class is comprised of tens of thousands of consumers who purchased the IGK Products—a number that more than satisfies the numerosity requirement. JD. ¶ 15. Accordingly, numerosity is easily met.

### 2.    Fed. R. Civ. P. 23(a)(2) – Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). "This requirement has been construed permissively, and all questions of fact and law need not be common to satisfy the rule." *In re Yahoo! Inc. Customer Data Security Breach Litig.*, 2020 WL 4212811, at *2 (N.D. Cal. July 22, 2020) ("*In re Yahoo*") (internal quotations omitted). "Indeed, for purposes of Rule 23(a)(2), even a single common question will do." *Id.*

Here, common questions include, but are not limited to, whether Defendant's alleged failure to disclose that the IGK Products contained benzene was "reasonably likely to deceive consumers." *Hilsley*, 2020 WL 520616, at *2 (concluding that commonality was satisfied where there was a common question of whether Ocean Spray's representations of "No Artificial Flavors" were likely to deceive consumers); *see also Goldstein v. Henkel Corp.*, Case No. 3:22-cv-00164 (ECF Nos. 92, 97) (approving class action settlement where a common predominating question was "whether Defendants' failure to disclose the presence of benzene in the Covered Products was likely to deceive reasonable consumers"). Resolution of this common question would require evaluation of the question's merits under a single objective standard. Thus, commonality is satisfied.

### 3.    Fed. R. Civ. P. 23(a)(3) – Typicality

Rule 23(a)(3) requires that the claims of the representative plaintiffs be "typical of the claims … of the class." *See* Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In short, to meet the typicality requirement, the representative plaintiffs simply must demonstrate that the members of the settlement class have the same or similar grievances. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other members of the Settlement Class. Plaintiffs, like all members of the Settlement Class, purchased the IGK Products during the Class Period and suffered damages because of Defendant's alleged material misstatements and omissions. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.     Fed. R. Civ. P. 23(a)(4) – Adequacy of Representation

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether the representation meets this standard, we ask two questions: (1) do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003). Adequacy is presumed where a fair settlement was negotiated at arm's-length. NEWBERG ON CLASS ACTIONS § 11.28, at 11–59.

*First*, Plaintiffs and Class Counsel have no conflicts of interests with the Settlement Class. Rather, the named Plaintiffs, like each absent Settlement Class Member, have a strong interest in proving Defendant's common course of conduct, and recovering damages allegedly caused by Defendant's wrongful conduct. *See* JD. ¶ 43.

*Second*, Plaintiffs and Class Counsel have vigorously and competently pursued the Settlement Class Members' claims. Class Counsel has engaged in significant, arm's-length negotiations over the course of many months, including with the assistance of a certified mediator, Howard A. Herman. JD. ¶¶ 14, 18, 30; *see also Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (use of mediator "tends to support the conclusion that the settlement process was not collusive"). Class Counsel have extensive experience and expertise in prosecuting complex class actions. Class Counsel are active practitioners who are highly experienced in consumer class actions. *See* (ECF No. 59-1).

1      Thus, in pursuing this Action, Class Counsel and Plaintiffs have advanced and will

2  continue to advance and fully protect the common interests of all members of the Settlement

3  Class.  Accordingly, Rule 23(a)(4) is satisfied.

4      **B.      The Requirements Of Rule 23(b)(3) Are Satisfied**

5      In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b)

6  must be satisfied.  Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that

7  "questions of law or fact common to the class members predominate over any questions affecting

8  only individual members, and that a class action is superior to other available methods for fairly

9  and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Certification under Rule

10  23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served

11  best by settling their differences in a single action."  *Hanlon*, 150 F.3d at 1022.

12      The Ninth Circuit favors class treatment of claims stemming from a "common course of

13  conduct," like those alleged in this Action.  *See In re First Alliance Mortg. Co.*, 471 F.3d 977,

14  989 (9th Cir. 2006).  Also, as the Supreme Court explained, "[c]onfronted with a request for

15  settlement-only class certification, a district court need not inquire whether the case, if tried,

16  would present intractable management problems."  *Amchem Prods., Inc. v. Windsor*, 521 U.S.

17  591, 620 (1997).

18      Here, predominance is met because "common questions … present a significant aspect

19  of the case and [] can be resolved for all members of the class in a single adjudication."  *Murillo*

20  *v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010).  These common questions

21  include, but are not limited to: (1) whether Defendant's failure to disclose that the IGK Products

22  contained benzene was likely to deceive reasonable consumers; (2) whether Defendant violated

23  the CLRA, UCL, FAL, and other consumer protection statutes; and (3) whether Plaintiffs and the

24  Class have been injured by the wrongs complained of, and if so, whether Plaintiffs and the Class

25  are entitled to damages.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir.

26  2019) (finding predominance met where "the class claims turn on the automakers' common

27  course of conduct—their fuel economy statements"); *Hawkins v. Kroger Co.*, 337 F.R.D. 518,

28  541 (S.D. Cal. 2020) (predominance met where "common and cohesive issue is whether Kroger

wrongfully labeled its breadcrumbs as containing '0g Trans Fat'"); *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *11 (S.D. Cal. Nov. 29, 2018) (predominance satisfied where "Plaintiff's UCL, FAL and CLRA claims depend on whether the labels are unlawful, unfair, deceptive, or misleading to reasonable consumers") (internal quotations omitted).

Turning to superiority, "[t]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by tens of thousands of consumers nationwide, and resolution of all Settlement Class Members' claims in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. Further, it is unlikely that any Settlement Class member would be willing or able to pursue relief on an individual basis. *See In re Yahoo*, 2020 WL 4212811, at *7 ("In cases where Plaintiffs are unable to proceed individually because the disparity between litigation costs and the recovery sought is too high, the class-action device may be an effective means to pool claims which would be uneconomical to litigate individually.").

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Final Approval of the proposed Settlement.

Dated: August 2, 2024                       Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Sarah N. Westcot*
       Sarah N. Westcot

Sarah N. Westcot (State Bar No. 264916)
701 Brickell Ave., Suite 2100
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
John J. Nelson (State Bar No. 317598)
Trenton Ross Kashima (State Bar No. 291405)

401 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com
      tkashima@milberg.com

**KOPELOWITZ OSTROW, P.A.**
Kristen Lake Cardoso (State Bar No. 338762)
1 West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Email: cardoso@kolawyers.com

*Attorneys for Plaintiffs*